**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| SARAH J. HUNTER, AND DAVID N. YOUTZ, on behalf of themselves and all others similarly situated, | CASE NO. 2:19-cv-00411 |
| Plaintiffs, | Chief Judge Algenon L. Marbley |
| v. | Magistrate Judge Chelsey M. Vascura |
| BOOZ ALLEN HAMILTON, INC, *et al.*, | |
| Defendants. | |

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT CACI INTERNATIONAL, INC. AND CACI TECHNOLOGIES, LLC**

## TABLE OF CONTENTS

**Page(s)**

MEMORANDUM IN SUPPORT ................................................................................... 3

I.      INTRODUCTION ............................................................................. 3

II.      CASE HISTORY ............................................................................... 4

       a.      Plaintiff's Factual Allegations and Claims ................................. 4

       b.      Procedural History and Negotiations ....................................... 4

III.      SUMMARY OF SETTLEMENT TERMS ........................................... 6

       a.      The Settlement Class ............................................................. 6

       b.      Settlement Amount ................................................................ 6

       c.      Attorneys' Fees and Expenses ................................................ 7

       d.      Release of All Claims ............................................................ 8

IV.      PRELIMINARY APPROVAL AS REQUIRED BY RULE 23 ............................. 8

The Court must preliminarily approve a class action settlement and provisionally certify a settlement class. Notice of the settlement is then provided to the class and the court conducts a fairness hearing and grants final approval.

Supporting Authority: Manual for Complex Litigation (Fourth) § 21.63 (2004) ("Manual"); *see also Bobbitt v. Acad. of Reporting*, No. 07-10742, 2009 WL 2168833, at *1 (E.D. Mich. Jul. 21, 2009).

V.      THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ............................................................................ 8

       a.      Preliminary Approval Is Appropriate Because the Settlement Meets the Standard for Approval ...................................................... 8

             i.      The Law Favors Settlements ............................................ 8

It is well-established in the Sixth Circuit that the law favors settlement of class actions, even if, like here, the settlement is a partial one.

Supporting Authority: *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013) (citing *UAW v. Gen. Motors. Corp.*, 497 F.3d 615, 632 (6th Cir. 2007)); *In re Packaged Ice Antitrust Litig.*, No. 08-md-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010).

ii.     The Proposed Settlement is Fair, Reasonable and Adequate and Falls within the Range of Possible Approval ............................9

During the preliminary approval stage, the Court is not required to make a final determination on the adequacy of the settlement or to delve into the merits of the settlement. In evaluating whether the settlement is fair, reasonable and adequate, courts in the Sixth Circuit consider several factors, including the complexity, expense and likely duration of the litigation, as well as the amount of discovery engaged in by the parties. The Proposed Settlement satisfies these factors.

Supporting Authority: *Clark Equip. Co. v. Int'l Union of Allied Industrial Workers of Am.*, 803 F.2d 878 (6th Cir. 1986); *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, No. 1:01-cv-9000, 2001 WL 1842315, at *10 (E.D. Ohio Oct. 20, 2001); *In re Packaged Ice Antitrust Litig.*, No. 08-md-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010).

iii.     The Settlement Agreement Reaches a Favorable Result for the Proposed Settlement Class, Particularly Given the Expense, Duration, and Uncertainty of Continued Litigation ........................11

Plaintiffs and CACI have engaged in contested motions, and CACI will assert various defenses at trial that may turn on close questions of proof. Trial would also include complicated expert testimony, especially regarding damages. The favorable settlement reached here thus mitigates the risks and unpredictable outcome of trial and any subsequent appeal. Additionally, early "ice breaker" settlements are of particular value in complex antitrust cases due to their increased likelihood to bringing future settlements with Non-Settling Defendants. The Settlement Agreement also provides that Non-Settling Defendants will continue to remain jointly and severally liable for damages, and that Plaintiffs will still be able to pursue their full damages against Non-Settling Defendants.

Supporting Authority: *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 533 (E.D. Mich. 2003); *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003); *In re Automotive Parts Antitrust Litig.*, No. 12-md-02311, 2019 WL 11005451, at *6 (E.D. Mich. Dec. 29, 2019); *In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 21 (D.D.C. 2019).

iv.     The Settlement Agreement Resulted From Arm's Length Negotiations Conducted By Highly Experienced Counsel ............14

Class Counsel for Plaintiffs were well-informed of the facts and strength of the claims asserted when the Settlement Agreement was negotiated. Class Counsel, who is experienced in complex antitrust class action litigation, undertook diligent investigation of the legal and factual issues and consulted with expert economists prior to the negotiations. The parties had also engaged in extensive motion practice and discovery, including the submission of expert reports on class

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT CACI INTERNATIONAL, INC. AND CACI TECHNOLOGIES, LLC

certification. Additionally, the negotiations were adversarial, and conducted at arm's length and in good faith.

Supporting Authority: *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519, at *13-14 (E.D. Mich. Feb. 22, 2011); *Sheick v. Auto Component Carrier LCC*, No. 2:09-cv-14429, 2010 WL 4136958, at *18 (E.D. Mich. Oct. 18, 2010) (quoting *IUE-CWA*, 238 F.R.D. at 597); *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262 (E.D. Ky. 2009) (quoting *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 370 (S.D. Ohio 1990)); *Leonhardt v. ArvinMeritor, Inc.,* 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008).

b.      The Requirements for Certification of a Settlement Class Pursuant to Rule 23 are Met.........................................................................................16

        i.      Plaintiffs have Shown Numerosity, Commonality, Typicality, and Adequacy under Rule 23(a) ....................................................17

                1.      The Proposed Settlement Class Is So Numerous That It Is Impractical to Bring All Class Members Before the Court ...............................................................................17

The proposed Class for certification contains over 400 members, and it beyond dispute that many of the persons employed by Defendants at JAC Molesworth were affected by Defendants' No-Hire Agreements. The large number of the putative class would make joinder highly impractical.

Supporting Authority: *Miller v. Univ. of Cincinnati*, 241 F.R.D. 285, 288 (S.D. Ohio 2006); *Raymond v. Avectus Healthcare Solutions*, LLC, No. 1:15-cv-559, 2020 WL 3470461, at *4 (S.D. Ohio Mar. 27, 2020) (quoting *Castillo v. Morales, Inc.*, 302 F.R.D. 480, 487 (S.D. Ohio 2014)); *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 403 (S.D. Ohio 2007) (citing *Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004)); *In re Am. Med. Sys.*, Inc., 75 F.3d 1069, 1079 (6th Cir. 1996).

                2.      Class Representatives and the Proposed Settlement Class Share Common Legal and Factual Questions ..........18

Common questions exist here because No-Hire Agreement cases such as this one deal with common legal and factual questions regarding the existence, scope and effect of Defendants' no-poach agreements. Plaintiffs have identified several issues common to the proposed Settlement Class. Additionally, in antitrust cases, courts have regularly determined that the very nature of an antitrust action compels a finding that common questions exist.

Supporting Authority: *In re High-Tech Employee Antitrust Litig.*, 985 F. Supp. 2d 1167, 1180 (N.D. Cal. 2013); *In re Dynamic Random Access Memory (DRAM)*

*Antitrust Litig.*, No. 02-md-1486, 2006 WL 1530166, at *3 (N.D. Cal. June 5, 2006).

3.      Plaintiff Class Representatives' Claims Are Typical of the Claims of the Members of the Proposed Settlement Class ................................................................................20

The claims of Plaintiff Class Representatives and the members of the proposed Settlement Class arise from the same conduct—Defendants' no-poach agreements—and therefore satisfy the typicality requirement.

Supporting Authority: *Cason-Merenda v. VHS of Mich., Inc.,* 296 F.R.D. 528 (E.D. Mich. 2013); *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519, at *13-14 (E.D. Mich. Feb. 22, 2011); *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1180 (N.D. Cal. 2013); *In re Railway Indus. Emp. No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 499 (W.D. Penn. 2019).

