# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

SARAH J. HUNTER, AND DAVID N. YOUTZ, on behalf of themselves and all others similarly situated,

      Plaintiffs,

          v.

BOOZ ALLEN HAMILTON INC, *et al.*,

      Defendants.

CASE NO. 2:19-cv-00411

Chief Judge Algenon L. Marbley

Magistrate Judge Chelsey M. Vascura

# PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES

## <u>TABLE OF CONTENTS</u>

**Page(s)**

MEMORANDUM IN SUPPORT ......................................................................................... 1

I.      INTRODUCTION ........................................................................................ 1

II.     CASE HISTORY ......................................................................................... 4

        a.     Plaintiffs' Factual Allegations and Claims ................................. 4

        b.     Procedural History and Negotiations ......................................... 5

        i.      Filing Complaints and Early Case Management Efforts. ........................... 5

        ii.     Discovery ................................................................................... 5

        iii.    Motion Practice ......................................................................... 6

        iii.    Expert Discovery ...................................................................... 6

        iv.    Mediation and Settlement Negotiations .................................... 7

        v.     The Settlement Agreements ....................................................... 8

        i.      Distribution of Settlement Fund Amount .................................. 8

        vi.    Attorneys' Fees and Expenses .................................................. 9

III.    ARGUMENT ............................................................................................. 10

  a.    Plaintiffs' Attorneys' Fees Are Reasonable under Sixth Circuit Precedent ......... 10

  i.    Plaintiffs' Attorney's Fees Are Reasonable When Cross-Checked Using the Percentage of the Fund Method ........................................................... 12

  ii.   Class Counsel Committed Significant Time and Resources to Prosecuting This Action ........................................................................................ 13

  iii.  Class Counsel Took on Significant Risks in Pursuing This Action ...................... 14

  b.    Plaintiffs' Attorneys' Fees Are Reasonable under the *Ramey* Factors ................. 15

  c.    Class Counsel Should Be Awarded Its Unreimbursed Costs ................................ 21

  d.    The Court Should Award Incentive Fees To The Class Representatives. ............. 22

  V.    CONCLUSION ........................................................................................... 23

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Austin v. Mayflower Moving Grp., LLC*, No. 22-CV-03846-ALM-KAJ, 2021 WL
3847793 (S.D. Ohio Aug. 27, 2021) .............................................................................10, 11

*Bldg. Serv. Loc. 47 Cleaning Contractors Pension Plan v. Grandview Raceway*,
46 F.3d 1392 (6th Cir. 1995) ..................................................................................................11

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ...........................................................................13

*Bowling v. Pfizer, Inc*., 102 F.3d 777 (6th Cir. 1996) ............................................................11, 16

*Brotherton v. Cleveland*, 141 F. Supp. 2d 907 (S.D. Ohio 2001) ............................................13, 22

*Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885) ...........................................................13

*Conrad v. Jimmy John's Franchise, LLC*, No. 18-CV-00133-NJR, 2021 WL
3268339 (S.D. Ill. July 30, 2021) ...........................................................................................15

*Deslandes v. McDonald's USA, LLC*, No. 17 C 4857, 2022 WL 2316187 (N.D.
Ill. June 28, 2022) ...................................................................................................................15

*Enter. Energy Corp. v. Columbia Gas Transmission Corp*., 137 F.R.D. 240 (S.D.
Ohio 1991) ...............................................................................................................................13

*Equal Emp. Opportunity Comm'n v. Dolgencorp, LLC*, 899 F.3d 428 (6th Cir.
2018) ........................................................................................................................................11

*Gascho v. Glob. Fitness Holdings*, LLC, 822 F.3d 269 (6th Cir. 2016) .......................................13

*Gascho v. Glob. Fitness Holdings, LLC*, No. 2:11-CV-436, 2014 WL 1350509
(S.D. Ohio Apr. 4, 2014) ...................................................................................................11, 12

*In re Broadwing, Inc. ERISA Litig*., 252 F.R.D. 369 (S.D. Ohio 2006) .......................................13

*In re Cardizem CD Antitrust Litig*., 218 F.R.D. 508 (E.D. Mich. 2003) ......................................22

*In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822 (W.D. Pa. 1995) ..............................................3

*In re Dun & Bradstreet Credit Servs. Customer Litig*., 130 F.R.D. 366 (S.D. Ohio
1990) ........................................................................................................................................13

*In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL
5158730 (N.D. Cal. Sept. 2, 2015) .......................................................................................5, 17

*In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) .................................................................15

*In re Se. Milk Antitrust Litig.*, No. 2:07-CV 208, 2012 WL 12875983 (E.D. Tenn. July 11, 2012).....................................................................................................22

*In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029 (S.D. Ohio), *decision clarified*, 148 F. Supp. 2d 936 (S.D. Ohio 2001) ....................................18

*Linneman v. Vita-Mix Corp.*, 970 F.3d 621 (6th Cir. 2020) ...........................4

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974) ..................2, 15, 16

*Ranney v. Am. Airlines*, No. 1:08-CV-137, 2016 WL 471220 (S.D. Ohio Feb. 8, 2016) .......................................................................................................................12

*Rawlings v. Prudential-Bache Prop., Inc.*, 9 F.3d 513 (6th Cir. 1993) ........................11

*Smillie v. Park Chem. Co.*, 710 F.2d 271 (6th Cir.1983)....................................16

*Sprague v. Universal Transportation Sys.*, No. 1:18-CV-165, 2022 WL 3444981 (S.D. Ohio June 22, 2022) ..................................................................12

**Federal Statutes**

Clayton Act, 15 U.S.C. § 15 .................................................................................11, 18

Foreign Trade Antitrust Improvements Act....................................................15

Sherman Act, 15 U.S.C. § 1.......................................................................................5

**Federal Rules**

Fed. R. Civ. P. 23(e)(2)..................................................................................................3, 14

Fed. R. Civ. P. 54(d)(2)...................................................................................................v

**MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES**

Pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, Plaintiffs Sarah J. Hunter and David N. Youtz (collectively, "Plaintiffs") respectfully move the Court for an award of fees and expenses to counsel for Plaintiffs (the "Motion") in connection with the settlements reached the above-captioned action and for entry of the [Proposed] Order granting the Motion. Defendants do not oppose the relief sought in this motion.

