## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

SARAH J. HUNTER, AND DAVID N. YOUTZ, on behalf of themselves and all others similarly situated,

      Plaintiffs,

          v.

BOOZ ALLEN HAMILTON INC, *et al.*,

      Defendants.

CASE NO. 2:19-cv-00411

Chief Judge Algenon L. Marbley

Magistrate Judge Chelsey M. Vascura

## PLAINTIFFS' CORRECTED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS WITH DEFENDANTS BOOZ ALLEN HAMILTON INC., MISSION ESSENTIAL PERSONNEL, LLC, CACI INTERNATIONAL, INC., AND CACI TECHNOLOGIES, LLC

# <u>TABLE OF CONTENTS</u>

**Pages(s)**

MOTION FOR FINAL APPROVAL ............................................................................................ vi

MEMORANDUM IN SUPPORT ................................................................................................ 1

I.      INTRODUCTION ........................................................................................................... 1

The Settlement Agreements between Plaintiffs and Defendants are fair, reasonable, and adequate. They are the product of arm's length, good faith negotiations between experienced and well-informed counsel conducted over many months under the supervision of two mediators. Only four class members have opted out, and none have objected. Under the terms, Plaintiffs and the Settlement Class will relinquish all claims arising from the allegations in Plaintiffs' First Amended Complaint and provide a classwide release. Defendants will create an all-cash fund of $1,325,000 for the exclusive benefit of the Settlement Class. Defendants have also agreed to pay up to $3,950,000 (the "Fees and Costs Amount") to pay incentive awards and reimburse Class Counsel for their unreimbursed expenses and attorneys' fees. *See* CACI settlement Agreement, ECF No. 170-2; Booz Allen-ME Settlement Agreement, ECF No. 253-2.

II.     THE PRELIMINARY APPROVAL ORDER AND CLASS NOTICE ............................ 2

The Court has granted preliminary approval and certified the class for settlement purposes only. The Court appointed the Joseph Saveri Law Firm. LLP, and Gibbs Law Group, LLP as Class Counsel, and Rust Consulting, Inc. as Settlement Administrator. Plaintiffs served notices on the class on February 6, 2023. Defendants notified Plaintiffs of additional Settlement Class members on February 22, 2023. Notices for the additional Plaintiffs were mailed on February 24, 2023, giving them twenty-eight days to opt-out or object. Email notices were inadvertently not sent until March 7. Settlement Class members were given twenty-eight days to opt-out or object. The Settlement Administrator has not been able to contact four Settlement Class members despite concerted attempts.

III.    CASE HISTORY ............................................................................................................. 6

The parties have engaged in intensive litigation for four years, including extensive fact discovery and expert discovery, motion practice, evidentiary hearings, and settlement negotiations.

    a.    Procedural History and Negotiations ................................................................. 6

           i.    Filing Complaints and Early Case Management Efforts. .................................... 6

           ii.    Discovery ...................................................................................................... 6

           iii.   Motion Practice ............................................................................................. 7

           iv.  Expert Discovery .......................................................................................... 8

           v.    Mediation and Settlement Negotiations ........................................................... 8

vi.   The Settlement Agreements .............................................................. 9

vii.  Distribution of Settlement Fund Amount .......................................... 10

viii. Attorneys' Fees and Expenses .......................................................... 10

b.   Release of All Claims ............................................................................. 11

IV.   THE PROPOSED SETTLEMENT SHOULD BE APPROVED .................................... 11

a.   Approval Is Appropriate Because the Settlement Meets the Standard for Approval ...... 11

i.   The Law Favors Settlements .............................................................. 11

It is well-established in the Sixth Circuit that the law favors settlement of class action lawsuits. S*ee Stinson v. Delta Mgmt. Assocs., Inc*., 302 F.R.D. 160, 165 (S.D. Ohio 2014); H*ainey v. Parrott*, 617 F.Supp.2d 668, 679 (S.D. Ohio 2007).

ii.   The Proposed Settlements are Fair, Reasonable, and Adequate ....................... 12

"Before approving a settlement, a district court must conclude that it is 'fair, reasonable, and adequate.'" I*nt'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007); *accord Stinson*, 302 F.R.D. at 164; *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 588 (E.D. Mich. 2006). Courts apply an initial presumption of fairness when a proposed class settlement was negotiated at arm's length by counsel for the class. 4 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.41 (4th ed. 2005).

iii.  The Proposed Settlements Satisfy the Requirements of Rule 23(e)(2) .............. 13

When considering whether a proposed settlement is fair, reasonable, and adequate, Rule 23(e)(2) provides factors to consider. Fed. R. Civ. P. 23(3(2). Here, the settlements satisfy the requirements: (A) the class has been adequately represented by the class representatives and counsel; (B) the settlement was negotiated at arm's length; (C) the potential costs, risks, and delay of trial and appeal, the proposed methods of settlement administration and distribution, the proposed attorneys' fees, and the terms of the Settlement Agreements all weigh in favor of approval; and the settlements treat Settlement Class Members equitably. Fed. R. Civ. P. 23(e)(2). The class representatives worked assiduously on behalf of the class to aid in the prosecution of this action. Settlement Class Counsel committed thousands of hours and paid millions of dollars in expenses to the zealous prosecution of Plaintiffs and the Settlement Class's claims. Plaintiffs and the class have been adequately represented and are the beneficiaries of settlements negotiated at arms' length. Each Class Member's payment will be directly proportional to their relative portion of total compensation to all Class Members. *In re Telectronics Pacing Sys., Inc*., 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001).

iv.   The Proposed Settlements Satisfy the *International Union* Factors ................. 16

"[S]everal [other] factors [can] guide the inquiry: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Int'l Union*, 497 F.3d at 631 (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir.1983)). Here, the risk of fraud or collusion is low. The litigation has been hard fought throughout. The Settlement Agreements are the result of intensive arm's length negotiations facilitated by court-approved mediators. Trial of this matter also promises to be lengthy and complex. Appeals would likely follow. There is no guarantee of a positive outcome. The class members favor the settlement, as evidenced by few opt-outs and no objections. And the public interest favors prosecution of the rights of workers. Ba*rtell v. LTF Club Operations Co., Inc.*, No. 2:14-CV-401, 2020 WL 7062834, at *3 (S.D. Ohio Aug. 7, 2020) (quoting *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)). S*ee In re Flint Water Cases*, 571 F. Supp. 3d 746, 780 (E.D. Mich. 2021

v.    The Settlement Agreement Reaches a Favorable Result for the Proposed Settlement Class, Particularly Given the Expense, Duration, and Uncertainty of Continued Litigation ........................................................................................... 19

Antitrust class actions have complex legal and factual issues. The outcome of trial and/or appeal would be uncertain. The Settlement Agreements provide Settlement Class members with certainty and a favorable outcome. *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011); *In re Linerboard Antitrust Litig.*, 292 F. Supp.2d 631, 639 (E.D. Penn. 2003)); I*n re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 533 (E.D. Mich. 2003); I*n re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995); I*n re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004)

vi.    The Settlement Agreements Were the Product of Arm's Length Negotiations Conducted by Highly Experienced Counsel and with the Assistance of Experienced Mediators. ................................................................................... 21

This settlement is entitled to "an initial presumption of fairness" because it is the result of arm's length negotiations among experienced counsel. Counsel believe settlement is in the best interest of the Settlement Class. Negotiations were at arm's length by experienced and informed counsel. *Sheick v. Auto. Component Carrier LCC*, No. 2:09-cv-14429, 2010 WL 4136958, at *18 (E.D. Mich. Oct. 18, 2010); T*hacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262, 270 (E.D. Ky. 2009); I*n re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 370 (S.D. Ohio 1990)).

