**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| SARAH J. HUNTER, AND DAVID N. YOUTZ, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BOOZ ALLEN HAMILTON, INC, *et al.*,<br><br>Defendants. | CASE NO. 2:19-cv-00411<br><br>CHIEF JUDGE ALGENON L. MARBLEY<br><br>Magistrate Judge Chelsey M. Vascura |

**CORRECTED DECLARATION OF JOSEPH R. SAVERI IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS WITH DEFENDANTS BOOZ ALLEN HAMILTON INC., MISSION ESSENTIAL PERSONNEL, LLC, CACI INTERNATIONAL, INC., AND CACI TECHNOLOGIES LLC**

I, Joseph R. Saveri, declare:

1. I am an attorney licensed in the State of California and admitted to practice *pro hac vice* in the above-captioned class action. I am the founder of the Joseph Saveri Law Firm, LLP ("JSLF"), counsel for the Plaintiffs in this action. I have handled this action since its inception. Unless otherwise indicated, I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently to them.

2. This Declaration is submitted in support of Plaintiffs' motion for final approval of the settlement between Plaintiffs Sarah J. Hunter and David N. Youtz ("Plaintiffs") and Defendants Booz Allen Hamilton, Inc. ("Booz Allen"), Mission Essential Personnel, LLC ("ME"), and CACI International Inc., and CACI Technologies, LLC (together, "CACI," and collectively with Booz Allen and ME, "Defendants"). Plaintiffs previously filed a motion for preliminary approval of their settlement with Defendants on September 16, 2021. *See* ECF No. 170.

## PROSECUTION OF THIS ANTITRUST LITIGATION BY CLASS COUNSEL

1. This action was initiated by class representative Sarah J. Hunter on February 7, 2019. JSLF and the Gibbs Law Group LLP ("GLG," together with JSLF, "Class Counsel") are counsel for the putative plaintiff class. On May 3, 2019, Plaintiffs filed a First Amended Complaint ("FAC") adding David N. Youtz as a named plaintiff.

2. This case involves antitrust claims brought under federal antitrust law by Plaintiffs on behalf of a class of individuals (the "Settlement Class") who were employed by Defendants at a former British Royal Air Force base in Molesworth, England, referred to as JAC Molesworth. Defendants are horizontal competitors in the labor market for skilled intelligence analysts at JAC Molesworth. They control 100% of that market. Plaintiffs allege that beginning

in approximately July 2017 Defendants entered into unlawful agreements not to hire, recruit, or solicit one another's employees ("No-Hire Agreements"). The No-Hire Agreements fixed and suppressed compensation for Plaintiffs and the Class and imposed unlawful restrictions on employee mobility. Plaintiffs allege the No-Hire Agreements are unlawful horizontal agreements to allocate the market for skilled professionals at JAC Molesworth, a *per se* violation of the Sherman Act. 15 U.S.C. § 1.

3. The litigation has been prosecuted intensively since its inception.

4. Defendants filed a motion to dismiss the FAC on May 16, 2019, contending that Plaintiffs' claims were barred by the Foreign Trade Antitrust Improvements Act because Plaintiffs and the members of the class were employed by Defendants in England. Defendants also asserted that Plaintiffs had failed to plausibly allege a *per se* violation of Section 1 of the Sherman Act. Plaintiffs argued the allegations should be analyzed under the rule of reason and that Plaintiffs had failed to plausibly allege a legitimate geographic market or product market. Defendants also argued that the horizontal No-Hire Agreements were ancillary to a procompetitive purpose. The Court subsequently denied Defendant's motion to dismiss on November 12, 2019. ECF No. 49.

5. On December 24, 2020, Plaintiffs filed a motion for class certification, arguing that evidence common to the proposed class showed that Defendants, through their No-Hire Agreements, suppressed compensation for their employees. Defendants filed an opposition to the class certification motion on March 12, 2021, and Plaintiffs filed a reply in support of their motion on May 4, 2021. Each side submitted extensive briefs and accompanying expert reports on class certification.

2

6. On September 22, 2021, Plaintiffs filed a Motion for Summary Judgment. The motion argued that Defendants' No-Hire Agreements were per se illegal under the Sherman Act and relevant caselaw.