4.      Plaintiff Class Representatives are Adequate Representatives of the Members of the Proposed Settlement Class ................................................................21

Plaintiff Class Representatives share a common interest with the members of the proposed Settlement Class in proving their claims and seeking redress from Defendants. There are no conflicts between the Class Representatives and members of the proposed Settlement Class because all Plaintiffs were affected by the suppression of competition and compensation stemming from Defendants' no-poach agreements. Additionally, Class Counsel has extensive experience prosecuting antitrust law claims, particularly in the context of class actions, involving no-poach agreements.

Supporting Authority: *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1180 (N.D. Cal. 2013); *In re Railway Indus. Emp.No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 499 (W.D. Penn. 2019); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981); *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 563 (6th Cir. 2007).

ii.      Predominance and Superiority Are Shown Here ..........................22

1.      Common Questions of Law and Fact Predominate ..........23

Issues common to the proposed Settlement Class—such as the existence and scope of the alleged no-poach agreements, and their market and compensation impact—predominate over individual questions and thus make class treatment appropriate. Additionally, any individual issues are outweighed by common ones because the common theory of liability, impact and damages can be pursued by the class.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH
DEFENDANT CACI INTERNATIONAL, INC. AND CACI TECHNOLOGIES, LLC

Supporting Authority: *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997); *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851-52 (6th Cir. 2013).

2.     Class Action Litigation is the Superior Method By Which to Adjudicate Plaintiffs' Claims ............................25

The individual interests of Settlement Class members in controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism. There were many workers hired at JAC Molesworth who would have been affected by Defendants' unlawful no-poach agreements. Resolving all of the workers' claims would conserve judicial and private resources, as well as hasten class recovery.

Supporting Authority: *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 533 (E.D. Mich. 2003); *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 403 (S.D. Ohio 2007).

VI.    THE PROPOSED NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED ........................................................................................26

The parties have agreed that notice of the settlement be disseminated by direct mail in a long-form notice, as well as a short-form email notice. This notice is reasonable calculated to reach the interested parties.

Supporting Authority: *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008) (citing *Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 283 (6th Cir. 2005)).

VII.   THE FINAL APPROVAL HEARING SHOULD BE SCHEDULED .................27

VIII.  CONCLUSION ........................................................................................28

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT CACI INTERNATIONAL, INC. AND CACI TECHNOLOGIES, LLC

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agretti v. ANR Freight Sys., Inc.*,
 982 F.2d 242 (7th Cir. 1992) ...................................................8

*In re Am. Med. Sys., Inc.*,
 75 F.3d 1069 (6th Cir. 1996) ...........................................18, 20

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997).................................................22, 23, 24

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
 133 S. Ct. 1184 (2013) ....................................................17, 23

*In re Automotive Parts Antitrust Litig.*
 No. 12-md-02311, 2019 WL 11005451 (E.D. Mich. Dec. 29, 2019)................13, 16

*Beattie v. CenturyTel, Inc.*,
 511 F.3d 554 (6th Cir. 2007) ...............................................22

*Bobbitt v. Acad. of Reporting*,
 No. 07-10742, 2009 WL 2168833 (E.D. Mich. Jul. 21, 2009) ................8

*Bowers v. Windstream Ky. East, LLC*,
 No. 3:09-cv-440-H, 2013 WL 5934019 (W.D. Ky. Nov. 1, 2013) ...........15

*In re Cardizem CD Antitrust Litig.*,
 200 F.R.D. 297 (E.D. Mich. 2001) ........................................25

*In re Cardizem CD Antitrust Litig.*,
 218 F.R.D. 508 (E.D. Mich. 2003) .............................11, 13, 14, 16

*Cason-Merenda v. VHS of Mich., Inc.*,
 296 F.R.D. 528 (E.D. Mich. 2013) ....................16, 18, 20, 23

*In re Chambers Dev. Sec. Litig.*,
 912 F. Supp. 822 (W.D. Pa. 1995).........................................12

*Clark Equip. Co. v. Int'l Union of Allied Indus. Workers of Am.*,
 803 F.2d 878 (6th Cir. 1986) ................................................9

*In re Corrugated Container Antitrust Litig.*,
 643 F.2d 195 (5th Cir. 1981) ...............................................21

*In re Corrugated Container Antitrust Litig.*,
   MDL No. 310, 1981 WL 2093 (S.D. Tex. June 4, 1981) .................................................7, 12

*Date v. Sony Elecs., Inc.*,
   No. 07-15474, 2013 WL 3945981 (E.D. Mich. July 31, 2013) ...............................................18

*In re Delphi Corp. Sec. Derivatives & ERISA Litig.*,
   248 F.R.D. 483, 486 n. 2 (E.D. Mich. 2008) .........................................................................16

*Dillworth v. Case Farms Processing, Inc.*,
   No. 5:08-cv-1694, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010)...........................................25

*In re Domestic Airline Travel Antitrust Litig.*,
   378 F. Supp. 3d 10 (D.D.C. 2019) .............................................................................7, 12, 14

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   No. 02-md-1486, 2006 WL 1530166 (N.D. Cal. June 5, 2006) .............................................19

*In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.*,
   481 F.3d 1119 (9th Cir. 2007) ...............................................................................................12

*Fidel v. Farley*,
   534 F.3d 508 (6th Cir. 2008) ..................................................................................................26

*In re Foundry Resins Antitrust Litig.*,
   242 F.R.D. 393 (S.D. Ohio 2007)..................................................................................*passim*

*Ganci v. MBF Inspection Servs., Inc.*,
   323 F.R.D. 249 (S.D. Ohio 2017)............................................................................................25

*Golden v. City of Columbus*,
   404 F.3d 950 (6th Cir. 2005) ..................................................................................................17

*Griffin v. Flagstar Bancorp, Inc.*,
   No. 2:10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ....................8, 15, 18, 20

*In re High-Tech Emp. Antitrust Litig.*,
   985 F. Supp. 2d 1167 (N.D. Cal. 2013) ................................................................19, 20, 21, 22

*Hyland v. Homeservices of America, Inc.*,
   No. 3:05–CV–612–R, 2009 WL 2525587 (W.D. Ky. Aug. 17, 2009) ...................................13

*Int'l Union, UAW v. Ford Motor Co.*,
   Nos. 05-74730, 06-10331, 2006 WL 1984363 (E.D. Mich. July 13, 2006) ........................9, 20

*IUE-CWA v. Gen. Motors Corp.*,
   238 F.R.D. 583 (E.D. Mich. 2006) .......................................................................................8, 14

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH
DEFENDANT CACI INTERNATIONAL, INC. AND CACI TECHNOLOGIES, LLC

*Leonhardt v. ArvinMeritor, Inc.*,
  581 F. Supp. 2d 818 (E.D. Mich. 2008)...................................................................15

*In re Linerboard Antitrust Litig.*,
  292 F. Supp. 2d 631 (E.D. Pa. 2003) ................................................................7, 12

*Marcus v. Dep't of Revenue*,
  206 F.R.D. 509 (D. Kan. 2002).............................................................................22

*Miller v. Univ. of Cincinnati*,
  241 F.R.D. 285 (S.D. Ohio 2006) ..........................................................................17

*In re Packaged Ice Antitrust Litig.*,
  No. 08-md-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) ..................10, 11

*In re Packaged Ice Antitrust Litig.*,
  No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011) ............... *passim*

*In re Processed Egg Products Antitrust Litig.*,
  284 F.R.D. 249 (E.D. Penn. July 16, 2012) ........................................................7, 12

*In re Railway Indus. Empl. No-Poach Antitrust Litig.*,
  395 F. Supp. 3d 464 (W.D. Penn. 2019)................................................................21

*Rankin v. Rots*,
  No. 02-cv-71045, 2006 WL 1876538 (E.D. Mich. June 27, 2006) .........................9

*Raymond v. Avectus Healthcare Solutions, LLC*,
  No. 1:15-cv-559, 2020 WL 3470461 (S.D. Ohio Mar. 27, 2020) ..........................17

*In re Rent-Way Sec. Litig.*,
  305 F. Supp. 2d 491 (W.D. Pa. 2003) ....................................................................13

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ..............................................................................12