Plaintiffs have reached settlement agreements with Defendants totaling $5,275,000, of which $1,325,000 will go directly to the class. The settlements were reached after four years of hard-fought, intensive litigation, including substantial discovery, extensive motion practice, an evidentiary hearing, and three rounds of mediation. The settlements are fair, reasonable, and adequate, and they represent an excellent outcome for the Settlement Class.

Pursuant to the Court's December 22, 2022 Opinion and Order (ECF No. 257) partially granting Plaintiffs' Motion for Preliminary Approval, and its subsequent Order (ECF No. 261) approving Plaintiffs' revisions of the class notices and ordering the commencement of the notice period, notices have been disseminated to the Class.

This motion is based on the reasons set forth in the following Memorandum in Support, the accompanying Declaration of Joseph R. Saveri and exhibits, the presentation of Plaintiffs' counsel in the upcoming April 12, 2023 Fairness Hearing, and all relevant papers and testimony in the record, which are incorporated by reference.

Dated: March 8, 2023                  Respectfully Submitted,

/s/ *Shawn K. Judge*
Shawn K. Judge (0069493), Trial Attorney*
skj@classlawgroup.com
Mark H. Troutman (0076390)*
mht@classlawgroup.com
GIBBS LAW GROUP LLP
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
*both working from and licensed only in Ohio

Joseph R. Saveri *(Pro Hac Vice)*
jsaveri@saverilawfirm.com
Steven N. Williams *(Pro Hac Vice)*
swilliams@saverilawfirm.com
Kevin E. Rayhill *(Pro Hac Vice)*
krayhill@saverilawfirm.com
JOSEPH SAVERI LAW FIRM, LLP
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940

*Attorneys for Plaintiffs*
*Sarah J. Hunter and David N. Youtz*

<u>**MEMORANDUM IN SUPPORT**</u>

## I.   INTRODUCTION

Over the course of four years, the Joseph Saveri Law Firm, LLP ("JSLF) and Gibbs Law

Group LLP ("GLG," together with JSLF, "Class Counsel") have vigorously prosecuted this

action on behalf of Plaintiffs Sarah J. Hunter and David N. Youtz ("Plaintiffs" or "Class

Representatives") and the Settlement Class.[1] As a result of Class Counsel's efforts, Defendants[2]

have agreed to fund an all-cash payment of $1,325,000 for the benefit of the Settlement Class

(the "Settlement Fund Amount"). Defendants have also agreed to pay up to $3,950,000 as

payment for incurred costs, incentive awards, the costs of notice and settlement administration,

and attorney's fees in connection with achieving this result for the Settlement Class. This

settlement represents an excellent outcome given the complexity of the issues, the size of the

Settlement Class, and the risks and delay that further litigation and possible appeal would bring.

The payment would reimburse Class Counsel for their costs but pay counsel approximately

$1,718,435, approximately twenty-eight percent (28%) of the fees incurred over the last 4 four

years in this hard fought litigation. The payment of this amount would also equal approximately

twenty-nine percent (32.58%) of the total created by the settlement. The fee is justified when

---

[1]     The Court approved the following Settlement Class solely for the purposes of settlement in its December 22, 2022 Opinion and Order conditionally granting preliminary approval (ECF No. 257):

All natural persons employed by Defendants at JAC Molesworth during the Class Period from January 1, 2015, through June 30, 2022.

Excluded from the Class are: corporate officers, members of the boards of directors, and senior leaders of Defendants; employees of the United States government employed at JAC Molesworth during the Class Period; and any and all judges and justices, and chambers' staff, assigned to hear or adjudicate any aspect of this litigation.

[2]     Defendants are Booz Allen Hamilton Inc. ("Booz Allen"), Mission Essential Personnel, LLC ("ME"), CACI International, Inc., and CACI Technologies LLC (together with CACI International, Inc., "CACI,").

analyzed using the lodestar method, as a percentage of the recovery, and by application of the *Ramey* factors recognized in the Sixth Circuit. *Ramey v. Cincinnati Enquirer, Inc*., 508 F.2d 1188, 1196 (6th Cir. 1974) ("*Ramy*").

Since February 7, 2019, Class Counsel has engaged in hard-fought, intensive litigation on behalf of a small class of current and former employees of Defendants, which are some of the largest employers in the defense intelligence contracting industry. Class Counsel reviewed more than one million pages of documents produced by Defendants, took or defended three dozen depositions, engaged in extensive motion practice, took part in a day-long evidentiary hearing regarding their Motion for Class Certification, and engaged in three rounds of mediation in a successful effort to attain an exemplary result for the Settlement Class. Class Counsel hired leading experts whose work in other no-poach class actions had led to successful outcomes and worked with the experts to draft five expert reports and develop important testimony. *See* Declaration of Joseph R. Saveri in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Expenses ("Saveri Decl."), ¶ 10-12.

This Court presided over each step of this litigation. The Court is thoroughly familiar with the efforts expended on both sides of the litigation, the novelty and complexity of the issues, and the substantial risk that Plaintiffs and their counsel could come away from this litigation empty-handed. Class Counsel's efforts resulted in settlements with Defendants totaling $5.275 million, an excellent result for the Settlement Class, as borne out by the fact that to date there have been only two opt-outs (three tenths of one percent of the total Settlement Class) and not a single objection.[3]

---

[3]    Plaintiffs will update these numbers in their reply in support of their motion for final approval on April 3, 2023, as discussed during the February 24, 2023 conference call with the Court.

The Court has preliminarily approved settlement agreements between Plaintiffs and all Defendants (the "Settlement Agreements"). The Settlement Agreements, described in detail below in Section III, create an all-cash fund of $1,325,000 (the "Settlement Fund") for the benefit of the Settlement Class. The parties reached the Settlement Agreements through arm's length negotiations between experienced and informed counsel after several years of litigation. The Settlement Fund represents an excellent recovery by the Settlement Class and is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2). While individual distributions will of course vary, on average Settlement Class members will receive over $2,000 apiece, a "very large bird in the hand." *See In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995) ("[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes").