V.    CONCLUSION .............................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Bartell v. LTF Club Operations Co., Inc.*, No. 2:14-CV-401, 2020 WL 7062834
 (S.D. Ohio Aug. 7, 2020) .......................................................................................17

*Bowers v. Windstream Kentucky E., LLC*, No. 3:09-cv-440-H, 2013 WL 5934019
 (W.D. Ky. Nov. 1, 2013) .......................................................................................23

*Clark Equip. Co. v. Int'l Union, Allied Indus. Workers of Am.*, 803 F.2d 878 (6th
 Cir. 1986) ...............................................................................................................13

*Doe v. Ohio*, No. 2:91-CV-00464, 2020 WL 728276 (S.D. Ohio Feb. 12, 2020) ........................15

*IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006)..................................12

*In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369 (S.D. Ohio 2006) ......................................23

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) ..........................20, 21, 22

*In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822 (W.D. Pa. 1995) ..........................................21

*In re Farmers Ins. Exch., Claims Representatives' Overtime Pay Litig.*, 481 F.3d
 1119 (9th Cir. 2007)................................................................................................21

*In re Flint Water Cases*, 571 F. Supp. 3d 746 (E.D. Mich. 2021)................................................17

*In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL
 5159441 (N.D. Cal. Sept. 2, 2015) ..................................................................15, 16

*In re Packaged Ice Antitrust Litig.,* No. 08-MD-01952, 2011 WL 717519 (E.D.
 Mich. Feb. 22, 2011)........................................................................................20, 21

*In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188 (E.D.
 Mich. Dec. 13, 2011) ............................................................................................20

*In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003) .............................................21

*In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029 (S.D. Ohio 2001) .............................19

*In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985 (S.D. Ohio 2001) ...............................14

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)...........................................21

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen.
 Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)....................................................12, 17

*IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583 (E.D. Mich. 2006)....................................12, 17

*Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818 (E.D. Mich. 2008)....................................23

*Nitsch v. DreamWorks Animation SKG Inc.*, No. 14-CV-04062-LHK, 2017 WL
11699010 (N.D. Cal. June 5, 2017) ......................................................................................15

*Rankin v. Rots*, No. 02-cv-71045, 2006 WL 1876538 (E.D. Mich. June 27, 2006) ....................13

*Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997)...........................................21

*Sheick v. Auto. Component Carrier LCC*, No. 2:09-cv-14429, 2010 WL 4136958
(E.D. Mich. Oct. 18, 2010) ...................................................................................................22

*Stinson v. Delta Mgmt. Assocs., Inc.*, 302 F.R.D. 160 (S.D. Ohio 2014) .....................................12

*Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262 (E.D. Ky. 2009) ............................22

*Waters v. Pizza to You, L.L.C.*, No. 3:19-CV-372, 2022 WL 404614 (S.D. Ohio
Feb. 9, 2022) ........................................................................................................................17

**Federal Statutes**

15 U.S.C. § 1 ................................................................................................................................6

15 U.S.C. § 6a ...................................................................................................................7, 13, 15

15 U.S.C. § 15 ..............................................................................................................................19

**Federal Rules**

Fed. R. Civ. P. 23 ............................................................................................................... *passim*

**Other Authorities**

4 Herbert B. Newberg & Alba Conte, Newberg on Class Actions (4th ed. 2005) ......................13

4 Newberg and Rubenstein on Class Actions (6th ed.) ...............................................................14

Manual for Complex Litigation, (6th ed.).....................................................................................23

US DOJ and FTC, Antitrust Guidance for Human Resource Professionals,
October 2016.........................................................................................................................18

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH
DEFENDANTS BOOZ ALLEN HAMILTON INC. AND MISSION ESSENTIAL
PERSONNEL, LLC**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Sarah J. Hunter
and David N. Youtz, individually and as representatives of the class of similarly situated
individuals, move the Court for an Order Granting final approval of Plaintiffs' settlements with
Defendants Booz Allen Hamilton Inc. ("Booz Allen"), Mission Essential Personnel, LLC
("ME"), CACI International, Inc., and CACI Technologies LLC (together with CACI
International, Inc., "CACI," collectively with Booz Allen and ME, "Defendants").

Plaintiffs have reached settlement agreements with Defendants totaling $5,275,000, of
which $1,325,000 will go directly to the class. The settlements, reached after four years of hard-
fought, intensive litigation, including extensive motion practice, substantial discovery including
the production and review of more than one million pages of documents, over two dozen
depositions of percipient witnesses, and five expert reports plus deposition testimony by
Plaintiffs' experts, is fair, reasonable, and adequate. The fairness of the settlement is further
demonstrated by the fact that only four class members (approximately six-tenths of a percent of
the total class) have opted out, and not a single class member has objected.

Pursuant to the Court's December 19, 2022 Opinion and Order (ECF No. 257) partially
granting Plaintiffs' Motion for Preliminary Approval, and its subsequent Order (ECF No. 261)
approving Plaintiffs revisions of the class notices and ordering the commencement of the notice
period, notices have been disseminated to the class. Final approval should now be granted so that
distribution of Plaintiffs' hard-won settlement to the class can begin.

This motion is supported by the following Memorandum in Support, the accompanying
Declaration of Joseph R. Saveri, the presentation of Plaintiffs' counsel in the upcoming April 12,

2023 Fairness Hearing, and all relevant papers and testimony in the record, which are

incorporated by reference.