7. On September 22, 2021, Plaintiffs filed their motion to exclude Defendants' expert Christopher Yukins.

8. On November 22, 2022 Plaintiffs filed their opposition to Defendants' motion for summary judgment.

9. On January 22, 2022 Plaintiffs filed their reply in support of their motion for summary judgment.

10. On October 22, 2021, Plaintiffs participated in an evidentiary hearing regarding class certification.

11. Plaintiffs and Defendants engaged in extensive fact discovery until the cutoff date of February 15, 2021. Class Counsel reviewed over one million pages of documents, took or defended three dozen depositions including 30(b)(6) and expert depositions. Some of these depositions were taken remotely of witnesses located in the United Kingdom. Plaintiffs and Defendants also engaged in extensive expert discovery, including the exchange of expert reports and expert depositions until August 27, 2021, and have commenced preparations for trial.

12. On April 29, 2021, Plaintiffs and Defendants participated in Court-facilitated mediation with mediator John Camillus during which Plaintiffs and CACI reached a settlement in principle. Following continued negotiations regarding additional terms of the settlement and settlement documentation, on June 8, 2021, Plaintiffs and CACI executed a settlement agreement ("CACI Settlement Agreement") under which Plaintiffs and the class agreed to release all claims against CACI arising from or relating to the allegations in the FAC in exchange for $200,000 in

3

cash, which would be used to pay Class Counsel's unreimbursed costs, including the cost of notice administration. ECF No 170-2. The class period for the CACI Settlement Agreement was January 1, 2015 to June 1, 2021.

13. On April 20, 2022, Plaintiffs and the remaining Defendants Booz Allen and ME participated in a mediation facilitated by mediator Jim Arnold during which the Parties reached a settlement in principle.

14. On June 1, 2022, the Parties executed a Memorandum of Understanding memorializing the main terms of the agreement.

15. Following continued negotiations regarding additional terms of the settlement and settlement documentation, on September 2, 2022, Plaintiffs and Booz Allen and ME executed a Settlement Agreement resolving all remaining claims of Plaintiffs and the Settlement Class against Defendants ("Booz Allen-ME Settlement Agreement," together with the CACI Settlement Agreement, the "Settlement Agreements"). Plaintiffs agreed to release all of their claims against the remaining Defendants in exchange for an all-cash payment of $1,325,000 to be used exclusively for the benefit of the Settlement Class. The funds will be paid into an escrow account ("Escrow Account") established at Citibank, N.A. within thirty (30) business days of the Effective Date of the Settlement Agreement. Booz Allen and ME also agreed to pay, upon order of the Court, up to $3,750,000 to cover costs incurred by Plaintiffs in prosecuting this action, incentive awards for the class representatives, and reasonable attorneys' fees. ECF No 253-2.

16. Based on the discovery produced, Plaintiffs have reached certain conclusions about the participation of Booz Allen and ME in agreements with and among one another and CACI to refrain from hiring one another's employees. Documents and deposition testimony

provided by Defendants document the participation of Defendants in the wrongful acts alleged by Plaintiffs.

17. From the documents produced to date, Plaintiffs have conducted a factual investigation of the Settling Defendants' operations and the No-Hire Agreement activity that is the basis of all claims against the Settling Defendants and have considered the merits of individual defenses.

18. In determining that settlement with Defendants was appropriate, Class Counsel considered the inherent risks of litigation, Defendants' participation in the No-Hire Agreements, and the merits of the individual defenses that the Settling Defendants have raised.

19. Class Counsel and Counsel for the remaining Defendants participated in a day long mediation with a private mediator, Jim Arnold. The settlement discussions and negotiations with Settling Defendants were conducted individually and independent from any potential negotiations with CACI.

20. This settlement, the second settlement in this action, was the product of good faith, arm's-length negotiations among experienced and well-informed counsel. Plaintiffs' negotiations with the Booz Allen and ME occurred over a span of several weeks. The Parties were informed by extensive documentary and other discovery, as well as expert analysis.

21. The Settlement Agreement is reasonable in light of the relatively small size and employment of members of the class. Based on information produced by Defendants, Plaintiffs understand the class to consist of approximately 647 individuals who are present or former employees of Defendants. Members of the Settlement Class will receive on average approximately $2,000.