*In re Scrap Metal Antitrust Litig.*,
  527 F.3d 517 (6th Cir. 2008) ....................................................................22, 23, 24

*Sheick v. Auto Component Carrier LCC*,
  No. 2:09-cv-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010).....................14

*In re Southeastern Milk Antitrust Litig.*,
  No. 2:09-md-1000, 2010 WL 3521747 (E.D. Tenn. Sept. 7, 2010) .......................19

*Stout v. J.D. Byrider*,
  228 F.3d 709 (6th Cir. 2000) ..................................................................................20

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH
DEFENDANT CACI INTERNATIONAL, INC. AND CACI TECHNOLOGIES, LLC

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*,
   No. 1:01-cv-9000, 2001 WL 1842315 (E.D. Ohio Oct. 20, 2001) ........................................10

*Thacker v. Chesapeake Appalachia, L.L.C.*,
   259 F.R.D. 262 (E.D. Ky. 2009) ...........................................................................14, 26

*UAW v. Gen. Motors. Corp.*,
   497 F.3d 615 (6th Cir. 2007) ...................................................................................8

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
   219 F.R.D. 661 (D. Kan. 2004).............................................................................25

*In re Vitamins Antitrust Litig.*,
   209 F.R.D. 251 (D.D.C. 2002)..............................................................................24

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011),.........................................................................................16

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)...................................................................................13

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
   722 F.3d 838 (6th Cir. 2013) ..............................................................17, 18, 23, 24

**Federal Statutes**

15 U.S.C. § 1 .............................................................................................................4

**Rules**

Fed. R. Civ. P. 23 ...........................................................................................8, 16, 17

Fed. R. Civ. P. 23(a) ........................................................................................ *passim*

Fed. R. Civ. P. 23(a)(1).................................................................................................17

Fed. R. Civ. P. 23(a)(2)..........................................................................................18, 19

Fed. R. Civ. P. 23(a)(3).................................................................................................20

Fed. R. Civ. P. 23(a)(4).................................................................................................21

Fed. R. Civ. P. 23(b) .....................................................................................................16

Fed. R. Civ. P. 23(b)(3)..........................................................................................22, 23, 24, 25

Fed. R. Civ. P. 23(c)(2)(B)............................................................................................26

Fed. R. Civ. P. 23(e) ..............................................................................................1, 4, 26

Fed. R. Civ. P. 23(e)(1) .................................................................................................26

**Other Authorities**

6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §
1522 (2d ed. 1990) .................................................................................................9

4 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11.41
(4th ed. 2005) .................................................................................................9, 10, 14

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 13.12 (2004).............................8, 9, 15

MANUAL FOR COMPLEX LITIGATION (SECOND) § 30.46 (1986).....................................9

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
WITH DEFENDANT CACI INTERNATIONAL, INC. AND
CACI TECHNOLOGIES, LLC**

Plaintiffs move the Court for an Order Granting Plaintiffs' Motion for Preliminary
Approval of the Class Action Settlement with Defendants CACI International, Inc., and CACI
Technologies, LLC (separately and as successor to CACI Technologies, Inc.) (collectively,
"CACI" or "Defendant").

Plaintiffs request that the Court: (1) grant preliminary approval of the Settlement
Agreement; (2) certify the Settlement Class; (3) approve the proposed plan of notice to the
Settlement Class; (4) set a schedule for disseminating notice to Settlement Class members, as
well as deadlines to comment on or object to the Settlement; and (5) schedule a hearing pursuant
to Rule 23(e) of the Federal Rules of Civil Procedure to determine whether the proposed
Settlement is fair, reasonable and adequate and should be finally approved.

A Memorandum in Support is attached hereto and incorporated by reference.

Dated:  September 17, 2021                Respectfully Submitted,


                                          /s/ *Shawn K. Judge*_____
                                          Shawn K. Judge (0069493), Trial Attorney*
                                          skj@classlawgroup.com
                                          Mark H. Troutman (0076390)*
                                          mht@classlawgroup.com
                                          GIBBS LAW GROUP LLP
                                          505 14th Street, Suite 1110
                                          Oakland, California 94612*
                                          Telephone: (510) 350-9700
                                          Facsimile: (510) 350-9701
                                          *both working from Ohio offices

                                          Joseph R. Saveri *(Pro Hac Vice)*
                                          jsaveri@saverilawfirm.com
                                          Steven N. Williams *(Pro Hac Vice)*
                                          swilliams@saverilawfirm.com
                                          Kevin E. Rayhill *(Pro Hac Vice)*
                                          krayhill@saverilawfirm.com
                                          Esther S. Oh (*Pro Hac Vice*)
                                          eoh@saverilawfirm.com
                                          Anna-Patrice Harris (*Pro Hac Vice*)
                                          aharris@saverilawfirm.com
                                          JOSEPH SAVERI LAW FIRM, LLP
                                          601 California Street, Suite 1000
                                          San Francisco, California 94108
                                          Telephone: (415) 500-6800
                                          Facsimile: (415) 395-9940

                                          *Attorneys for Plaintiffs Sarah J. Hunter and David*
                                          *N. Youtz*

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH
DEFENDANT CACI INTERNATIONAL, INC. AND CACI TECHNOLOGIES, LLC

## MEMORANDUM IN SUPPORT

### I. INTRODUCTION

Plaintiffs Sarah J. Hunter and David N. Youtz ("Plaintiffs"), individually and as representatives of a purported Settlement Class (the "Settlement Class") submit this memorandum in support of their motion for preliminary approval of the proposed settlement agreement (the "Settlement Agreement") between Plaintiffs and Defendants CACI International, Inc., and CACI Technologies, LLC (separately and as successor to CACI Technologies, Inc.) (collectively, "CACI" or "Defendant").

The settlement creates an all-cash fund of $200,000 (the "Settlement Fund") for the benefit of the Settlement Class. The parties reached this agreement through arm's length negotiations between experienced and informed counsel after over two and a half years of litigation. The settlement represents an excellent recovery by the Settlement Class and is well within range of possible recoveries to warrant preliminary approval.

At this juncture, in considering whether to grant preliminary approval of a proposed settlement, the Court need determine only whether the settlement is within the range of possible approval. A final determination of whether the settlement is sufficiently fair, reasonable, and adequate will be made at or after the Fairness Hearing, after notice of the settlement has been mailed and published, and Class Members have been given the opportunity to object to the settlement or opt out of the class.

Plaintiffs request that the Court: (1) grant preliminary approval of the Settlement Agreement; (2) certify the Settlement Class; (3) approve the proposed plan of notice to the Settlement Class; (4) set a schedule for disseminating notice to Settlement Class members, as well as deadlines to comment on or object to the Settlement; and (5) schedule a hearing pursuant

to Rule 23(e) of the Federal Rules of Civil Procedure to determine whether the proposed Settlement is fair, reasonable and adequate and should be finally approved.

## II. CASE HISTORY

### a. Plaintiff's Factual Allegations and Claims

The United States Department of Defense contracts out much of the work traditionally thought of as military work to the private, for-profit defense contracting industry. Defendants in this action are among the largest defense contractors in the United States.

Plaintiffs allege that CACI, together with Defendants Booz Allen Hamilton, Inc. ("Booz Allen" or "BAH") and Mission Essential Personnel, LLC ("Mission Essential" or "ME") (collectively, the "Non-Settling Defendants"), entered into agreements ("No-Hire Agreements") beginning in approximately July 2017 not to hire, recruit, or solicit one another's employees working under various contracts with the United States government at a former British Royal Air Force base referred to as JAC Molesworth . Plaintiffs allege that the No-Hire Agreements fixed and suppressed compensation for Plaintiffs and the Class, and imposed unlawful restrictions on employee mobility. Plaintiffs allege the No-Hire Agreements are unlawful horizontal agreements to allocate the market for skilled professionals at JAC Molesworth, a *per se* violation of the Sherman Act, 15 U.S.C. § 1.