Plaintiffs now ask the Court to approve $3,950,000 to cover unreimbursed costs incurred by Plaintiffs, incentive awards to the Class Representatives, and attorney's fees in connection with achieving this result for the Settlement Class. Plaintiffs have incurred approximately $2.129 million in costs in this litigation, primarily for experts. With its complex theory and the challenges of proving liability, causation, and damages, this case required extensive work from experienced experts, and that comes at a cost.

Plaintiffs ask the Court to approve incentive awards of $10,000 each to Sarah J. Hunter and David N. Youtz, the Class Representatives, who took considerable risks by standing up to some of the largest employers in their industry and who fulfilled their duties to the Settlement Class with discipline, persistence, and courage. The Class Representatives put their careers on the line, taking the risk that serving as a plaintiff would jeopardize or limit their future job prospects and careers. Saveri Decl., ¶ 33. Both provided conscientious responses to written

discovery and performed admirably under intense, hours-long questioning at their depositions. *Id*. These incentive awards are well earned and richly deserved.

Plaintiffs also ask the Court to approve approximately $1.82 million for attorney's fees. The payment of this amount to compensate Class Counsel for their time would represent a substantial discount on the attorney and staff time devoted to this case over the last four years. Class Counsel expended over 11,000 hours prosecuting this litigation, for a lodestar of $6,393,266. *See* Saveri Decl., ¶¶ 31. The time spent also represents a substantial opportunity cost in light of the fact that Class Counsel devoted this wholly contingent time to this case, to the exclusion of other matters. This is a highly reasonable fee for achieving this result, particularly in light of the complexity of the claims, the skill and experience of Class Counsel, and the risk of receiving no payment taken on by Class Counsel. *See Linneman v. Vita-Mix Corp*., 970 F.3d 621, 634 (6th Cir. 2020) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010)) ("the lodestar calculation 'presumptively' yields a reasonable fees award").

The response of the class has been overwhelmingly positive. There have been no objections to the settlement. Saveri Decl., ¶ 34. There have been no objections to the request for payment of expenses, incentive awards, or the payment of attorneys' fees. Saveri Decl., ¶ 34.

## II. CASE HISTORY

Because of the Court's thorough familiarity with the facts of this litigation and Plaintiffs' recent recitation of them in support of preliminary approval, (*see* ECF Nos. 253 and 253-1), Plaintiffs here provide only a short summary and incorporate their prior briefing and the Court's Opinion and Order (ECF No. 257) by reference.

### a. Plaintiffs' Factual Allegations and Claims

Defendants conduct intelligence analysis under contracts with the U.S. Defense Intelligence Agency ("DIA"). Though all the work is and by law must be performed by U.S.

4

citizens, much of the work takes place outside the U.S., including at a former British Royal Air Force base (now administered by the DIA) in Molesworth, England. Plaintiffs allege that Defendants entered into agreements ("No-Hire Agreements") beginning in approximately July 2017 not to hire, recruit, or solicit one another's employees at Molesworth. Plaintiffs allege that the No-Hire Agreements had the purpose and effect of restricting mobility and suppressing compensation for Plaintiffs and the Settlement Class, in violation of the Sherman Act, 15 U.S.C. § 1. Defendants assert that all hiring actions were justified under the totality of the circumstances at Molesworth. Defendants have denied and continue to deny each and all of the Plaintiffs' claims and allegations of wrongdoing.

### b. Procedural History and Negotiations

#### i. Filing Complaints and Early Case Management Efforts.

Class representative Sarah Hunter initiated the action on February 7, 2019. On May 3, 2019, Plaintiffs filed a First Amended Complaint ("FAC") adding Plaintiff David Youtz. ECF No. 28. Defendants filed a motion to dismiss the FAC on May 16, 2019 (ECF No. 30), which the Court denied on November 12, 2019. Opinion and Order, ECF No. 49.

#### ii. Discovery

Plaintiffs and Defendants engaged in extensive fact discovery until February 15, 2021. Saveri Decl., ¶ 9. Class Counsel propounded and responded to written discovery, reviewed more than one million pages of documents produced by Defendants, took or defended three dozen depositions, and filed motions to compel discovery. The discovery included the production and analysis of years of complex granular employee level transaction data, as is necessary in no-poach cases or other cases involving labor or compensation practices. Saveri Decl., ¶ 10; *see also In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *10 (N.D. Cal. Sept. 2, 2015) (approving lodestar multiplier for class counsel in part for extensive

discovery efforts, including retaining experts to "assist in analyzing over 15 gigabytes of employment-related compensation and recruiting data"). The parties also engaged in extensive expert discovery until August 27, 2021. Saveri Decl., ¶¶ 10-12, 14. This required the analysis and synthesis of compensation data from the three defendants, synthesis of it and extensive statistical and econometric analysis. It required analysis of the market, market conditions as well as the anticompetitive effects of the agreements, their purported procompetitive benefits, and balancing them. It required the analysis of impact and causation and ultimately the calculation of an overcharge (here underpayment of compensation) and class wide damages. Importantly, it required the experts to analyze and determine these issues on a class-wide basis.

### iii. Motion Practice

Plaintiffs filed a motion for class certification on December 24, 2020, (ECF No. 91), and a reply to Defendants' opposition on May 4, 2020. ECF No. 154; *see also* Saveri Decl. ¶ 8. Both were supported by expert reports by Dr. Phillip Johnson. The motion is fully briefed.

On September 22, 2021, both sides filed motions for summary judgment and motions to exclude the other side's experts. Saveri Decl. ¶ 8. All of these motions are fully briefed.

On October 22, 2021, the Court conducted a day-long evidentiary hearing on the Motion for Class Certification. At the hearing, the court heard arguments from counsel. The parties also presented live testimony from their respective experts, Dr. Phillip Johnson for Plaintiffs and Professor Justin McCrary for Defendants. Each provided direct testimony and was cross-examined. *See* Transcript, ECF No. 187; *see also* Saveri Decl., ¶ 16.