Dated: March 8, 2023                     Respectfully Submitted,


                                         /s/ *Shawn K. Judge*_____
                                         Shawn K. Judge (0069493), Trial Attorney*
                                         skj@classlawgroup.com
                                         Mark H. Troutman (0076390)*
                                         mht@classlawgroup.com
                                         GIBBS LAW GROUP LLP
                                         1111Broadway, Suite 2100
                                         Oakland, California 94607
                                         Telephone: (510) 350-9700
                                         Facsimile: (510) 350-9701
                                         *both working from and licensed only in Ohio

                                         Joseph R. Saveri *(Pro Hac Vice)*
                                         jsaveri@saverilawfirm.com
                                         Steven N. Williams *(Pro Hac Vice)*
                                         swilliams@saverilawfirm.com
                                         Kevin E. Rayhill *(Pro Hac Vice)*
                                         krayhill@saverilawfirm.com
                                         JOSEPH SAVERI LAW FIRM, LLP
                                         601 California Street, Suite 1000
                                         San Francisco, California 94108
                                         Telephone: (415) 500-6800
                                         Facsimile: (415) 395-9940

                                         *Attorneys for Plaintiffs*
                                         *Sarah J. Hunter and David N. Youtz*

## MEMORANDUM IN SUPPORT

### I. INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Sarah J. Hunter and David N. Youtz ("Plaintiffs" or "Class Representatives"), individually and as representatives of a the class of similarly situated individuals, submit this memorandum in support of their Motion for Final Approval of Class Action Settlements with Defendants Booz Allen Hamilton Inc. ("Booz Allen"), Mission Essential Personnel, LLC ("ME"), CACI International, Inc., and CACI Technologies LLC (together with CACI International, Inc., "CACI," collectively with Booz Allen and ME, "Defendants").

After four years of hard-fought litigation, the parties in the above-captioned litigation have agreed to settle. Plaintiffs executed a settlement agreement with CACI on June 8, 2021 (ECF No. 170-2, the "CACI Settlement Agreement"), and a separate settlement agreement with Booz Allen and ME on September 2, 2022 (ECF No. 253-2, the "Booz Allen-ME Settlement Agreement," together, the "Settlement Agreements"). Under the terms of the Settlement Agreements, Plaintiffs and the Settlement Class (defined below) will relinquish all claims arising from the allegations in Plaintiffs' First Amended Complaint ("FAC") and provide a classwide release. In exchange, Defendants will create an all-cash fund of $1,325,000 (the "Settlement Fund Amount") for the exclusive benefit of the Settlement Class. *Id.* Definition w. Defendants have also agreed to pay up to $3,950,000 (the "Fees and Costs Amount") to pay incentive awards and reimburse Class Counsel for their unreimbursed expenses and attorneys' fees. *Id.*, ¶ 28; CACI settlement Agreement, ECF No. 170-2, Definition x. The value of the Settlement Agreements total $5,275,000.

The terms of the Settlement Agreements are fair, reasonable, and adequate. They are the product of arm's length, good faith negotiations between experienced and well-informed counsel

conducted over many months under the supervision of two mediators, one appointed by the Court, and one a private mediator. Declaration of Joseph R. Saveri in Support of Plaintiffs' Motion for Final Approval (the "Saveri Decl."), ¶¶ 10, 11. The Settlement Fund Amount represents an excellent outcome for the members of the Settlement Class, the majority of which will receive a four-figure payment. Saveri Decl., ¶ 21. The response of the Settlement Class to date has been overwhelmingly positive. Indeed, only four class members out of a total class of 647 have opted out (approximately six-tenths of one percent). No class member has objected to the proposed settlement or any of its terms. Saveri Decl., ¶ 37. Plaintiffs' counsel Joseph Saveri Law Firm ("JSLF") and Gibbs Law Group LLP ("GLG," together with JSLF, "Class Counsel") are experienced litigators with a track record of success in complex class actions who have vigorously prosecuted this action for four years, expending many hours and significant resources to prove the complex issues involved in this dispute. Saveri Decl., ¶ 39. Settlement now guarantees the members of the Settlement Class a significant payment in the short term, avoiding lengthy delays and the risk of potentially coming away with nothing, a serious risk in a complex class action such as this against sophisticated and well-funded Defendants.

The Settlement Agreements satisfy the requirements of Rule 23(e) and Sixth Circuit caselaw. Amended notices, approved by the Court, have been disseminated to the members of the Settlement Class in accordance with the timeline set by the Court. As noted, there have been no objections to the Settlement Agreements. The Court should grant final approval of the Settlement Agreements.

## II.    THE PRELIMINARY APPROVAL ORDER AND CLASS NOTICE

In its Opinion and Order dated December 19, 2022 (the "Preliminary Approval Order"), the Court preliminarily certified the following class (the "Settlement Class") for the purposes of settlement only:

> All natural persons employed by Defendants at JAC Molesworth during the Class Period from January 1, 2015 through June 30, 2022.
>
> Excluded from the Class are: corporate officers, members of the boards of directors, and senior leaders of Defendants; employees of the United States government employed at JAC Molesworth during the Class Period; and any and all judges and justices, and chambers' staff, assigned to hear or adjudicate any aspect of this litigation.

Preliminary Approval Order, ECF No. 257, PageID 32466-467.

The Court also preliminarily approved the Settlement Agreements as "falling within the 'range of reasonableness.'" *Id.*, PageID 32467-468. Under the CACI Settlement Agreement, CACI agreed to pay $200,000 to be used to reimburse Class Counsel for expenses incurred in prosecuting this action, including costs of administering and distributing class notice, in exchange for the members of the Settlement Class relinquishing all claims against CACI arising from or relating to the allegations in the FAC. *See* ECF No. 170-2, ¶¶ 15, 22. In order to facilitate service of class notices, CACI agreed to provide the last known addresses for all current or former CACI employees in the Settlement Class. *Id.* ¶ 5.

Under the Booz Allen-ME Settlement Agreement, Booz Allen and ME agreed to fund an all-cash payment of $1,325,000 for the exclusive benefit of Plaintiffs and the Settlement Class in exchange for the members of the Settlement Class relinquishing all claims against Booz Allen or ME arising from or relating to the allegations in the FAC. *See* ECF No. 253-2, Definition w, ¶¶ 12, 19. Booz Allen and ME also agreed to pay up to $3,750,000 to cover costs incurred by Class Counsel, (in addition to the $200,000 payment from CACI), incentive awards to the Class Representatives, and attorneys' fees.[1] *Id.*, ¶ 28. Booz Allen and ME also agreed to provide Plaintiffs with names, addresses, and dates of employment information for current or former Booz Allen and ME employees who are members of the Settlement Class. *Id.*, ¶ 5.

---

[1]     Plaintiffs' motion for fees and costs is be filed concurrently with this Motion.

The Preliminary Approval Order appoints JSLF and GLG as Settlement Class Counsel. *Id.*, PageID 32468. The Preliminary Approval Order also conditionally approved the class notices for the Settlement Agreements, subject to Plaintiffs amending the notices to meet the Court's specifications. *Id.*, PageID 32468-469.