5

**MOTIONS FOR PRELIMINARY APPROVAL**

22. On September 17, 2021, Plaintiffs filed a Motion for Preliminary Approval of the settlement agreement with Defendant CACI. ECF No. 170. The motion noted that courts in the Sixth Circuit favor settlement even when it is partial. The motion asked the Court to preliminarily approve the CACI settlement agreement, approve the CACI notices, certify the proposed class for settlement purposes, stay proceedings against CACI, appoint JSLF and GLG as Class Counsel, and schedule a final approval hearing.

23. On September 6, 2022, Plaintiffs filed a Motion for Preliminary Approval of the settlement agreement with Booz Allen and ME. ECF No. 253. The motion asked the Court to preliminarily approve the settlement agreement with Booz Allen and ME, approve the notices, approve the plan of allocation, certify the proposed class for settlement purposes, appoint JSLF and GLG as Class Counsel, and schedule a final approval hearing. The plan of allocation set forth a formula under which each Settlement Class member's share of the Settlement Fund Amount would be directly proportional to their share of total base salary paid to all Settlement Class members during the Class Period, January 1, 2015 to June 30, 2022. The motion also asked the Court to consider and approve the CACI settlement agreement simultaneously with the Booz Allen and ME settlement agreement.

24. On September 13, 2022, Plaintiffs and CACI filed a joint notice of an amendment to the CACI Settlement Agreement to inform the Court that the parties had changed the class period to bring it in line with the Booz Allen-ME class period, January 1, 2015 to June 30, 2022. No other changes were made to the CACI Settlement Agreement

25. On December 19, 2022, the Court issued an order granting in part and denying in part the Settlement Agreements. The Court certified the following Settlement Class for settlement purposes only:

> All natural persons employed by Defendants at JAC Molesworth during the Class Period from January 1, 2015 through June 30, 2022.
>
> Excluded from the Class are: corporate officers, members of the boards of directors, and senior leaders of Defendants; employees of the United States government employed at JAC Molesworth during the Class Period; and any and all judges and justices, and chambers' staff, assigned to hear or adjudicate any aspect of this litigation.

26. The Court preliminarily approved the Settlement Agreements, holding that they were the product of arm's length negotiations conducted by informed counsel and were within the range of reasonableness. The Court also appointed JSLF and GLG Class Counsel, and Rust Consulting, Inc. the Settlement Administrator. The Court ordered Defendants to provide contact information for the Settlement Class members within fourteen (14) days of the Order. The Court also preliminarily approved the class notices on the condition that Plaintiffs amend the notices to sufficiently inform the Settlement Class members about the plan of allocation and make expressly clear that they had twenty-eight (28) days from the date the notices were sent in which to opt-out of or object to the Settlement Agreements.

27. On December 23, 2022, Plaintiffs filed the amended notices.

28. On January 9, 2023, the Court approved Plaintiffs' amended notices, thereby commencing the schedule for service of the notices, under which the Settlement Administrator had twenty-eight days to serve the notices on the Settlement Class.

## SERVICE OF CLASS NOTICES

29. On September 20, 2022, Booz Allen sent Plaintiffs contact information and some base salary information regarding current and former Booz Allen employees who were part of the Settlement Class. On December 22, 2022, counsel for CACI sent Plaintiffs some employment information regarding when during the Class Period current and former CACI employees who were part of the Settlement Class worked at Molesworth, and information about what their base salary was during those periods. On January 11, 2023, CACI sent Plaintiffs their most recent

contact information for those Settlement Class members. On December 23, 2022, counsel for ME sent Plaintiffs last known contact information for current and former ME employees who were part of the Settlement Class. On January 4, 2023, counsel for ME sent Plaintiffs dates of employment and base salary information for those Settlement Class members.

30. On February 6, 2023, pursuant to the Court's order, the Settlement Administrator mailed class notices to 609 members of the Settlement Class for whom Defendants had provided mailing addresses. Also on February 6, 2023, the Settlement Administrator emailed class notices to the 568 Settlement Class members for whom Defendants had provided email addresses. The Settlement Administrator successfully delivered letter notices, email notices, or both, to all but four (4) members of the Settlement Class for whom the Settlement Administrator sent notices on February 6, 2023. Despites concerted efforts to locate contact information for these four Settlement Class members, the Settlement Administrator has been unable to serve class notices on these four. See the adjacently filed Declaration of Amy Fringer for Rust Consulting, Inc.