### b. Procedural History and Negotiations

This action was initiated by class representative Sarah Hunter on February 7, 2019, alleging Defendants entered into No-Hire Agreements with one another in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Complaint, ECF No. 1; *see also* Saveri Decl. ¶¶ 3, 4. On May 3, 2019, Plaintiffs filed a First Amended Complaint ("FAC"). Amended Complaint, ECF No. 28; *see also* Saveri Decl. ¶ 4. Defendants filed a motion to dismiss the FAC on May 16, 2019,

(Motion to Dismiss, ECF No. 30) which the Court subsequently denied on November 12, 2019. Opinion and Order, ECF No. 49; *see also* Saveri Decl. ¶¶ 6, 7.

On December 18, 2020, Plaintiffs filed a motion for class certification under seal, arguing that evidence common to the proposed class showed that Defendants, through their No-Hire Agreements, suppressed compensation for their employees. Pls.' Mtn. to Certify Class, ECF No. 154 at PageID #8698; *see also* Saveri Decl. ¶ 8. Defendants filed an opposition to the class certification motion under seal on March 12, 2021 (Def.'s Opposition, ECF No. 155), and Plaintiffs filed under seal a reply in support of their motion on May 4, 2021. Pls.' Reply Memorandum, ECF No. 157; *see also* Saveri Decl. ¶ 8.

Plaintiffs and Defendants engaged in extensive fact discovery until February 15, 2021. Saveri Decl., ¶ 9. The parties also engaged in extensive expert discovery until August 27, 2021. Saveri Decl., ¶ 9.

On April 29, 2021, Plaintiffs and CACI participated in Court-facilitated mediation during which the parties reached a settlement agreement in principle. Saveri Decl., ¶ 10.

On June 8, 2021, the parties executed an agreement resolving all of the claims of Plaintiffs and the Settlement Class against CACI. Saveri Decl., ¶ 11. As described in further detail in Section III, *infra*, Plaintiffs agree to release all of their claims against CACI in exchange for $200,000. *Id.*

The settlement represents only a partial settlement of the claims in the litigation. Plaintiffs continue to prosecute their claims against the Non-Settling Defendants, who remain jointly and severally liable for all damages caused by the members of the conspiracy.

### III.    SUMMARY OF SETTLEMENT TERMS

The Settlement Agreement, which arises from extensive arm's length and good faith

negotiations, resolves all claims of Plaintiffs and the Settlement Class against the Settling

Defendants. The details of the Settlement are contained in the Settlement Agreement attached as

Exhibit A to the Declaration of Joseph R. Saveri in Support of Plaintiffs' Motion for Preliminary

Approval of Class Action Settlement. A summary is provided below.

### a.    The Settlement Class

The Settlement Agreement defines the "Settlement Class" as follows:

> All natural persons employed by Defendants at JAC Molesworth
> during the Class Period from January 1, 2015, through June 1, 2021.
>
> Excluded from the Class are: corporate officers, members of the
> boards of directors, and senior executives of Defendants who entered
> into the illicit agreements alleged herein; employees of the United
> States government employed at JAC Molesworth during the Class
> Period; and any and all judges and justices, and chambers' staff,
> assigned to hear or adjudicate any aspect of this litigation.

*See* Saveri Decl., Ex. A, Settlement Agreement, Definition y. at 7. This is nearly the same class

definition set forth in the operative complaint. *See* FAC ¶ 45. The operative complaint differs in

that it identifies the Class Period from "January 1, 2015 through the present." *Id.*[1]

### b.    Settlement Amount

CACI has agreed to pay a total of $200,000. Saveri Decl., Ex. A, Settlement Agreement,

Definition x. at 6; Saveri Decl., Ex. A, Settlement Agreement, ¶ 22. The funds will paid into an

---

[1] The members of the class were employees of Defendants Booz Allen, Mission Essential and
CACI in connection with the provision of services to the Department of Defense. *See* FAC ¶ 18.
As required by applicable law and regulations, all such employees—and therefore members of
the Class—are United States citizens. *See id.* ¶¶ 16, 17.

escrow account ("Escrow Account") established at Citibank, N.A. within ten (10) business days of execution of the Settlement Agreement. *Id.* at Ex. A, Settlement Agreement, ¶¶ 22, 49.

### c. Attorneys' Fees and Expenses

The Settlement Agreement provides that Class Counsel may seek attorneys' fees, reimbursement of costs and expenses, and incentive awards to Class Representatives at the time of filing the Preliminary Approval Motion or at the time notice is disseminated to the Class. Saveri Decl., Ex. A, Settlement Agreement, ¶ 32. Class Counsel seeks no attorneys' fees at this time. Saveri Decl., ¶ 29. Class Counsel seeks to use the settlement funds to defray expenses incurred to date and will hold them in escrow until the claims against the other Defendants are adjudicated or resolved. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003) (permitting class plaintiffs to use proceeds of settlement to "pursue the litigation against non-settling defendants"); *see also In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519, at *13-14 (E.D. Mich. Feb. 22, 2011) ("*Packaged Ice*") (authorizing the use of settlement funds to pay for litigation expenses and noting that "[s]uch requests are not unusual"); *In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 18-19, 29 (D.D.C. 2019) (approving "icebreaker settlement" and discussing the benefits of such settlement in the further prosecution of plaintiffs' claims); *In re Processed Egg Products Antitrust Litig.*, 284 F.R.D. 249, 276 (E.D. Penn. July 16, 2012) (granting final approved for proposed class action "ice breaker" settlement that aided in "prosecuting and resolving [plaintiffs'] claims against the other Defendants"); *In re Corrugated Container Antitrust Litig.*, MDL No. 310, 1981 WL 2093, at *19-21 (S.D. Tex. June 4, 1981) (granting final approval of settlement that "broke the ice" and reasoning that such settlements can provide funds to continue prosecution of the case).

**d. Release of All Claims**

In exchange for CACI's monetary consideration, upon entry of a final judgment approving the proposed Settlement, Plaintiffs will release CACI of all claims related to any of the alleged conduct giving rise to this litigation.

## IV. PRELIMINARY APPROVAL AS REQUIRED BY RULE 23

During the proposed class action settlement approval process, the court grants preliminary approval to the settlement and provisionally certifies a settlement class. After notice of the settlement is provided to the class and the court conducts a fairness hearing, the court may grant final approval of the settlement. *See* Manual for Complex Litigation (Fourth) § 21.63 (2004) ("Manual"); *see also Bobbitt v. Acad. of Reporting*, No. 07-10742, 2009 WL 2168833, at *1 (E.D. Mich. Jul. 21, 2009) (citing authorities).

## V. THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

**a. Preliminary Approval Is Appropriate Because the Settlement Meets the Standard for Approval**

**i. The Law Favors Settlements**

It is well-established in the Sixth Circuit that the law favors settlement of class action lawsuits. *See Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013) (citing *UAW v. Gen. Motors. Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions")); *see also IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006). This applies with equal force to partial settlements. "This policy applies with equal force whether the settlement is partial, involving only some of the defendants, or complete." *Packaged Ice*, 2011 WL 717519, at *7; *see also Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) ("In complex litigation with a plaintiff class, 'partial settlements often play a vital role in resolving class actions'")

(quoting MANUAL FOR COMPLEX LITIGATION (SECOND) § 30.46 (1986)). In fact, "settlement should be facilitated at as early a stage of the litigation as possible." 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1522, at 225-26 (2d ed. 1990) (citing 1983 Advisory Committee Notes); *see also* Manual for Complex Litigation (Fourth) § 13.12 (2004) ("Manual") ("[S]ettlement should be explored early in the case").

> ii. **The Proposed Settlement is Fair, Reasonable, and Adequate and Falls within the Range of Possible Approval**

Preliminary approval of a proposed settlement should be granted where "the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies. . . and [the settlement] appears to fall within the range of possible approval." Manual § 30.41; *see also Int'l Union, UAW v. Ford Motor Co.*, Nos. 05-74730, 06-10331, 2006 WL 1984363, at *4 (E.D. Mich. July 13, 2006). The district court's role in reviewing settlements "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Clark Equip. Co. v. Int'l Union of Allied Indus. Workers of Am.*, 803 F.2d 878 (6th Cir. 1986). Courts apply "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.41 (4th ed. 2005) ("Newberg"); *c.f. Rankin v. Rots*, No. 02-cv-71045, 2006 WL 1876538, at *3 (E.D. Mich. June 27, 2006) ("[T]he only question. . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.") (internal quotation marks omitted).