### iii. Expert Discovery

Class Counsel retained Dr. Phillip Johnson to provide expert reports and testimony. Dr. Johnson used a widely accepted methodology to show that Defendants' anticompetitive actions caused classwide harm to Plaintiffs and the Settlement Class by restricting mobility and

suppressing compensation. Saveri Decl. ¶¶ 10-11. Dr. Johnson calculated single damages for the Settlement Class to be $4,219,994.

Class Counsel also retained statistician and econometrician Ted Tatos to address the methods and conclusions of Defendants' expert Justin McCrary. Saveri Decl., ¶ 12.

Defendants hired their own expert, Justin McCrary. McCrary testified among other things, that Dr. Johnson's opinion was incorrect, that there was no impact of the agreements on the class and that the class sustained no damages. In response, Class Counsel also asked Dr. Johnson and Mr. Tatos to review, analyze, critique, and rebut the expert testimony proffered by Defendants.

### iv. Mediation and Settlement Negotiations

Between April 29, 2021, and April 20, 2022, Plaintiffs participated in three separate mediation sessions with Defendants in a good faith attempt to reach a settlement. Saveri Decl., ¶¶ 19-22.

On April 29, 2021, Plaintiffs and Defendants participated in Court-facilitated mediation conducted by John Camillus, during which Plaintiffs reached a settlement agreement in principle with CACI. Saveri Decl., ¶ 19.

On June 8, 2021, Plaintiffs and CACI executed an agreement resolving all of the claims of Plaintiffs and the Settlement Class against CACI. Saveri Decl., ¶ 19. Plaintiffs agreed to release all their claims against CACI in exchange for payment of $200,000 to be used for expenses incurred in litigation, including the cost of serving notice on Settlement Class Members. Saveri Decl., ¶ 19. Plaintiffs filed a motion for preliminary approval of that settlement on September 17, 2021. ECF No. 170. On December 19, 2022, the Court granted preliminary approval. ECF No. 257.

On October 4, 2021, Plaintiffs engaged in further mediation with the remaining Defendants, Booz Allen and ME, under the auspices of Mr. Camillus, but were unable to reach an agreement. Saveri Decl., ¶ 21.

On April 20, 2022, Plaintiffs and Booz Allen and ME participated in private mediation facilitated by James Arnold, during which the parties reached a settlement agreement in principle. Saveri Decl., ¶ 22.

On September 2, 2022, Plaintiffs and Booz Allen and ME executed an agreement resolving all of Plaintiffs' claims against Booz Allen and ME. Saveri Decl., ¶ 22. Plaintiffs agreed to release all of their claims against Booz Allen and ME in exchange for a payment to the Settlement Class of $1,325,000. *See* Saveri Decl., Ex. A, Booz Allen and ME Settlement Agreement, Definition w; ¶ 12. The funds will be paid into an escrow account ("Escrow Account") established at Citibank, N.A. within thirty (30) business days of the Effective Date of the Settlement Agreement. *Id.* ¶ 22. Booz Allen and ME also agreed to pay up to $3,750,000, subject to Court approval, to cover costs incurred by Plaintiffs, incentive awards to the Class Representatives, and attorneys' fees. *Id.* ¶ 28.

### v.  The Settlement Agreements

The Settlement Agreements, which arose from extensive arm's length and good faith negotiations, resolve all claims of Plaintiffs and the Settlement Class against Defendants. *See* CACI Settlement Agreement, ECF No. 17902;  Booz Allen and ME Settlement Agreement, ECF no. 253-2.

### i. Distribution of Settlement Fund Amount

Under the terms of the first settlement, entered in June 2021 with Defendant CACI, the entire settlement amount of $200,000, if approved by the Court, would be used to help defray

costs incurred by Class Counsel in prosecuting this action. *See* CACI Settlement Motion, ECF 170.

Under the terms of the second and final settlement, entered with Defendants Booz Allen and ME in September 2022, the entire Settlement Fund Amount of $1,325,000 (plus interest, if any) of the Settlement will be distributed to the Settlement Class.[4]

No fees or costs will be deducted from the Settlement Fund Amount or the payments to Settlement Class Members from the Settlement Fund Amount. *See* ECF No. 253-2, Definition n. In the event that there are funds remaining after distribution for Settlement Class Members, Class Counsel shall move the Court for an order disposing of all such funds, including additional possible distributions to the Settlement Class and/or *cy pres* distribution as approved by the Court. *Id*. ¶ 33. No portion of or amount from the Settlement Fund Amount shall revert to the Settling Defendants. *Id.*

### vi. Attorneys' Fees and Expenses

In addition to the $200,000 provided by the CACI Settlement, the Booz Allen/ME Settlement Agreement provides that Plaintiffs' counsel may seek attorneys' fees, reimbursement of costs and expenses, and incentive awards for the Class Representatives in a separate motion to the Court at the time of filing the Preliminary Approval Motion or at the time notice is

---

[4] Under the proposed Plan of Allocation, each Settlement Class member will receive a share of the Settlement Fund calculated by dividing his or her estimated total salary during the Class Period (the numerator) by the combined estimated total salaries paid to all Settlement Class Members during the Class Period (the denominator) and multiplying the resulting fraction by the Settlement Fund Amount of $1,325,000 (plus interest, if any). *See* Saveri Decl., Ex. A, Attachment 3, Plan of Allocation. In other words, each Settlement Class member's share of the Settlement Fund Amount will be directly proportional to his or her share of total compensation paid to all Settlement Class members at JAC Molesworth during the Class Period.

disseminated to the Settlement Class. *Id*. ¶¶ 28, 31. Defendants have agreed to provide up to $3,750,000 (the "Fee and Cost Amount) to cover Court-ordered fees and costs in connection with achieving this result for the Settlement Class.[5] To date, Class Counsel have incurred approximately $2,129,065 in expenses, primarily for expert witnesses. In addition, Plaintiffs have incurred and expect to incur expenses of approximately $75,000 associated with notice and administration of the settlement. Class Counsel seek incentive awards for the Class Representatives totaling $20,000. Class Counsel will also ask the Court for approximately $1,525,000 as payment for attorneys' fees. Saveri Decl., ¶ 29.[6] To date, Class Counsel have reported a lodestar of approximately $6,366,730 in attorneys' fees incurred. Class Counsel have not received any payment or reimbursement for attorneys' fees or costs in this matter.