On January 9, 2023, the Court approved Plaintiffs' amended notices and commenced the notice period. ECF No. 261. Pursuant to the Court's Order, on February 6, 2023, the Settlement Administrator, relying on contact information provided by Defendants, sent written notices via First Class mail to 609 members of the Settlement Class, and emailed notices to 568 members of the Settlement Class. Declaration of Amy Fringer for Rust Consulting, Inc. ("Fringer Decl."), ¶ 12. The Settlement Administrator took additional steps to confirm or update addresses, including efforts to update returned mail. *Id.*, ¶¶ 14-15. The Settlement Administrator also established a settlement website, where notices of the settlement and other information were posted. https://molesworthemployeesettlement.com/. *Id.*, ¶ 6. Links to the settlement website were also posted on Class Counsel's website.[2] Saveri Decl., ¶ 42.Class Counsel also established a telephone line to take questions and inquiries from class members. *Id.* Among other things, the notices instructed class members that they had until March 6, 2023 to exclude themselves from the Settlements or to object to or comment on theirs terms. Fringer Decl. ¶ 13.

On February 22, 2023, Plaintiffs learned for the first time that one of the Defendants had discovered an additional thirty-eight (38) members of the Settlement Class who had previously been unidentified. Saveri Decl., ¶ 31. On February 23, 2023, Plaintiffs and Defendants met and conferred and agreed that amended notices should be sent to the newly discovered Settlement

---

[2]     https://www.saverilawfirm.com/settlement/defense-contractor-no-poach-litigation-preliminary-settlement

Class members as quickly as possible and an additional period for them to exclude themselves from the Settlements to object to or comment on their terms. Saveri Decl., ¶ 32. It was agreed that the only change to the notices should be that the closing date for the twenty-eight day opt-out and objection period would be updated to reflect the later sending date. *Id*. On February 24, 2023, the Court held a conference call with the parties and endorsed the amended notice plan and additional notice period for the additional 38 individuals. Saveri Decl., ¶ 32. Plaintiffs agreed to provide the Court with updated information about the number of opt-outs and objections on April 3, the date Plaintiffs' reply in support of their motion for final approval is due. Saveri Decl. ¶ 33.

On February 24, 2023, Plaintiffs sent updated letter Notices via First Class mail to the newly discovered Settlement Class members. Saveri Decl., ¶ 34. However, on March 7, 2023, Plaintiffs realized that through an administrative error, the email notices for those additional thirty-eight members of the Settlement Class had not been sent. Upon realizing their error, Plaintiffs immediately sent email notices to all thirty-eight of the newly discovered Settlement Class members. Of these, only one email address came back as undeliverable. Saveri Decl., ¶ 35. Consistent with the Court's Preliminary Approval Order, the email notices were amended to provide these Settlement Class members with twenty-eight days to opt-out or object to the Settlement Agreements, moving the deadline back to April 4, 2023. Saveri Decl., ¶ 35. No other changes were made.

To date, Plaintiffs have received opt-out requests from four Settlement Class members. Plaintiffs have not received any objections. Saveri Decl., ¶ 37. Plaintiffs have been unable to serve notice on four individuals for whom both the email and letter notices were returned as undeliverable. Plaintiffs have made concerted efforts to locate these individuals, including skip tracing, but to no avail. Fringer Decl., ¶ 18.

### III. CASE HISTORY

Defendants conduct intelligence analysis under contracts with the U.S. Defense Intelligence Agency ("DIA"). Though all the work is and by law must be performed by U.S. citizens, much of the work takes place outside the United States, including at a former British Royal Air Force base (now administered by the DIA) in Molesworth, England. Plaintiffs allege that Defendants entered into agreements ("No-Hire Agreements") beginning in approximately July 2017 not to hire, recruit, or solicit one another's employees at Molesworth. Plaintiffs allege that the No-Hire Agreements had the purpose and effect of restricting mobility and suppressing compensation for Plaintiffs and the Settlement Class, in violation of the Sherman Act, 15 U.S.C. § 1. Defendants assert that all hiring actions were justified under the totality of the circumstances at Molesworth. Defendants have denied and continue to deny each and all of the Plaintiffs' claims and allegations of wrongdoing.

#### a. Procedural History and Negotiations

##### i. Filing Complaints and Early Case Management Efforts.

Class representative Sarah Hunter initiated the action on February 7, 2019. On May 3, 2019, Plaintiffs filed a First Amended Complaint ("FAC") adding Plaintiff David Youtz. ECF No. 28.

##### ii. Discovery

Plaintiffs and Defendants engaged in extensive fact discovery until February 15, 2021. Saveri Decl., ¶ 9. Class Counsel propounded and responded to written discovery, reviewed more than one million pages of documents produced by Defendants, took or defended three dozen depositions, and filed motions to compel discovery. The parties also engaged in extensive expert discovery until August 27, 2021. Saveri Decl., ¶ 11.

### iii.    Motion Practice

Defendants filed a motion to dismiss the FAC on May 16, 2019, arguing first that the FAC should be dismissed because the alleged agreements did not affect domestic commerce and were therefore barred by the Foreign Trade Antitrust Improvements Act ("FTAIA"), and second that the alleged agreements were ancillary to a legitimate procompetitive purpose so were not illegal under either a *per se* or rule of reason framework. ECF No. 30, PageID 348-49. On November 12, 2019, the Court rejected Defendants' arguments, holding that Plaintiffs had sufficiently pled horizontal agreements that restrained competition in a market (Molesworth) where they held 100% market share, causing Plaintiffs—U.S. citizens working for U.S. corporations on behalf of the U.S. government—domestic antitrust injury, in violation of Section 1 of the Sherman Act. ECF No. 49, Opinion & Order, PageID 842-43.

Plaintiffs filed a motion for class certification on December 24, 2020 (ECF No. 91) and a reply to Defendants' opposition on May 4, 2020. ECF No. 154; *see also* Saveri Decl. ¶ 5. Both were supported by expert reports by Dr. Phillip Johnson. The motion is fully briefed. On October 22, 2021, the Court conducted a day-long hearing on the Motion for Class Certification. At the hearing, the court heard arguments from counsel. The parties also presented live testimony from their respective experts, Dr. Phillip Johnson for Plaintiffs and Professor Justin McCrary for Defendants. Each provided direct testimony and was subject to cross examination. *See* Transcript, ECF No. 187; *see also* Saveri Decl., ¶ 10. In response to direction by the Court, the parties submitted post-hearing briefing. ECF Nos. 191, 192.

On September 22, 2021, both sides filed motions for summary judgment and motions to exclude the other side's experts. Saveri Decl. ¶¶ 6-9. All motions are fully briefed.