31. On February 22, 2023, after investigating inquiries from two Settlement Class members who had not received class notices, counsel for ME informed Plaintiffs for the first time that they had identified thirty-eight (38) additional current or former ME employees who were members of the Settlement Class.

32. On February 23, 2023, Class Counsel met and conferred with Defendants' counsel and agreed that notices should be sent to these additional Settlement Class members as soon as practicable, and that the notices should be amended to ensure that the additional Settlement Class members would have a full twenty-eight days to opt out of or object to the Settlement Agreements. That same day, the parties contacted the Court. The court scheduled a conference call for the following day.

8

33. On February 24, 2023, the parties conferred with the Court and it was agreed that Plaintiffs should serve class notice with the amended opt-out/objection period on the additional Settlement Class members as soon as practicable. It was also agreed that Plaintiffs would update the Court regarding any opt-outs or objections on April 3, 2023, the date Plaintiffs' reply in support of their motion for final approval would be due.

34. On February 24, 2023, after conferring with the settlement Administrator and ascertaining that the Settlement Administrator would not be able to serve the additional Settlement Class members that day, Class Counsel and administrative staff at JSLF mailed letter notices to the thirty-eight additional Settlement Class members by USPS overnight mail. Those letter notices included a deadline of March 24, 2023 (twenty-eight days after mailing), for Settlement Class members to opt out of or object to the Settlement Agreements. To date, Plaintiffs have confirmed service by US mail on thirty Settlement Class members. Three notices are still in transit. Five notices were undeliverable at the addresses Defendants provided to Plaintiffs.

35. On March 7, 2023, Class Counsel realized for the first time that in the rush to get the class notices out on February 24, 2023, they had failed to send the email notices. Class Counsel immediately sent email notices to the additional Settlement Class members. The email notices re-set the deadline to opt out of or object to the Settlement Agreements to April 4, 2023 (twenty-eight days after the class notices were emailed). One email address was undeliverable.

36. All of the thirty-eight additional Settlement Class members have received notice by at least one method:

- Twenty-nine Settlement Class members have been served by both U.S. mail and electronic mail.

9

- Eight have been served by email but not by U.S. mail. The notices is still in transit for three of those.

- One has been served by U.S. mail but could not be reached by email.

37. The class consists of approximately 647 individuals who were employees of Defendants at JAC Molesworth, during the Class Period, January 1, 2015, to June 30, 2022. Despite concerted efforts by the Settlement Administrator, Plaintiffs have been unable to effect service on four Settlement Class members. Four members of the Settlement Class have opted to exclude themselves from the Booz Allen-ME Settlement Agreement (one opt-out request was received on March 7, 2023, one day after the opt-out deadline). One of those individuals also excluded herself from the CACI Settlement Agreement as well.

### CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND COSTS

38. Plaintiffs seek attorney fees in the amount of $1,718,435. To date, Plaintiffs' Counsel has incurred approximately $6,400,000 in attorney's fees. Thus, Class Counsel's requested fee represents a significant discount on their lodestar. Class Counsel has received no compensation for their services to date.

39. Class Counsel committed significant time and resources to prosecuting this action. Class Counsel has extensive experience litigating complex class actions such as this, and realized early on that engaging with Defendants over discovery, motion practice, settlement, and trial would consume a very large amount of Class Counsel's time and resources. Class Counsel nonetheless committed fully to prosecuting this action, despite taking the case on a contingent fee basis and knowing that the size of the class would limit the potential damages. Class Counsel litigated the case through to a very successful outcome, and has agreed to discount their fees proportionally with the size of the settlements.

**REIMBURSEMENT OF INCURRED LITIGATION EXPENSES AND COSTS**

40. In a separate motion JSLF and GLG will seek $3,950,000 to cover costs incurred in prosecuting this action,[1] incentive awards for the Class Representatives, and reasonable attorney's fees. The Settlement Funds will also be used to pay the costs of notice and settlement administration.