When considering whether to grant preliminary approval, the Court is not required at this point to make a final determination on the adequacy of the settlement or to delve extensively into

the merits of the settlement. *See In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, No. 1:01-cv-9000, 2001 WL 1842315, at *10 (E.D. Ohio Oct. 20, 2001) ("*Sulzer Hip*"). These inquiries are reserved for the final approval stage of the class settlement approval process. Nor will any class member's substantive rights be prejudiced by preliminary approval because the proposed preliminary approval is solely to provide authority for notifying the class of the terms of the settlement agreement to set the stage for review of its final approval. *Id.; Newberg* § 11.25. Consequently, courts generally engage only in a limited inquiry to determine whether a proposed settlement falls within the range of possible approval and thus should be preliminarily approved. *Sulzer Hip*, 2001 WL 1842315, at *3-4 (preliminary approval may be based on "informal presentations" because of "substantial judicial processes that remain") (quoting Manual § 21.662 at p. 460 (2004)). *See also In re Packaged Ice Antitrust Litig.*, No. 08-md-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010) (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (inquiry limited to settlement's potential for final approval and propriety of class notice and fairness hearing).

In evaluating whether a settlement is fair, reasonable, and adequate, courts in the Sixth Circuit consider the following factors:

> (1) the likelihood of success on the merits weighed against the amount and form of relief in the settlement; (2) the complexity, expense and likely duration of the litigation; (3) the opinions of class counsel and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest. The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case.

*Packaged Ice*, 2011 WL 717519, at *8 (quotation marks and citations omitted). A court is not required at the preliminary approval stage to determine whether it ultimately will finally approve the settlement. Nevertheless, as set forth in detail below, preliminary consideration of the factors

a court considers when evaluating the fairness of a settlement for purposes of deciding whether to grant final approval supports this Court's granting preliminary approval of the Settlement Agreement.

      **iii.**    **The Settlement Agreement Reaches a Favorable Result for the Proposed Settlement Class, Particularly Given the Expense, Duration, and Uncertainty of Continued Litigation**

Antitrust class actions are "arguably the most complex action(s) to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." *In re Packaged Ice Antitrust Litig.*, No. 08-md-01952, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011) (quoting *In re Linerboard Antitrust Litig.*, 292 F. Supp.2d 631, 639 (E.D. Penn. 2003)); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 533 (E.D. Mich. 2003) ("*Cardizem*") ("Moreover, the complexity of this case cannot be overstated. Antitrust class actions are inherently complex").

Motions between Plaintiffs and CACI in this case have already been vigorously contested. Additionally, CACI would assert various defenses, and a jury trial might turn on close questions of proof, many of which would be the subject of complicated expert testimony, particularly regarding damages, making the outcome of such trial uncertain for both parties. *See, e.g.*, *Cardizem*, 218 F.R.D. at 523 (in approving settlement, noting that "the prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery" and that "no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation"); *Packaged Ice*, 2011 WL 717519, at *10 (noting the "undeniable inherent risks" in antitrust class action litigation including "whether the class will be certified and upheld on appeal, whether the conspiracy as alleged in the Complaint can be established, whether Plaintiffs will be able to demonstrate class wide

antitrust impact and ultimately whether Plaintiffs will be able to prove damages"). *Id.* Given this uncertainty, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

In addition, early settlements are of significant value. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003) (approving settlement and noting that "this settlement has significant value as an 'ice-breaker settlement'—it is the first settlement in the litigation—and should increase the likelihood of future settlements. An early settlement with one of many defendants can 'break the ice' and bring other defendants to the point of serious negotiations."); *In re Domestic Airline Travel*, 378 F. Supp. 3d at 18-19 (approving settlement and noting the "distinction" of "icebreaker settlement[s]" and their ability to encourage settlement with other defendants); *In re Processed Egg Products*, 284 F.R.D. at 276 (granting final approved for proposed class action "ice breaker" settlement); *In re Corrugated Container*, 1981 WL 2093, at *19 (granting final approval of settlement and reasoning that as the first settlement, it "broke the ice and brought other defendants to the point of serious negotiations").

Moreover, given the stakes involved, an appeal is nearly certain to follow regardless of the outcome at trial. This creates additional risk, as judgments following trial may be overturned on appeal. *See, e.g.*, *In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.*, 481 F.3d 1119 (9th Cir. 2007) ($52.5 million class action judgment following trial reversed on appeal); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs reversed and judgment entered for defendant). And even if class members were willing to assume all of the litigation risks, the passage of time would introduce still more risks in terms of appeals and possible changes in the law that would, in light of the time value of

money, make future recoveries less valuable than recovery today. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004) ("[I]t was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class."); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 501 (W.D. Pa. 2003) ("[A] future recovery, even one in excess of the proposed Settlement, may ultimately prove less valuable to the Class than receiving the benefits of the proposed Settlement at this time"). Hence, "the certain and immediate benefits to the Class represented by the Settlement outweigh the possibility of obtaining a better result at trial, particularly when factoring in the additional expense and long delay inherent in prosecuting this complex litigation through trial and appeal." *Cardizem*, 218 F.R.D. at 525.

For these reasons, the proposed Settlement Agreement provides substantial benefits and assurances while also representing a successful result for the members of the proposed Settlement Class. CACI's $200,000 payment provides for adequate compensation to the Proposed Class that will be available years earlier than if the litigation against CACI continued through trial and especially appeal.

The Settlement Agreement also specifically provides that it does not alter Non-Settling Defendants' joint and several liability for the full damages caused by the alleged conspiracies. *See* Saveri Decl., Ex. A, Settlement Agreement ¶ 21. In this regard, the Settlement Agreement is similar to one of the settlements approved in *In re Automotive Parts Antitrust Litig.*, where the court noted that plaintiffs reserved their right to recover full damages from the remaining defendants, who remained jointly and severally liable for damages, less only the amounts paid in settlement. No. 12-md-02311, 2019 WL 11005451, at *6 (E.D. Mich. Dec. 29, 2019); *see also Hyland v. Homeservices of America, Inc.*, No. 3:05–CV–612–R, 2009 WL 2525587, at *3 (W.D.

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH
DEFENDANT CACI INTERNATIONAL, INC. AND CACI TECHNOLOGIES, LLC

Ky. Aug. 17, 2009) ("Despite the settlement's negligible monetary recovery . . . [w]ith joint and several liability, the class will be able to recover the full amount of any damages); *In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 21 (D.D.C. 2019) (approving settlement where "the [s]ettlements do not limit the Class Members' ability to obtain joint and several liability and treble damages against those Non-Settling Defendants").

Here too, the Plaintiffs will be able to pursue their full damages against any Non-Settling Defendants or any future Non-Settling Defendants, with no diminution other than deduction of the actual CACI settlement amount.

### iv. The Settlement Agreement Resulted From Arm's Length Negotiations Conducted By Highly Experienced Counsel

This settlement is entitled to "an initial presumption of fairness" because it is the result of arm's length negotiations among experienced counsel. Newberg § 11.41. The judgment of proposed Settlement Class Counsel that the settlement is in the best interest of the proposed Settlement Class "is entitled to significant weight, and supports the fairness of the class settlement." *Sheick v. Auto Component Carrier LCC*, No. 2:09-cv-14429, 2010 WL 4136958, at *18 (E.D. Mich. Oct. 18, 2010) (quoting *IUE-CWA*, 238 F.R.D. at 597); *see also Cardizem*, 218 F.R.D. at 525. Courts give great weight to the recommendation of experienced counsel for the parties in evaluating the adequacy of a settlement.