## III.   ARGUMENT

### a.   Plaintiffs' Attorneys' Fees Are Reasonable under Sixth Circuit Precedent

In the Sixth Circuit, an award of attorneys' fees "must be reasonable, meaning it must be 'one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys.'" *Austin v. Mayflower Moving Grp., LLC*, No. 22-CV-03846-ALM-KAJ, 2021 WL 3847793, at *4 (S.D. Ohio Aug. 27, 2021) ("*Austin*") (quoting *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)). "It is within the district court's discretion to determine the 'appropriate

---

[5]    As described above, in June 2021, Defendant CACI agreed to settle claims against it for $200,000, which, if approved by the Court, is to be used to help defray costs incurred by Class Counsel in prosecuting this action. *See* CACI Settlement Motion, ECF 170.

[6]         $3,750,000     Booz Allen/ME
           $200,000       CACI
           **$3,950,000     total**
           ($20,000.00)   incentive awards
           $(82,500)      notice and administration
           $(2,129,065)   costs
           **$1,718,435     attorney's fees**

method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them.'" *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 779 (6th Cir. 1996) (quoting *Rawlings*, 9 F.3d at 516). "There are two methods for determining whether a fee is reasonable: the lodestar method and the percentage-of-the-fund method." *Austin*, 2021 WL 3847793, at \*4 (citing *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011)). The Sixth Circuit has approved both methods. *Id.* (citing *Rawlings v. Prudential-Bache Prop., Inc.*, 9 F.3d 513, 515–16 (6th Cir. 1993)). Indeed, "district courts often employ both the lodestar and percentage of the fund methods, using each as a cross-check against the other." *Gascho v. Glob. Fitness Holdings, LLC*, No. 2:11-CV-436, 2014 WL 1350509, at \*35 (S.D. Ohio Apr. 4, 2014) ("*Gascho*"), report and recommendation adopted, No. 2:11-CV-00436, 2014 WL 3543819 (S.D. Ohio July 16, 2014), aff'd, 822 F.3d 269 (6th Cir. 2016). The Sixth Circuit requires only that attorneys' fees "be reasonable under the circumstances." *Rawlings*, 9 F.3d at 516 (citing *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir.1983)). "[T]he district court must provide a clear statement of the reasoning used in adopting a particular methodology and the factors considered in arriving at the fee." *Id.*

In the Sixth Circuit, "[t]here is a 'strong presumption' that [a] lodestar figure represents a reasonable fee." *Bldg. Serv. Loc. 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (supplemented, 483 U.S. 711 (1987)); *see also Equal Emp. Opportunity Comm'n v. Dolgencorp, LLC*, 899 F.3d 428, 436 (6th Cir. 2018) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010)) (same). Here, in a case brought under the federal antitrust law, attorneys' fees are also expressly authorized by statute. *See* 15

U.S.C. § 15 (in addition to damages, plaintiffs are entitled to recover the cost of suit, including a reasonable attorney's fee.").

Here, Class Counsel's fee has been determined using the lodestar technique. Class Counsel devoted over 11,000 hours to this case. Saveri Decl., ¶¶ 32. The total lodestar based on Class Counsel's rates is approximately $6,400,000. Plaintiffs request for $1,718,435 represents approximately 28% of the incurred fees.

Numerous cases in this district have held that a proposed fee that is less than the lodestar is reasonable. *See Sprague v. Universal Transportation Sys*., No. 1:18-CV-165, 2022 WL 3444981, at *1 (S.D. Ohio June 22, 2022) ("the fee's reasonableness is further confirmed because the requested fee award is less than Plaintiffs' counsel's actual lodestar"); *Gascho*, No. 2:11-CV-436, 2014 WL 1350509, at *35 (S.D. Ohio Apr. 4, 2014), *report and recommendation adopted*, No. 2:11-CV-00436, 2014 WL 3543819 (S.D. Ohio July 16, 2014), *aff'd*, 822 F.3d 269 (6th Cir. 2016) (requested fees lower than the lodestar amount held reasonable reasonable); *Ranney v. Am. Airlines*, No. 1:08-CV-137, 2016 WL 471220, at *1 (S.D. Ohio Feb. 8, 2016) (same). That the proposed fee is less than 25% of lodestar indicates that the requested fee is reasonable.

### i. Plaintiffs' Attorney's Fees Are Reasonable When Cross-Checked Using the Percentage of the Fund Method

The reasonableness of the fee can be confirmed by a cross-check on the basis of the percentage of the fund. "When conducting a percentage of the fund analysis, courts must calculate the ratio between attorney's fees and benefit to the class. Attorney's fees are the numerator and the denominator is the dollar amount of the Total Benefit to the class (which

includes the 'benefit to class members,' the attorney's fees and may include costs of administration)." *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 282 (6th Cir. 2016).[7]

Here, Class Counsel are asking the Court to approve attorneys' fees of approximately $1,718,435. The proposed fees represent 32.58% of the total settlement amounts of $5,275,000, well within the acceptable range for percentage of the fund fee amounts. *See*, *e.g.*, *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 380 (S.D. Ohio 2006) (acknowledging reasonableness of attorneys' fees ranging from 20 to 50 percent); *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 910 (S.D. Ohio 2001) (same); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990) (same).