### iv.     Expert Discovery

Class Counsel retained expert economist Dr. Phillip Johnson to provide expert reports and testimony. Dr. Johnson used a widely accepted methodology to show that Defendants' anticompetitive actions caused classwide harm to Plaintiffs and the Settlement Class by restricting mobility and suppressing compensation. Saveri Decl. ¶¶ 44-45. Dr. Johnson calculated single damages for the Settlement Class to be $4,219,994. Dr. Johnson also addressed issues including market definition, market power, the anticompetitive effects of the agreements, their procompetitive benefits, and the balance between them. Class Counsel also retained statistician and econometrician Ted Tatos to challenge the methods and conclusions of Defendants' expert Justin McCrary. Saveri Decl., ¶ 46.

Defendants hired their own expert, Justin McCrary. McCrary testified among other things, that Dr. Johnson's opinion was incorrect, that there was no impact of the agreements on the class and that the class sustained no damages. In response, Class Counsel also asked Dr. Johnson and Mr. Tatos to review, analyze, critique and rebut the expert testimony proffered by Defendants. Saveri Decl., ¶ 31.

### v.     Mediation and Settlement Negotiations

Between April 29, 2021 and April 20, 2022, Plaintiffs participated in three separate mediation sessions with Defendants in a good faith attempt to reach a settlement. Saveri Decl., ¶¶ 12,.

On April 29, 2021, Plaintiffs and Defendants participated in Court-facilitated mediation conducted by John Camillus, during which Plaintiffs reached a settlement agreement in principle with CACI. Saveri Decl., ¶ 12.

On June 8, 2021, Plaintiffs and CACI executed an agreement resolving all of the claims of Plaintiffs and the Settlement Class against CACI. Saveri Decl., ¶ 10. Plaintiffs agreed to

release all their claims against CACI in exchange for payment of $200,000 to be used for expenses incurred in litigation, including the cost of serving notice on Settlement Class Members. Saveri Decl., ¶ 12. Plaintiffs filed a motion for preliminary approval of that settlement on September 17, 2021. ECF No. 170. The Court granted preliminary approval on December 19, 2022.

On October 4, 2021, Plaintiffs engaged in further mediation with the remaining Defendants under the auspices of Mr. Camillus, Booz Allen and ME. The parties disagreed over whether a settlement had been reached. That issue was brought before the Court for resolution. After briefing and in person testimony, the Court denied Plaintiffs' motion. Saveri Decl., ¶ 49.

On April 20, 2022, Plaintiffs and Booz Allen and ME participated in private mediation facilitated by James Arnold, during which the parties reached a settlement agreement in principle. Saveri Decl., ¶ 13.

On September 2, 2022, Plaintiffs and Booz Allen and ME executed an agreement resolving all of Plaintiffs' claims against Booz Allen and ME. Saveri Decl., ¶ 15. Plaintiffs agreed to release all of their claims against Booz Allen and ME in exchange for a payment to the Settlement Class of $1,325,000. See Saveri Decl., ¶ 15. The funds will be paid into an escrow account ("Escrow Account") established at Citibank, N.A. within thirty (30) business days of the Effective Date of the Settlement Agreement. *Id.* ¶ 15. Booz Allen and ME also agreed to pay up to $3,750,000, subject to Court approval, to cover costs incurred by Plaintiffs, incentive awards to the Class Representatives, and attorneys' fees. *Id.*, ¶ 28.

### vi. The Settlement Agreements

The Settlement Agreements, which arise from extensive arm's length and good faith negotiations, resolve all claims of Plaintiffs and the Settlement Class against Defendants. *See*

ECF No. 170-2 (CACI Settlement Agreement), and ECF No. 253-2 (Booz Allen and ME Settlement Agreement).

### vii.    Distribution of Settlement Fund Amount

The entire Settlement Fund Amount of $1,325,000 (plus interest, if any) will be distributed to the Settlement Class. Each Settlement Class member will receive a share of the Settlement Fund calculated by dividing his or her estimated total salary during the Class Period (the numerator) by the combined estimated total salaries paid to all Settlement Class Members during the Class Period (the denominator) and multiplying the resulting fraction by the Settlement Fund Amount of $1,325,000 (plus interest, if any). *See* ECF No. 253-2, PageID 32312-313, Plan of Allocation. In other words, each Settlement Class member's share of the Settlement Fund Amount will be directly proportional to his or her share of total compensation paid to all Settlement Class members at JAC Molesworth during the Class Period.

In no event are any fees or costs to be deducted from the Settlement Fund Amount or the payments to Settlement Class Members from the Settlement Fund Amount. In the event that there are funds remaining in the Settlement Fund Amount after distribution for Settlement Class Members, Class Counsel shall move the Court for an order disposing of all such funds, including additional possible distributions to the Settlement Class and/or *cy pres* distribution as approved by the Court. No portion of or amount from the Settlement Fund Amount shall revert to the Settling Defendants.

### viii.    Attorneys' Fees and Expenses

The Settlement Agreement provides that Plaintiffs' counsel can obtain attorneys' fees, reimbursement of costs and expenses, and incentive awards for the Class Representatives in a separate motion to the Court at the time of filing the Preliminary Approval Motion or at the time notice is disseminated to the Settlement Class. *Id.* ¶¶ 28, 31. Defendants have agreed to provide

up to $3,950,000 (the "Fee and Cost Amount) to cover Court-ordered fees and costs in connection with achieving this result for the Settlement Class.[3] To date, Class Counsel have incurred approximately $2,129,065 in expenses, primarily for expert witnesses, including expenses of approximately $82,500 associated with notice and administration of the settlement. Class Counsel will seek incentive awards for the Class Representatives totaling $20,000. Class Counsel will also ask the Court for approximately $1,718,435 for attorneys' fees. Saveri Decl., ¶ 29. To date, Class Counsel have reported a lodestar of approximately $6,366,276 in attorneys' fees incurred. Class Counsel have not received any payment or reimbursement for attorneys' fees or costs in this matter.

### b. Release of All Claims

In exchange for the Settling Defendants' monetary consideration, upon entry of a final judgment approving the proposed Settlement, Plaintiffs and all members of the Settlement Class who do not exclude themselves from this Settlement Agreement will release the Settling Defendants of all claims related to any of the alleged conduct giving rise to this litigation. Saveri Decl., Ex. A, Settlement Agreement, ¶ 12.