41. To date, Plaintiffs have incurred substantial out of pocket costs. Class Counsel have undertaken the representation of Plaintiffs in this matter on a wholly contingent basis and have not received payment of attorney's fees or expenses incurred. Costs, including the costs associated with experts, are substantial and exceed Class Counsel's proposed attorneys' fees. Plaintiffs' total costs and expenses to date are approximately $2,129,065. In addition, Plaintiffs estimate the notice and administration expenses for the settlement will cost approximately $82,500. Plaintiffs will seek incentive awards of $10,000 for each of the Class Representatives, totaling $20,000. As of the date of this declaration, Plaintiffs' Counsel has not received any payment or reimbursement for attorneys' fees or costs in this matter.

42. Class Counsel have committed substantial resources to the litigation of this action to date, including advancing the costs of litigation, travel expenses, and substantial fees for expert witnesses.

43. Plaintiffs' have shown they suffered extensive antitrust injury as a direct and proximate result of Defendants' alleged anticompetitive actions. Plaintiffs' experts are experienced in no-poach class actions, and used the same widely accepted techniques here that have led to successful outcomes in several other no-poach cases. And Class Counsel are

---

[1] The $200,000 settlement fund amount from the CACI settlement will, if approved, also be applied to reimburse Plaintiffs' costs.

11

experienced litigators who had achieved positive results at trial in large and complex cases with national scope. *See e.g.*, *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5159441, at *8 (N.D. Cal. Sept. 2, 2015) (granting final approval in no-poach case); *In re Capacitors Antitrust Litig.*, No. 17-MD-2801, 2019 WL 13166633, at *4 (N.D. Cal. June 14, 2019) (granting final approval).

44. Plaintiffs hired Dr. Phillip Johnson to prove that Defendants' alleged anticompetitive actions restricted employee mobility and suppressed compensation. Dr. Johnson reviewed relevant economic theory to determine whether Defendants' alleged anticompetitive actions were of a sort likely to restrict mobility suppress compensation. Dr. Johnson then applied econometric analysis to Defendants' compensation data to determine that Defendants had caused antitrust injury to Plaintiffs and the class by agreeing not to hire each other's Molesworth employees, thereby restricting mobility and suppressing compensation. Dr. Johnson used a methodology he had helped developed and employed in other no-poach cases with successful outcomes. *See e.g.*, *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5159441, at *8 (N.D. Cal. Sept. 2, 2015) (granting final approval for $415 million settlement in no-poach case); *Seaman v. Duke Univ.*, No. 1:15-CV-462, 2019 WL 13193731, at *1 (M.D.N.C. Sept. 24, 2019) (granting final approval of settlement). Dr. Johnson also analyzed the reports and testimony provided by Defendants' experts and helped to rebut Defendants' experts' assertions.

45. Dr. Johnson used a widely accepted methodology to show that Defendants' anticompetitive actions caused classwide harm to Plaintiffs and the Settlement Class by restricting mobility and suppressing compensation. Dr. Johnson calculated single damages for the Settlement Class to be $4,219,994. Dr. Johnson also addressed issues including market

definition, market power, the anticompetitive effects of the agreements, their procompetitive benefits, and the balance between them.

46. Class Counsel also retained statistician and econometrician Ted Tatos. Mr. Tatos has focused his research on relevant market definition and multi-sided platforms. Plaintiffs asked Mr. Tatos to review, analyze, critique and rebut the expert testimony proffered by Defendants.

47. In total, Class Counsel has expended $1,560,545 on expert services.

48. Class Counsel has also expended significant outlays for court reporters and videographers, transcripts, online research, travel, printing and copying, and third party vendors, among other things.

49. On October 4, 2021, Plaintiffs engaged in further mediation with the remaining Defendants under the auspices of Mr. Camillus, Booz Allen and ME. The parties disagreed over whether a settlement had been reached. That issue was brought before the Court for resolution. After briefing and in person testimony, the Court denied Plaintiffs' motion.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct and to the best of my knowledge and that this declaration was executed in San Francisco, California on March 8, 2023.

By: */s/ Joseph R. Saveri*
      Joseph R. Saveri