"Preliminary approval of a proposed settlement is based upon the court's familiarity with the issues and evidence, as well as the arms-length nature of the negotiations prior to the proposed settlement, ensuring that the proposed settlement is not illegal or collusive." *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262 (E.D. Ky. 2009) (quoting *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 370 (S.D. Ohio 1990)). The Settlement Agreement here is the result of lengthy negotiations between counsel experienced in

complex antitrust class action litigation. The settlement was negotiated during Court-facilitated mediation. Additionally, Class Counsel undertook a diligent and thorough investigation of the legal and factual issues posed by this litigation and consulted with experienced economists before negotiating this deal.

Class Counsel for the Plaintiffs were well-informed about the facts and the strength of the claims asserted when the terms of the Settlement Agreement were negotiated. Class Counsel and Counsel for CACI had engaged in extensive motion practice and substantial discovery including the production and review of millions of pages of documents and over two dozen depositions. *See* Saveri Decl. ¶ 9. The parties submitted extensive briefs and accompanying expert reports on class certification. *Id.* ¶ 8. *See Packaged Ice*, 2011 WL 717519, at *11 ("[T]he absence of formal discovery is not an obstacle [to settlement approval] so long as the parties and the Court have adequate information in order to evaluate the relative position of the parties.") (quotation marks and citation omitted); *Griffin v. Flagstar Bancorp, Inc.*, 2013 WL 6511860, at *3 (same).

The negotiations were adversarial and conducted in the utmost good faith. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.,* 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008); *Bowers v. Windstream Ky. East, LLC*, No. 3:09-cv-440-H, 2013 WL 5934019, at *2 (W.D. Ky. Nov. 1, 2013). There is nothing in the course of the negotiations or the substance of the settlement that discloses grounds to doubt its fairness – "[w]here a class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair." MANUAL § 21.662 at 464. Significantly, this settlement was reached during a mediation by the court-appointed mediator John Camillus. The mediation

session lasted the entirety of one day and was followed by numerous one on one negotiations before a final settlement was reached.

**b. The Requirements for Certification of a Settlement Class Pursuant to Rule 23 are Met**

Courts in the Sixth Circuit regularly preliminarily approve a proposed settlement class before deciding on Plaintiffs' motion for class certification. *See, e.g.*, *In re Delphi Corp. Sec. Derivatives & ERISA Litig.*, 248 F.R.D. 483, 486 n. 2 (E.D. Mich. 2008) (granting final approval to both ERISA and Securities settlement classes, noting the court's earlier, preliminary approval of the settlement classes granted prior to a hearing on defendants' motions to dismiss); *Cardizem*, 218 F.R.D. at 516-17, 530 (granting final approval of proposed settlement, noting its earlier preliminary approval of both the proposed settlement class and the proposed settlement agreement granted prior to class certification and prior to hearing on motions to dismiss). A court may grant certification where, as here, the proposed settlement class satisfies the four prerequisites of Rule 23(a)—numerosity, commonality, typicality and adequacy—as well as one of the three subsections of Rule 23(b). *See In re Auto Parts*, No. 12-md-02311, 2019 WL 11005451, at *9-10 (E.D. Mich. Dec. 29, 2019).

While in the context of a litigated class certification motion, a trial court must conduct a "rigorous analysis" to confirm that the requirements of Rule 23 have been met, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011), even in that context "the requisite 'rigorous analysis' of the record and consideration of the merits must be focused on and limited to the question whether the Rule's requirements have been established." *Cason-Merenda v. VHS of Mich., Inc.,* 296 F.R.D. 528 (E.D. Mich. 2013)*, vacated,* No. 13-0113 (6th Cir. Jan. 6, 2014), *reinstated in full,* No. 06-15601, 2014 WL 905828 (E.D. Mich. Mar. 7, 2014) (citing *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851- 52 (6th Cir.

2013)). Permissible inquiry into the merits of plaintiffs' claims at the class certification stage is

limited:

> Rule 23 grants courts no license to engage in free-ranging merits inquiries at the
> class certification stage. Merits questions may be considered to the extent—but
> only to the extent—that they are relevant to determining whether the Rule 23
> prerequisites for class certification are satisfied.

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013) ("*Amgen*")

(citing *Dukes*, 131 S. Ct. at 2552 n.6). "In other words, district courts may not turn the class

certification proceedings into a dress rehearsal for the trial on the merits." *In re Whirlpool Corp.*,

722 F.3d 838, 851-52 (internal quotation marks and citation omitted). Here, as demonstrated

below, even under a "rigorous analysis," the requirements of Rule 23 are easily met.

### i. Plaintiffs have Shown Numerosity, Commonality, Typicality, and Adequacy under Rule 23(a)

#### 1. The Proposed Settlement Class Is So Numerous That It Is Impractical to Bring All Class Members Before the Court

There is no particular number requirement needed to satisfy the numerosity prong of Rule

23(a)(1). *Miller v. Univ. of Cincinnati*, 241 F.R.D. 285, 288 (S.D. Ohio 2006). However,

"[c]ourts routinely hold that 'a class of 40 or more members is sufficient to meet the numerosity

requirement.'" *Raymond v. Avectus Healthcare Solutions*, LLC, No. 1:15-cv-559, 2020 WL

3470461, at *4 (S.D. Ohio Mar. 27, 2020) (quoting *Castillo v. Morales, Inc.*, 302 F.R.D. 480,

487 (S.D. Ohio 2014)). A class representative need only show that joining all members of the

potential class is extremely difficult or inconvenient. *Golden v. City of Columbus*, 404 F.3d 950,

965 (6th Cir. 2005). The "sheer number of potential litigants in a class, especially if it is more

than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *In re Foundry*

*Resins Antitrust Litig.*, 242 F.R.D. 393, 403 (S.D. Ohio 2007) (citing *Bacon v. Honda of America*

*Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004)); *see also In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

Here, the proposed Settlement Class consists of all natural persons employed by Defendants at JAC Molesworth during the Class Period from January 1, 2015, through June 1, 2021. Saveri Decl., Ex. A, Settlement Agreement, Definition y. at 7. Excluded from the Class are: corporate officers, members of the boards of directors, and senior executives of Defendants who entered into the illicit agreements alleged herein; employees of the United States government employed at JAC Molesworth during the Class Period; and any and all judges and justices, and chambers' staff, assigned to hear or adjudicate any aspect of this litigation. *Id.* Given the Class Period, it is beyond dispute that many persons who were employed by Defendants at JAC Molesworth were affected by Defendants' No-Hire Agreements. Additionally, the proposed Class for class certification contains over 400 members. *See* Pls.' Mtn. to Certify Class, ECF No. 154 at PageID #8724. As a result of the large number of putative class members and their geographic distribution throughout the United States, joinder is highly impractical.

2. <u>Class Representatives and the Proposed Settlement Class Share Common Legal and Factual Questions</u>

Commonality only requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). While Rule 23(a)(2) speaks of questions of law or fact in the plural, "there need be only one common question to certify a class." *In re Whirlpool Corp.*, 722 F.3d at 853; *see also Cason-Merenda*, 296 F.R.D. at 536 (one common question of law or fact is sufficient); *Griffin v. Flagstar Bancorp Inc.*, 2013 WL 6511860, at *6 (same); *Date v. Sony Elecs., Inc.*, No. 07-15474, 2013 WL 3945981, at *3 (E.D. Mich. July 31, 2013) (same). Antitrust class actions are routinely certified by courts in this District and elsewhere. Plaintiffs'

allegations of "a per se violation of the antitrust laws are exactly the kind of allegations which may be proven on a class-wide basis through common proof." *In re Se. Milk Antitrust Litig.*, No. 2:09-md-1000, 2010 WL 3521747, at *10 (E.D. Tenn. Sept. 7, 2010).

The presence of common questions is readily established here because No-Hire Agreement cases such as this one deal with common legal and factual questions about the existence, scope and effect of Defendants' no-poach agreements. *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1180 (N.D. Cal. 2013). In antitrust cases, courts "have consistently held that the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. 02-md-1486, 2006 WL 1530166, at *3 (N.D. Cal. June 5, 2006).