### ii. Class Counsel Committed Significant Time and Resources to Prosecuting This Action

This is a complex case against large Defendants with experienced, sophisticated counsel. Class Counsel have vigorously prosecuted this case for more than four years, including: successfully opposing Defendants' motion to dismiss; engaging in nearly two years of intensive discovery, including drafting and responding to several rounds of written discovery, producing and reviewing over one million pages of documents, engaging in motion practice, taking or defending thirty-six depositions, many of which involved witnesses in England, retaining two experts and developing five expert reports, and deposing each of Defendants' two experts twice;

---

[7] When an individual or group of individuals obtain a benefit on behalf of a class of similarly situated individuals, they are entitled to collect attorneys' fees under longstanding equitable principles. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 248 (S.D. Ohio 1991) ("*Enterprise Energy*") (citing *Boeing* 444 U.S. at 478–79 and other cases) (same). The principal of compensating lawyers for providing value to a common source of property is firmly established in the common law and under principles of equity. *See Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 123 (1885).

drafting briefing regarding class certification, Daubert motions, and summary judgment; and engaging in three rounds of intense mediation which led to the successful resolution of this litigation.

Proving Plaintiffs' allegations required the services of top rank experts experienced with this type of case. Plaintiffs' expert Dr. Phillip Johnson examined documents and testimony, reviewed economic theory and literature, conducted econometric analyses—including multivariate regression analyses, and engaged in a before-and-after examination of Defendants' compensation data to show that the alleged no-hire agreements were capable of suppressing, and did suppress, compensation. To show classwide impact under Rule 23, Dr. Johnson demonstrated general price effects combined with internal equity policies that derived in compensation structures at each Defendant. Plaintiffs' expert Ted Tatos applied his understanding of antitrust economics to show that purported procompetitive effects asserted by Defendants' expert were illusory because they took place in a different market than the anticompetitive effects demonstrated by Dr. Johnson. Plaintiffs offered the live testimony of Dr. Johnson at the October 22, 2021 evidentiary class certification hearing.

Defendants also retained Justin McCrary as an expert economist. Plaintiffs retained Dr. Johnson and Mr. Tatos to review and critique the opinion of Mr. McCrary. Plaintiffs took the deposition of Mr. McCrary on two occasions and cross-examined him at the evidentiary hearing.

### iii. Class Counsel Took on Significant Risks in Pursuing This Action

Class Counsel took on substantial risk in taking this case on a wholly contingent fee basis, devoting substantial time and resources to the Action with no guarantee of payment. Class Counsel engaged in hard-nosed, arms-length negotiations that resulted in a substantial recovery for the Settlement Class, at no cost to the Settlement Class Members. Defendants did not give the settlement clear sailing, reserving the right to challenge this motion.

While Class Counsel has had past success prosecuting no-hire actions such as this,[8] there is no guarantee of success, and some recent civil no-poach cases have faced significant challenges, including judgments for defendants.[9] Moreover, the alleged agreements concerned employees working overseas, raising a potential obstacle to Plaintiffs' claims under the Foreign Trade Antitrust Improvements Act. Plaintiffs successfully addressed this challenge at the motion to dismiss stage, but Defendants continued to raise the issue in their answer to Plaintiffs' amended complaint and their motion for summary judgment. *See* ECF No. 66 (Defendants' Answer to FAC) at PageID 943-947; ECF No. 75 (Defendants' Motion for Summary Judgment) at PageID 3637-641).

### b. Plaintiffs' Attorneys' Fees Are Reasonable under the *Ramey* Factors

In addition, courts in the Sixth Circuit consider six factors (commonly referred to as the "*Ramey* Factors") when assessing whether proposed attorney's fees are reasonable, with the first two factors being the most important:

(1) the value of the benefit rendered to the plaintiff class;

(2) the value of the services on an hourly basis;

(3) whether the services were undertaken on a contingent fee basis;

---

[8]     *See*, *e.g.*, *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5159441, at *7 (N.D. Cal. Sept. 2, 2015).

[9]     *See*, *e.g.*, *Deslandes v. McDonald's USA, LLC*, No. 17 C 4857, 2022 WL 2316187, at *7 (N.D. Ill. June 28, 2022); *Conrad v. Jimmy John's Franchise, LLC*, No. 18-CV-00133-NJR, 2021 WL 3268339, at *12 (S.D. Ill. July 30, 2021). As Plaintiffs have pointed out, these cases are easily distinguishable from the current action. *See* Plaintiffs' Reply to Defendants' Post-Class Certification Hearing Brief, ECF No. 196 at PageID 20350, n.13. Nonetheless, those cases represent real downside risks associated with the continued prosecution of these cases, even before the uncertainty inherent in jury trials. Class Counsel took these risks in account, successfully guiding this action to settlement. Saveri Decl., ¶¶ 19, 22.

(4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;

(5) the complexity of the litigation; and

(6) the professional skill and standing of counsel involved on both sides.

*Bowling v. Pfizer, Inc*., 102 F.3d 777, 780 (6th Cir. 1996); *see also Smillie v. Park Chem. Co*., 710 F.2d 271, 275 (6th Cir. 1983) (same, citing *Ramey v. Cincinnati Enquirer, Inc*., 508 F.2d 1188, 1196 (6th Cir.1974)).

Here, Plaintiffs easily satisfy the *Ramey* factors.

### i. The Proposed Settlement Represents a Significant Valuable Benefit to the Class

Class Counsel have won two hard-fought settlements totaling $5,275,000, of which $1,325,000 will be distributed directly to the Settlement Class Members, providing an excellent outcome and valuable benefit for Plaintiffs and the Settlement Class. After several years of litigation against well-funded Defendants, who are among the largest and most powerful defense contractors in the United States, Class Counsel procured a large settlement fund that will provide significant payments to each and every Settlement Class Member.

The work performed by Class Counsel was substantial. Class Counsel researched and prepared two complaints; successfully opposed Defendants' motion to dismiss; undertook significant discovery, drafted the motion for class certification and presented evidence, including expert testimony, at the evidentiary hearing for class certification; drafted a motion for summary judgment; opposed Defendants' motion for summary judgment; drafted a Daubert motion and opposed Defendants' *Daubert* motions; and negotiated two settlements with Defendants, which included extensive mediation sessions. Saveri Decl., ¶¶ 19, 22.

As a result of Class Counsel's efforts, most Settlement Class Members will receive a four-figure distribution from the settlement. This is an excellent outcome for the Settlement Class.