## IV. THE PROPOSED SETTLEMENT SHOULD BE APPROVED

### a. Approval Is Appropriate Because the Settlement Meets the Standard for Approval

#### i. The Law Favors Settlements

It is well-established in the Sixth Circuit that the law favors settlement of class action lawsuits. *See Stinson v. Delta Mgmt. Assocs., Inc*., 302 F.R.D. 160, 165 (S.D. Ohio 2014)

---

[3]      As described above, in June 2021, Defendant CACI agreed to settle claims against it for $200,000, which, if approved by the Court, is to be used to help defray costs incurred by Class Counsel in prosecuting this action. *See* CACI Settlement Motion, ECF 170-2, ¶ 22. Booz Allen and ME have agreed to provide up to $3,750,000 for Class Counsel's unreimbursed expenses, incentive awards for the Class Representatives, and attorneys' fees. ECF No. 253-2, ¶ 28.

("*Stinson*") (citing *Hainey v. Parrott*, 617 F.Supp.2d 668, 679 (S.D. Ohio 2007)) ("Public policy generally favors settlement of class action lawsuits").

> ### ii. The Proposed Settlements are Fair, Reasonable, and Adequate

"Before approving a settlement, a district court must conclude that it is 'fair, reasonable, and adequate.'" *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("*Int'l Union*") (quoting Fed. R. Civ. P. 23(e)(2)); *accord Stinson*, 302 F.R.D. at 164; *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 588 (E.D. Mich. 2006). "In making this determination, the court evaluates the proposed class action settlement 'in light of the general federal policy favoring the settlement of class actions.'" *Griffin v. Flagstar Bancorp, Inc.,* No. 2:10-cv-10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013) (quoting *UAW v. Gen. Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *12 (E.D. Mich. Mar. 31, 2006)). The district court's role in reviewing settlements "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Clark Equip. Co. v. Int'l Union, Allied Indus. Workers of Am.*, 803 F.2d 878 (6th Cir. 1986). Courts apply "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.41 (4th ed. 2005) ("Newberg"); *cf. Rankin v. Rots*, No. 02-cv-71045, 2006 WL 1876538, at *3 (E.D. Mich. June 27, 2006) ("[T]he only question. . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.") (internal quotation marks omitted).

### iii.  The Proposed Settlements Satisfy the Requirements of Rule 23(e)(2).

Rule 23(e)(2) sets forth the factors affecting a court's determination of whether a proposed settlement is fair, reasonable, and adequate, including whether: (A) the class has been adequately represented by the class representatives and counsel; (B) the settlement was negotiated at arm's length; (C) the settlement is adequate in light of the potential costs, risks, and delay of trial and appeal, the effectiveness of the proposed methods of settlement administration and distribution, the proposed attorneys' fees, and the terms of the Settlement Agreements; and (D) the class members are treated equitably. Fed. R. Civ. P. 23(e)(2).

Here, the class representatives worked assiduously on behalf of the class to aid in the prosecution of this action. Both Ms. Hunter and Mr. Youtz provided documents, responded to multiple rounds of interrogatories, and withstood intensive questioning in daylong depositions. Both displayed great personal courage in standing up against some of the largest employers in their industry to fight against allegedly unlawful practices that harmed each and every member of the Settlement Class.

Settlement Class Counsel Joseph Saveri Law Firm, LLP ("JSLF") and Gibbs Law Group LLP ("GLG") have collectively committed thousands of hours and paid millions of dollars in expenses to the zealous prosecution of Plaintiffs and the Settlement Class's claims, having engaged in extensive discovery including the producing and reviewing over a million pages of documents and taking or defending more than two dozen depositions, engaging in motion practice, hiring experienced experts with a track record of success in no-poach class actions such as this to produce five expert reports and provide valuable testimony, and—when Class Counsel deemed it advisable and appropriate for Plaintiffs and the Class—engaging in hard-nosed negotiations facilitated by court-approved mediators that resulted in settlement agreements that provide significant compensation to Plaintiffs and the class for the alleged harm they have

suffered. Plaintiffs and the class have been adequately represented and are the beneficiaries of settlements negotiated at arms' length.

The settlement is adequate in light of the potential costs, risks, and delay of trial and appeal. "[C]lass action litigation is inherently complex and that complexity makes litigation especially costly in terms of both time and money. Thus, while the judicial system always favors settlement, it especially welcomes settlement in complex cases such as class suits . . .." 4 Newberg and Rubenstein on Class Actions § 13:52 (6th ed.). "Generally speaking, '[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them.'" *In re Telectronics Pacing Sys., Inc*., 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (quoting *In re Austrian & German Bank Holocaust Litig*., 80 F.Supp.2d 164, 174 (S.D.N.Y. 2000)). "Settlement is more likely to be approved if the case has a long history, . . . if the issues involved would require significant trial time to resolve, . . . if appeals are likely to further delay ultimate resolution, . . . or if the plaintiffs' circumstances make delay particularly prejudicial, . . .." *Doe v. Ohio*, No. 2:91-CV-00464, 2020 WL 728276, at *4 (S.D. Ohio Feb. 12, 2020), *report and recommendation adopted*, No. 2:91-CV-464, 2020 WL 996561 (S.D. Ohio Mar. 2, 2020) (citing cases).

Here, the complex nature of class actions generally and "no-poach" cases such as this in particular, and the fact that the alleged unlawful actions took place overseas[4] required significant litigation expense. The case is complex and has been hard fought by highly competent counsel. Class certification and cross-motions for summary judgment and to exclude expert testimony

---

[4]       Judge Smith rejected Defendants' FTAIA argument in his Opinion and Order denying Defendants' Motion to Dismiss. ECF No. 49 at PageID 843. However, Booz Allen and ME have made arguments under the FTAIA in their summary judgment motion and kept open the possibility of raising the issue at trial.

have been filed. This action is likely to lead to lengthy trial and time consuming appeals. This adversarial litigation has proceeded for more than four years. These facts weigh in favor of settlement.

The effectiveness of the proposed methods of settlement administration and distribution weighs in favor of approval. Here, under the Court's careful supervision, Plaintiffs proposed a method for notice and distribution that the Court has already approved. The proposed plan of allocation is consistent with and follows similar distributions in analogous no poach cases. *See e.g.*, *In re High-Tech Emp. Antitrust Litig*., No. 11-CV-02509-LHK, 2015 WL 5159441, at *6 (N.D. Cal. Sept. 2, 2015) (approving plan of allocation based on pro rata shares of total compensation); *Nitsch v. DreamWorks Animation SKG Inc*., No. 14-CV-04062-LHK, 2017 WL 11699010, at *4 (N.D. Cal. June 5, 2017) (same). Based on the names and addresses provided by Defendants and the response to date, Plaintiffs have a high degree of confidence that class members received notice that complies with and exceeds the requirements of Due Process and Rule 23. Settlement Class Counsel have received a number of inquiries confirming the desire of class members to participate in the proposed settlements and to receive the benefits they provide. To date, there are only four class members whom the settlement administrator has been unable to establish contact with, amounting to only one-half of one percent of the total class.