Here, Plaintiffs have identified the following issues common to the proposed Settlement Class:

- Whether Defendants engaged in a conspiracy among themselves to not hire one another's workers at JAC Molesworth or other European locations;

- Whether the purpose and effect of Defendants' no-poach agreements was to restrain competition for Defendants' skilled employees;

- Whether the purpose and effect of Defendants' no-poach agreements was to suppress the mobility and compensation of Defendants' skilled employees; and

- What injunctive relief, if any, is appropriate; and

- The aggregate damages.

*See* Pls.' Mtn. to Certify Class, ECF No. 154 at PageID #8727. Any of these substantive issues would by itself establish the requisite commonality under Rule 23(a)(2).

3. Plaintiff Class Representatives' Claims Are Typical of the Claims of the Members of the Proposed Settlement Class

Rule 23(a) also requires typicality of the class representatives' claims. *See* Fed. R. Civ. P. 23(a)(3). "The [typicality] requirement is not onerous," *Int'l Union, UAW v. Ford Motor Co.*, 2006 WL 1984363, at \*19, and courts liberally construe it. *See In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 403. "In the antitrust context, typicality is established when the named plaintiffs and all class members allege[] the same antitrust violation by defendants." *Cason- Merenda*, 296 F.R.D. at 537 (quoting *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 405); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000); *In re Am. Med. Sys.*, 75 F.3d at 1082; *Packaged Ice*, 2011 WL 717519, at \*6. "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." *Griffin v. Flagstar Bancorp, Inc.*, 2013 WL 6511860, at \*6 (quotation marks and citation omitted); *Packaged Ice*, 2011 WL 717519, at \*6 (same).

Because the claims of Plaintiff Class Representatives and the members of the proposed Settlement Class arise from the same conduct, namely Defendants' no-poach agreements, Rule 23(a)(3) is satisfied. *See Cason-Merenda*, 296 F.R.D. at 537 (finding typicality met where "the claims of the named Plaintiffs and those of the remaining members of the proposed class all arise from the same conspiracy and are based on the same theory of liability under the Sherman Act.") (internal quotation marks and citation omitted)); *Packaged Ice*, 2011 WL 717519, at \*6 ("Because all Class Members' claims arise from . . . a conspiracy to allocate markets in violation of the Sherman Act, their claims are based on the same legal theory and the typicality requirement . . . is met"); *In re High-Tech Emp.*, 985 F. Supp. 2d at 1181 (reasoning typicality was met because in no-poach antitrust cases, "typicality usually will be established by plaintiffs and all class members alleging the same antitrust violations by defendants") (internal quotations

omitted); *In re Railway Indus. Empl. No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 499 (W.D. Penn. 2019) ("If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences.") (internal quotations omitted).

    4.   <u>Plaintiff Class Representatives are Adequate Representatives of the Members of the Proposed Settlement Class</u>

The final requirement of Rule 23(a) is that the representative parties "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Sixth Circuit has articulated two criteria for determining adequacy of representation: "'1) [t]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 407 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). Plaintiffs share common interests with the members of the class. As shown above, their claims arise out of the same course of conduct and share a common interest in proving their claims and seeking redress from the Defendants. *See In re High-Tech Empl.*, 985 F. Supp. 2d at 1181; *In re Railway Indus. Empl.*, 395 F. Supp. 3d at 499. Moreover, there are no conflicts between them and the proposed Settlement Class because Plaintiff and members of the proposed Settlement Class were all affected by the suppression of competition and compensation stemming from Defendants' No-Hire Agreements and thus have the same interests in establishing liability. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes" (internal quotation marks and citation omitted)).

In addition, Plaintiffs have retained counsel who are well experienced in antitrust law, class actions, and in particular, cases involving no-poach agreements. Saveri Decl., ¶ 23 ; *see also In re High-Tech Emp.*, 985 F. Supp. 2d at 1181 (finding the adequacy requirement satisfied in a case where class counsel had experience in litigating antitrust class actions and no-poach cases); *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 563 (6th Cir. 2007) (finding adequacy met where "plaintiffs' attorney is an experienced practitioner in this area because of the numerous class action cases in which counsel has participated") (internal quotations and citations omitted).

Plaintiffs' counsel has vigorously prosecuted the class claims, and they will continue to do so through all phases of the litigation, including trial. *See Marcus v. Dep't of Revenue*, 206 F.R.D. 509, 512 (D. Kan. 2002) ("In absence of evidence to the contrary, courts will presume the proposed class counsel is adequately competent to conduct the proposed litigation"). The Joseph Saveri Law Firm, LLP and Gibbs Law Group LLP have provided adequate representation to the Settlement Class during every step of this litigation: the pleading stage, motions to dismiss, discovery, class certification, and now this settlement. For these reasons, the Court should appoint them Settlement Class Counsel here.

### ii. Predominance and Superiority Are Shown Here

To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: common questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) ("*Amchem*"); *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008). With respect to both requirements, the Court need not inquire

whether the "case, if tried, would present intractable management problems, for the proposal is

that there be no trial." *Amchem*, 521 U.S. at 620 (internal citations omitted).

1. Common Questions of Law and Fact Predominate

"Rule 23(b)(3) does not mandate that a plaintiff seeking class certification prove that

each element of the claim is susceptible to classwide proof." *In re Whirlpool Corp.*, 722 F.3d at

859. Instead, "'[a] claim will meet the predominance requirement when there exists generalized

evidence which proves or disproves an element on a simultaneous, class-wide basis, since such

proof obviates the need to examine each class member's individualized position.'" *In re Foundry

Resins Antitrust Litig.*, 242 F.R.D. at 408 (quoting *In re Cardizem CD Antitrust Litig.*, 200

F.R.D. 297, 307 (E.D. Mich. 2001)). Common questions need only predominate; they need not

be dispositive of the litigation. *Id.* (citing *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D.

Minn. 1995)); *cf. In re Scrap Metal Antitrust Litig.*, 527 F.3d at 535-36 (holding issues regarding

the amount of damages do not destroy predominance). "[T]he mere fact that questions peculiar to

each individual member of the class action remain after the common questions of the defendant's

liability have been resolved does not dictate the conclusion that a class action is impermissible."

*Cason-Merenda*, 296 F.R.D. at 535-36 (quoting *Powers v. Hamilton Cnty. Pub. Def. Comm.*, 501

F.3d 595, 619 (6th Cir. 2007)). As pertinent to the Plaintiffs' request here to provisionally certify

the proposed Settlement Class under Rule 23(b)(3), the Supreme Court instructed that "Rule

23(b)(3) requires a showing that *questions* common to the class predominate, not that those

questions will be answered, on the merits, in favor of the class." *Amgen*, 133 S. Ct. at 1191.

Because the Plaintiffs allege conduct that injured the members of the proposed Settlement

Class, issues common to the members of the proposed Settlement Class—for example, the

existence and scope of the alleged No-Hire Agreements among Defendants and the market

and compensation impact of Defendants' agreements—predominate over any individual questions, and therefore class treatment of the claims is appropriate for purposes of this settlement. *See Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws."); *see also In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 254 (D.D.C. 2002) (noting that an antitrust allegation is sufficient to establish predominance of common questions). This Circuit has also held "[p]redominance is a test readily met in certain cases alleging . . . violations of the antitrust laws, because proof of the conspiracy is a common question that is thought to predominate over the other issues of the case." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 535 (quoting *Amchem*, 521 U.S. at 625). Furthermore, here the evidence that will prove a violation as to one Settlement Class Member is common to the others and will be sufficient to prove it as to all—the anticompetitive conduct is not dependent on the separate conduct of the individual members of the proposed Settlement Class. *See Packaged Ice*, 2011 WL 717519, at *7.

Common issues outweigh any individual ones because the common theory of liability, impact and damages can be pursued by the class. *See, e.g.*, *In re Whirlpool Corp.*, 722 F.3d at 861 ("[I]t remains the 'black letter rule' that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members.") (internal quotation marks and citation omitted); *Scrap Metal*, 527 F.3d at 535 (where common issues determine liability, fact that damages calculation may involve individualized issues does not defeat predominance). Here, as in the great majority of antitrust cases, issues common to the proposed Settlement Class predominate in this case. These common issues of liability and impact predominate over any individual issues and strongly support provisional certification of the proposed Settlement Class.