### ii. The Value of Class Counsel's Service on an Hourly Basis Favors Granting Plaintiffs' Motion.

Class Counsel have recorded over 11,000 hours to this litigation,[10] amounting to a total lodestar of approximately $6,400,000. As indicated above, Plaintiffs are seeking approximately 28.91 percent of that amount a significant discount,[11] which is more than four times the amount Class Counsel is asking the Court to approve. Class Counsel's hourly rates are reasonable in light of the skill, experience, and commitment they bring to this class action. Class Counsel are skilled class action attorneys with more than seventy years' experience between them. JSLF and GLG have generated well over $6 billion in settlements and successful resolutions for their clients. Saveri Decl. ¶ 35. Class Counsel's hourly rates have been held to be reasonable in multiple class actions, including other no-hire cases. *See, e.g., High-Tech*, 2015 WL 5158730, at *8.

### iii. Class Counsel Undertook the Matter on a Wholly Contingent Basis.

Class Counsel undertook this case on a wholly contingent fee and cost basis. To date, they have not been paid for their efforts, and have not been reimbursed for the significant expenses they have paid in pursuing this action. As noted above, Class Counsel has devoted more than 11,000 hours, billable at approximately $6,400,000, to this action, and incurred approximately $2,129,064 in expenses, primarily for expert witnesses. Class Counsel took on

---

[10]    Exclusive of work performed on this motion, for which Class Counsel are not seeking payment.

[11]    In total, a payment of $1,718,435 for 11,000 hours of time would equal a payment of approximately $156 per hour.

considerable risk in bringing this action, with no guarantee they would be paid. To date, Class

Counsel have received no compensation for their efforts or reimbursement for their expenses.

### iv. Society Has an Important Stake in Rewarding Attorneys who Produce Class Benefits in No-Poach and other Class Action.

The complexity of this case, combined with the expense and massive effort required to

prosecute it, meant that no individual employee could have pursued the case alone. Class

Counsel expended significant resources of time and money pursuing this action. Bringing a case

of this magnitude would be cost prohibitive for any individual Settlement Class Member.

"Attorneys who take on class action matters serve a benefit to society and the judicial process by

enabling such small claimants to pool their claims and resources." *In re Telectronics Pacing Sys.,*

*Inc*., 137 F. Supp. 2d 1029, 1043 (S.D. Ohio), *decision clarified*, 148 F. Supp. 2d 936 (S.D. Ohio

2001). Moreover, for over 100 years, since the inception of Section 4 of the Clayton Act, private

antitrust litigation is a key component of the antitrust enforcement regime in the United States. In

particular, as the Department of Justice and the Federal Trade Commission have recently

recognized, enforcement of the antitrust laws with respect to labor and labor markets, in

particular with respect to no poach agreements is a significant salutary purpose of the antitrust

enforcement regime in the United States. *See Antitrust Guidance for Human Resource*

*Professionals* (Department of Justice/Federal Trade Commission 2016) ("*Guideline*s').[12]

---

[12] https://www.justice.gov/atr/file/903511/download. As the Guidelines note:

> Free and open markets are the foundation of a vibrant economy. Just as
> competition among sellers in an open marketplace gives consumers the benefits of
> lower prices, higher quality products and services, more choices, and greater
> innovation, competition among employers helps actual and potential employees
> through higher wages, better benefits, or other terms of employment. Consumers
> can also gain from competition among employers because a more competitive
> workforce may create more or better goods and services.

Class Counsel's prosecution of this also served the public interest because the rights of a small group of employees against large and powerful corporations that dominate the industry Plaintiffs work in have been vindicated. This is in keeping with the policy of the U.S. Department of Justice, which has stated that it "intends to proceed criminally against naked wage-fixing or no-poaching agreements. These types of agreements eliminate competition in the same irredeemable way as agreements to fix product prices or allocate customers, which have traditionally been criminally investigated and prosecuted as hardcore cartel conduct." US DOJ and FTC, Antitrust Guidance for Human Resource Professionals at 4, October 2016, available for download at https://www.justice.gov/atr/file/903511/download.

### v.  This Was an Extremely Complex Case Against Sophisticated Opponents.

This was a complex class action asserting a relatively novel legal theory. The breadth of the work required of Class Counsel was also a function of the scope of complexity of Plaintiffs' claims. Plaintiffs allege that Defendants were the only employers for defense intelligence workers at Molesworth, England, meaning they had monopoly power and could suppress compensation. FAC, ¶¶ 28-31, PageID 308-309. Plaintiffs allege that beginning in 2015 Defendants entered into agreements between and among one another not to recruit, solicit, or hire one another's workers at Molesworth. *Id.*

As alleged, these agreements had the effect of restricting mobility for Plaintiffs and the Settlement Class Members on an individual level because, as Plaintiffs demonstrated in the class certification briefing, individual Molesworth workers who attempted to improve their compensation and career opportunities by moving to another Defendant at Molesworth, were nearly always rebuffed, frequently with the explanation that the company could not hire them

---

Guidelines, 1

due to the No-Hire Agreements. Saveri Decl., ¶¶ 10-11; *see also* Plaintiffs' Motion for Class Certification and Memorandum in Support Thereof ("Class Cert. Mot."), ECF No. 91, § II.D.1., PageID 1538-1542; *see also* Expert Report of Phillip Johnson, Ph.D. ("Johnson Class Cert. Rpt."), Dec. 18, 2020, ECF No. 91-3 § IV, PageID 1587-1599.

Plaintiffs allege that the agreements also had classwide impacts that extend beyond individuals whose attempts to change positions were rebuffed. Plaintiffs allege that the No-Hire Agreements suppressed mobility and compensation by removing upward pressure on wages because Defendants no longer had to compete for one another's workers, and no longer had to compensate their own workers at the market rate because they knew their competitors would not be competing for the workers. Johnson Class Cert. Rpt., ¶ 66, PageID 1600. Decreased mobility deprives workers of information about their market value: when workers are able to find better-paying work, they share the information with current and former co-workers, giving those workers data points to be used in their own wage negotiations, driving up wages. No-hire agreements deny workers access to this information about their market value. *Id.*, ¶ 72, PageID 1602-603. Restricted mobility also has a residual suppressing effect, as studies have shown that workers that are blocked from opportunities to advance early in their careers earn less at every stage of their careers, they fall behind on compensation and never catch up. *Id.*, ¶ 67, PageID 1600.