The costs incurred—predominantly the costs of experts and depositions—are reasonable for a complex antitrust case of this type, particularly in the light of the hard fought nature of the dispute. They are supported by the contemporaneous financial and accounting records of counsel. The proposed attorneys' fees are reasonable. Class Counsel has recorded over 11,000 hours to date in prosecution of this case, recorded at reasonable hourly rates. The amount of time devoted to this matter is substantially in excess of the fees requested.

The terms of the Settlement Agreements weigh in favor of final approval. The Settlement Agreements provide for a permanent resolution of the claims raised in this litigation, providing certainty to Defendants and adequate and equitable compensation to Plaintiffs and the Settlement Class. Payments to the Settlement Class Members are determined by a formula that sets the percentage of the Settlement Fund Amount that each Class Member receives according to the percentage of total base salary paid to all Settlement Class Members during the Class Period that each Settlement Class Member earned individually during the Class Period. That is, each Class Member's payment will be directly proportional to their relative portion of total compensation to all Class Members. *See In re High-Tech Emp. Antitrust Litig*., No. 11-CV-02509-LHK, 2015 WL 5159441, at *8 (N.D. Cal. Sept. 2, 2015) (quoting *In re Oracle Sec. Litig.,* No. C-90-0931-VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.").

The Settlement Agreements satisfy all of the Rule 23(e)(2) factors. They are fair, reasonable, and adequate. This is supported by the facts that there have been only two opt-outs and not a single objection from the members of the settlement class. *See Waters v. Pizza to You, L.L.C*., No. 3:19-CV-372, 2022 WL 404614, at *2 (S.D. Ohio Feb. 9, 2022) ("the absence of objections indicates that the settlement is an appropriate compromise of claims"); *IUE-CWA v. Gen. Motors Corp*., 238 F.R.D. 583, 600 (E.D. Mich. 2006) (same, citing cases).

### iv. The Proposed Settlements Satisfy the *International Union* Factors

In addition to the Rule 23(e)(2) factors, "[s]everal [other] factors [can] guide the inquiry: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Int'l Union*, 497 F.3d at 631 (citing *Granada Invs., Inc. v.*

16

*DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir.1983)). The Settlement Agreements satisfy these factors as well.

The risk of fraud or collusion is low. "Courts presume the absence of fraud or collusion unless there is evidence to the contrary." *Bartell v. LTF Club Operations Co., Inc.*, No. 2:14-CV-401, 2020 WL 7062834, at *3 (S.D. Ohio Aug. 7, 2020) (quoting *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)). The litigation has been hard fought throughout, as evidenced by the docket in this matter and the record of the proceedings before the Court. Here, Plaintiffs and Defendants arrived at the Settlement Agreements after intensive arm's length negotiations facilitated by court-approved mediators. *See In re Flint Water Cases*, 571 F. Supp. 3d 746, 780 (E.D. Mich. 2021) (quoting 4 Newberg § 13:48 (5th ed. June 2021 update)) ("[T]here appears to be no better evidence of [a truly adversarial bargaining process] than the presence of a neutral third party mediator").

As noted above, this litigation has been complex and expensive and—were the settlement not approved—would continue to be so in the future. The discovery record is extensive, including percipient and expert witnesses. Millions of pages of documents have been produced and reviewed. Extensive review of granular employee-level compensation data has also been collected and analyzed. Trial of this matter also promises to be lengthy and complex. Appeals would likely follow. The case has been pending for four years, including over the course of the COVID pandemic. Significant issues—class certification and dispositive motions—have yet to be resolved. This factor militates strongly in favor of approval.

The likelihood of success on the merits also favors approval. Here, while Plaintiffs believe they would likely prevail at class certification, summary judgment, and trial, Defendants—represented by some of the best lawyers in the United States—disagree and can be

expected to mount a formidable defense at every step along the way. Plaintiffs have shown they

suffered extensive antitrust injury as a direct and proximate result of Defendants' alleged

anticompetitive actions. Plaintiffs' experts are experienced in no-poach class actions and used

the same widely accepted techniques here that have led to successful outcomes in several other

no-poach cases. And Class Counsel are experienced litigators who have achieved positive results

at trial in large and complex cases with national scope. Again, Defendants dispute each of these

conclusions.

  The opinions of Class Counsel and the Class Representatives and the reaction of absent

class members also favor approval. Class Counsel and the Class Representatives are in

agreement that the Settlement Agreements are in the best interest of the Settlement Class and

would resolve this dispute favorably, expeditiously providing financial benefits to class

members. *See* Saveri Decl., ¶ 39. The response of class members has been overwhelmingly

positive. Only four of the absent class members have opted out, and none have objected to the

settlement, also strongly militating in favor of final approval.

  The public interest is also served by settlement because the rights of a small group of

employees against large and powerful corporations that dominate the industry Plaintiffs work in

have been vindicated. This is in keeping with the policy of the U.S. Department of Justice, which

has stated that it "intends to proceed criminally against naked wage-fixing or no-poaching

agreements. These types of agreements eliminate competition in the same irredeemable way as

agreements to fix product prices or allocate customers, which have traditionally been criminally

investigated and prosecuted as hardcore cartel conduct." US DOJ and FTC, Antitrust Guidance

for Human Resource Professionals at 4, October 2016, available for download at

https://www.justice.gov/atr/file/903511/download.

Indeed, the complexity of this case, combined with the expense and massive effort required to prosecute it, meant that no individual employee could have pursued the case alone. Class Counsel expended significant resources of time and money pursuing this action. Bringing a case of this magnitude would be cost prohibitive for any individual Settlement Class Member. "Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling such small claimants to pool their claims and resources." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, 1043 (S.D. Ohio 2001), decision clarified, 148 F. Supp. 2d 936 (S.D. Ohio 2001). Moreover, for over 100 years, since the inception of Section 4 of the Clayton Act, private antitrust litigation is a key component of the antitrust enforcement regime in the United States. 15 U.S.C. § 15. In particular, as the Department of Justice and the Federal Trade Commission have recently recognized, enforcement of the antitrust laws with respect to labor and labor markets, in particular with respect to no poach agreements is a significant salutary purpose of the antitrust enforcement regime in the United States. See Antitrust Guidance for Human Resource Professionals (Department of Justice/Federal Trade Commission 2016) ("Guidelines').

> **v.** **The Settlement Agreements Reach a Favorable Result for the Proposed Settlement Class, Particularly Given the Expense, Duration, and Uncertainty of Continued Litigation**

Antitrust class actions are "arguably the most complex action(s) to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011) (quoting *In re Linerboard Antitrust Litig.*, 292 F. Supp.2d 631, 639 (E.D. Penn. 2003)); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 533 (E.D. Mich. 2003) ("*Cardizem*") ("Moreover, the complexity of this case cannot be overstated. Antitrust class actions are inherently complex.").