2. <u>Class Action Litigation is the Superior Method By Which to Adjudicate Plaintiffs' Claims</u>

Rule 23(b)(3) also requires that a class action be superior to other available methods of fairly adjudicating the controversy. The superiority of class certification over other available methods is measured by consideration of certain factors, including: the class members' interests in controlling the prosecution of individual actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability of concentrating the litigation of various claims in the particular forum; and the likely difficulties in managing a class action. *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *4 (N.D. Ohio Mar. 8, 2010).

Courts consistently hold that class actions are a superior method of resolving antitrust claims like those alleged here. *See Ganci v. MBF Inspection Servs., Inc*., 323 F.R.D. 249, 263 (S.D. Ohio 2017) ("Class treatment is superior to other methods of adjudication when it will promote economy, expediency, and efficiency." (internal quotations omitted)); *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 678 (D. Kan. 2004) (noting that individual litigation of antitrust claims would be "grossly inefficient, costly, and time consuming"). Here, the interests of the members of the proposed Settlement Class in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism. *Cardizem*, 200 F.R.D. at 325-26 (finding that class action is superior because it ensures fair and efficient adjudication). Between the three Defendants, there were many workers hired for jobs at JAC Molesworth who would have been affected by Defendants' unlawful No-Hire Agreements. Resolving all workers' claims in a single class action would conserve both judicial and private resources and would hasten the class members' recovery. *See, e.g.*, *In re Foundry Resins*, 242 F.R.D. at 411-12 ("Repeatedly litigating the same issues in individual suits

would produce duplicate efforts, unnecessarily increase litigation costs, impose an unwarranted

burden on this Court and other courts, and create a risk of inconsistent results").

## VI.   THE PROPOSED NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED

Plaintiffs request that the Court approve the forms of notice of the Settlement to the Class

as well as the proposal for dissemination of the Notice. Rule 23(c)(2)(B) requires the Court to

"direct to class members the best notice that is practicable under the circumstances, including

individual notice to all members who can be identified through reasonable effort." With regard to

class action claims that are settled, Rule 23(e) instructs courts to "direct notice in a reasonable

manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).

"[D]ue process does not require actual notice, but rather a good faith effort to provide actual

notice." *Thacker*, 259 F.R.D. at 271-72. To comport with the requirements of due process, notice

must be "reasonably calculated to reach interested parties." *Fidel v. Farley*, 534 F.3d 508, 514

(6th Cir. 2008) (citing *Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 283 (6th Cir. 2005)).

The parties have agreed that notice of the settlement be disseminated by direct mail

publication (through print, email, and/or online notices). Saveri Decl., Ex. A, Settlement

Agreement, ¶ 7. Plaintiffs understand the class to consist of approximately 400 individuals resent

or former employees of Defendants who possessed Eligible Job Titles as set forth in the class

definition. *See* Pls.' Mtn. to Certify Class, ECF No. 154 at PageID #8724; Saveri Decl. Exh. D.

(list of Eligible Job Titles attached as Exhibit A to the Long Form Notice) . Plaintiffs understand

Defendants maintain current direct mail and email addresses with respect to them. In order to

disseminate notice, Plaintiffs will require current or last known mailing and email addresses for

these individuals. Saveri Decl. ¶ 29.

In plain language, the long form Notice—which will be mailed and posted to the
Settlement Website—provides a brief explanation of the case; the terms of the proposed
Settlement; the maximum amount Class Counsel may seek for reimbursement of litigation costs
and expenses; the date, time, and place of the final approval hearing; the opportunity to opt out
of the Settlement Class; and the procedures for Settlement Class members to follow in
submitting comments on and objections to the Settlement and in arranging to appear at the
settlement hearing to state any objections. *See* Saveri Decl., Ex. C. Plaintiffs also propose a short
form email notice to be sent by electronic mail. *See* Saveri Decl., Ex. D.

## VII.     THE FINAL APPROVAL HEARING SHOULD BE SCHEDULED

The last step in the settlement approval process is a final approval hearing. Should the
Court grant preliminary approval, its order should state the time, date, and place of the final
approval hearing. This hearing allows the Court to hear all evidence and the arguments necessary
to determine whether the settlement should be finally approved as fair, adequate, and reasonable.
Plaintiffs request that the Court grant preliminary approval and set the following schedule,
which includes the final approval hearing date, settlement objection deadlines, as well as the
briefing schedules for final approval and any motions regarding distribution and use of the
Settlement Funds:

| EVENT | SCHEDULE |
|---|---|
| Settling Defendant to provide an electronic list of potential settlement class members along with their mail and e-mail addresses | Within 14 days of Preliminary Approval Order |
| Notice of Class Action Settlement to Be Mailed, Emailed and Posted on Internet | Within 28 days of Preliminary Approval Order |
| Deadline for Class Members to Object to and/or Request Exclusion from the Class | Within 28 days of the Notice of Class Action Settlement |

| Motions for Final Approval, and Reimbursement of Litigation Costs and Expenses, to Be Filed by Plaintiffs' Counsel, together with Affidavit of Compliance with Notice Requirements | To be filed 30 days prior to the Final Approval Hearing |
|---|---|
| Opposition(s), if any, to Motions for Final Approval and Reimbursement of Expenses | 20 days prior to Final Approval Hearing |
| Replies in Support of Motions for Final Approval, and Reimbursement of Expenses, to Be Filed by Plaintiffs' Counsel, only in the event Objections to the Motions are Filed | 10 days prior to Final Approval Hearing |
| Service/Filing of Notices of Appearance at Final Approval Hearing | 10 days prior to Final Approval Hearing |
| Final Approval Hearing | _____, 2021 at _____ a.m./p.m. |

## VIII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the motion for preliminary approval be granted and that the Court enter the accompanying Proposed Order:

(1) Preliminarily approving the Settlement Agreement;

(2) Provisionally certifying the proposed Settlement Class;

(3) Staying the proceedings against CACI in accordance with the terms of the Settlement Agreement; and

(4) Appointing Class Counsel for the Plaintiffs as Settlement Counsel for this settlement.

Dated: September 17, 2021                Respectfully Submitted,

                                              */s/ Shawn K. Judge*
                                              Shawn K. Judge (0069493), Trial Attorney\*
                                              skj@classlawgroup.com
                                              Mark H. Troutman (0076390)\*
                                              mht@classlawgroup.com
                                              GIBBS LAW GROUP LLP
                                              505 14th Street, Suite 1110
                                              Oakland, California 94612\*
                                              Telephone: (510) 350-9700
                                              Facsimile: (510) 350-9701
                                              \*both working from Ohio offices

                                              Joseph R. Saveri *(Pro Hac Vice)*
                                              jsaveri@saverilawfirm.com
                                              Steven N. Williams *(Pro Hac Vice)*
                                              swilliams@saverilawfirm.com
                                              Kevin E. Rayhill *(Pro Hac Vice)*
                                              krayhill@saverilawfirm.com
                                              Esther S. Oh (*Pro Hac Vice*)
                                              eoh@saverilawfirm.com
                                              Anna-Patrice Harris (*Pro Hac Vice*)
                                              aharris@saverilawfirm.com
                                              JOSEPH SAVERI LAW FIRM, LLP
                                              601 California Street, Suite 1000
                                              San Francisco, California 94108
                                              Telephone: (415) 500-6800
                                              Facsimile: (415) 395-9940

                                              **Attorneys for Plaintiffs Sarah J. Hunter and David N. Youtz**

<u>**CERTIFICATE OF SERVICE**</u>

A copy of the foregoing was filed electronically with the Court on September 17,

2021. Service will be made by the Court's electronic notification system, and all parties may

access this filing through the Court's system.

*/s/ Shawn K. Judge*

Shawn K. Judge (0069493)

30      CASE NO. 2:19-cv-00411

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH
DEFENDANT CACI INTERNATIONAL, INC. AND CACI TECHNOLOGIES, LLC