Discovery and expert opinions were needed for each of the issues in the preceding paragraph, as well for antitrust injury, classwide impact and damages. Saveri Decl., ¶ 10-11. Cases with such high stakes warrant a significant investment by Class Counsel to put the Settlement Class in the best position possible to achieve a recovery. Class Counsel committed the substantial resources required for each task, never straying from their commitment to

prosecute the Settlement Class's claims to the fullest. Saveri Decl, ¶ 29. The case was vigorously defended at virtually every stage, from the motion to dismiss stage, merits and expert discovery, class certification, and eventually mediation and settlement. Saveri Decl., ¶ 30. Virtually no stone was unturned. Plaintiffs were required to meet this defense toe-to-toe over several years, including the period of time spanning the COVID pandemic. Saveri Decl., ¶ 30.

### vi.  Counsel on Both Sides Are Highly Skilled and Highly Regarded.

Class Counsel have over seventy years' experience between them bringing and winning antitrust class actions and other complex litigation. JSLF has served a lead counsel in many high-profile national class actions and has secured over $4 billion in awards and restitution for his clients. GLG is also a leader in class actions, and local counsel Shawn K. Judge and Mark H. Troutman have extensive experience with class actions and other complex litigation and a deep understanding of local practice. Defendants' counsel are highly skilled counsel who defended their clients vigorously at every turn. Counsel's track record of success and skill was demonstrated in this case. While the litigation was hard fought, the quality of the work was high and conducted according to the highest standards of professionalism and advocacy.

The Ramey Factors all support approving Class Counsel's proposed attorneys' fees. The proposed fees are reasonable whether analyzed under lodestar method, or on a percentage basis. The Court should grant Plaintiffs' motion and award the proposed fees of $1,620,000 to Class Counsel.

### c.  Class Counsel Should Be Awarded Its Unreimbursed Costs.

Similarly, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, *In re Cardizem CD Antitrust Litig*., 218 F.R.D. 508, 535 (E.D. Mich. 2003) This includes such items as expenses incurred in connection with document productions, consulting with experts and

consultants, travel and other litigation-related expenses." *Id*. To date, JSLF has incurred $2,330,000 in unreimbursed expenses, and anticipates incurring an additional $75,000 to cover the cost of administering and distributing the Settlement Fund Amount to the Settlement Class.[13] The expenses were incurred in the ordinary course of this litigation and are documents by the contemporaneous financial and accounting records of Class Counsel. These costs—and the records which support them—are of the type awarded and relied on in class action cases of this type.

### d. The Court Should Award Incentive Fees To The Class Representatives.

"Courts may grant incentive awards as a class action expense to particular members of the class." *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913 (S.D. Ohio 2001) (citing *Thornton v. East Texas Motor Freight*, 497 F.2d 416, 420 (6th Cir.1974)). Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *In re Se. Milk Antitrust Litig*., No. 2:07-CV 208, 2012 WL 12875983, at *5 (E.D. Tenn. July 11, 2012) (quoting *Rodriguez v. West Publ'g. Corp*., 563 F.3d 948, 958-59 (9th Cir. 2009)).

The requested incentive awards should be awarded here. Plaintiffs ask the Court to approve incentive awards of $10,000 each for the Class Representatives, who took enormous personal and professional risks and showed uncommon strength and courage by taking a stand against three of the largest employers in their industry. The decision and determination to serve as a class representative, particularly in an employment context, is significant and should not be

---

[13]     CACI has agreed to provide $200,000 under their separate settlement agreement. Those funds are also to be used to cover litigation expenses.

underestimated. Each was subjected to intensive and grueling questioning during their depositions yet never wavered from their commitment to this action. They performed their duties as Class Representatives completely and admirably, providing honest constructive feedback and guidance regarding Plaintiffs' filings and discovery responses. They kept abreast of developments in the case. Their principled stand ensured that each and every member of the Settlement Class will be compensated for Defendants' alleged actions. In light of the contributions of the Class Representatives, incentive awards of $10,000 are reasonable.

## IV.    THE RESPONSE OF CLASS MEMBERS SUPPORTS THE MOTION

V.    The Settlement Agreements are widely approved by the Settlement Class. To date, there have been no objections to the Settlement Agreements and only four opt-outs. Saveri Decl., ¶ 34.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the motion for attorneys' fees and costs and enter the accompanying Proposed Order.

Dated: March 8, 2023                     Respectfully Submitted,

                                         */s/ Shawn K. Judge*_____
                                         Shawn K. Judge (0069493), Trial Attorney*
                                         skj@classlawgroup.com
                                         Mark H. Troutman (0076390)*
                                         mht@classlawgroup.com
                                         GIBBS LAW GROUP LLP
                                         1111Broadway, Suite 2100
                                         Oakland, California 94607
                                         Telephone: (510) 350-9700
                                         Facsimile: (510) 350-9701
                                         *both working from and licensed only in Ohio

                                         Joseph R. Saveri *(Pro Hac Vice)*
                                         jsaveri@saverilawfirm.com
                                         Steven N. Williams *(Pro Hac Vice)*
                                         swilliams@saverilawfirm.com
                                         Kevin E. Rayhill *(Pro Hac Vice)*
                                         krayhill@saverilawfirm.com
                                         JOSEPH SAVERI LAW FIRM, LLP
                                         601 California Street, Suite 1000
                                         San Francisco, California 94108
                                         Telephone: (415) 500-6800
                                         Facsimile: (415) 395-9940

                                         ***Attorneys for Plaintiffs***
                                         ***Sarah J. Hunter and David N. Youtz***

## **CERTIFICATE OF SERVICE**

A copy of the foregoing was filed electronically with the Court on March 8, 2023.

Service will be made by the Court's electronic notification system, and all parties may access

this filing through the Court's system.

*/s/ Shawn K. Judge*
Shawn K. Judge (0069493)