19

Motions between Plaintiffs and the Settling Defendants in this case have been vigorously contested. Additionally, the Settling Defendants would assert various defenses, and a jury trial might turn on close questions of proof, many of which would be the subject of complicated expert testimony, particularly regarding damages, making the outcome of such trial uncertain for both parties. *See, e.g.*, *Cardizem*, 218 F.R.D. at 523 (in approving settlement, noting that "the prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery" and that "no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation"); *Packaged Ice*, 2011 WL 717519, at *10 (noting the "undeniable inherent risks" in antitrust class action litigation including "whether the class will be certified and upheld on appeal, whether the conspiracy as alleged in the Complaint can be established, whether Plaintiffs will be able to demonstrate class wide antitrust impact and ultimately whether Plaintiffs will be able to prove damages"). *Id.* Given this uncertainty, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

Moreover, given the stakes involved, an appeal is nearly certain to follow regardless of the outcome at trial. This creates additional risk, as judgments following trial may be overturned on appeal. *See, e.g.*, *In re Farmers Ins. Exch., Claims Representatives' Overtime Pay Litig.*, 481 F.3d 1119 (9th Cir. 2007) ($52.5 million class action judgment following trial reversed on appeal); *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs reversed and judgment entered for defendant). And even if class members were willing to assume all of the litigation risks, the passage of time would introduce still more risks in terms of appeals and possible changes in the law that would, in light of the time value of

money, make future recoveries less valuable than recovery today. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004) ("[I]t was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class."); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 501 (W.D. Pa. 2003) ("[A] future recovery, even one in excess of the proposed Settlement, may ultimately prove less valuable to the Class than receiving the benefits of the proposed Settlement at this time"). Hence, "the certain and immediate benefits to the Class represented by the Settlement outweigh the possibility of obtaining a better result at trial, particularly when factoring in the additional expense and long delay inherent in prosecuting this complex litigation through trial and appeal." *Cardizem*, 218 F.R.D. at 525.

For these reasons, the proposed Settlement Agreements provide substantial benefits and assurances while also representing a successful result for the members of the proposed Settlement Class. The Settling Defendant's $1,325,000 payment provides for adequate compensation to the Proposed Class that will be available years earlier than if the litigation against the Settling Defendants continued through trial and especially appeal.

### vi. The Settlement Agreements Were the Product of Arm's Length Negotiations Conducted by Highly Experienced Counsel and with the Assistance of Experienced Mediators.

This settlement is entitled to "an initial presumption of fairness" because it is the result of arm's length negotiations among experienced counsel. Newberg, § 11.41. The judgment of proposed Settlement Class Counsel that the settlement is in the best interest of the proposed Settlement Class "is entitled to significant weight, and supports the fairness of the class settlement." *Sheick v. Auto. Component Carrier LCC*, No. 2:09-cv-14429, 2010 WL 4136958, at *18 (E.D. Mich. Oct. 18, 2010) (quoting *IUE-CWA*, 238 F.R.D. at 597); *see also Cardizem*, 218

F.R.D. at 525. Courts give great weight to the recommendation of experienced counsel for the parties in evaluating the adequacy of a settlement.

"Preliminary approval of a proposed settlement is based upon the court's familiarity with the issues and evidence, as well as the arms-length nature of the negotiations prior to the proposed settlement, ensuring that the proposed settlement is not illegal or collusive." *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262, 270 (E.D. Ky. 2009) (quoting *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 370 (S.D. Ohio 1990)). The Settlement Agreement here is the result of lengthy negotiations between counsel experienced in complex antitrust class action litigation. The Settlement was negotiated during mediation with Court-appointed and private mediators. Additionally, Plaintiffs' counsel undertook a diligent and thorough investigation of the legal and factual issues posed by this litigation and consulted with experienced economists before negotiating this deal.

Plaintiffs' counsel are well-informed about the facts and the strength of the claims asserted when the terms of the Settlement Agreement were negotiated. Plaintiffs' counsel and Counsel for the Settling Defendants had engaged in extensive motion practice and substantial discovery including the production and review of more than one million pages of documents and over two dozen depositions. *See* Saveri Decl. ¶ 9. The parties submitted extensive briefs and accompanying expert reports on class certification. *Id.* ¶ 8. *See In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006) (granting preliminary approval where, as here, plaintiffs had engaged in extensive document review, written discovery, and depositions, and retained experts to analyze data analysis and produce reports). The parties have also participated in a full-day evidentiary hearing on class certification. *See* Transcript, ECF No. 187.

The negotiations were adversarial and conducted in the utmost good faith. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008); *Bowers v. Windstream Kentucky E., LLC*, No. 3:09-cv-440-H, 2013 WL 5934019, at *2 (W.D. Ky. Nov. 1, 2013). There is nothing in the course of the negotiations or the substance of the Settlement that discloses grounds to doubt its fairness: "[w]here a class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair." Manual § 21.662 at 464. Significantly, after many failed attempts to resolve the disputes directly, the settlements were reached through multiple multiday mediation sessions, first under the auspices of court-appointed mediator John Camillus and then through the assistance of Jim Arnold. The mediation session lasted the entirety of one day and was followed by numerous one-on-one negotiations before a final settlement was reached. Moreover, Defendants have expressly retained the right to oppose any motion for attorneys' fees and costs by Plaintiffs, and the parties have affirmed that there is no "clear sailing" provision. Settlement Agreement, ¶ 28. And Plaintiffs have expressly warranted that they have "relied solely upon their own knowledge and investigation, and not upon any promise, representation, warranty, or other statement by the Settling Defendants not expressly contained in this Settlement Agreement." *Id*. ¶ 54.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the motion for final approval and enter the accompanying Proposed Order.

Dated: March 31, 2023

Respectfully Submitted,

*/s/ Shawn K. Judge*

Shawn K. Judge (0069493), Trial Attorney*
skj@classlawgroup.com
Mark H. Troutman (0076390)*
mht@classlawgroup.com
GIBBS LAW GROUP LLP
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
*both working from and licensed only in Ohio

Joseph R. Saveri *(Pro Hac Vice)*
jsaveri@saverilawfirm.com
Steven N. Williams *(Pro Hac Vice)*
swilliams@saverilawfirm.com
Kevin E. Rayhill *(Pro Hac Vice)*
krayhill@saverilawfirm.com
JOSEPH SAVERI LAW FIRM, LLP
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940

*Attorneys for Plaintiffs*
 *Sarah J. Hunter and David N. Youtz*

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing was filed electronically with the Court on March 31, 2023.

Service will be made by the Court's electronic notification system, and all parties may access

this filing through the Court's system.

*/s/ Shawn K. Judge*
Shawn K. Judge (0069493)
