**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **SARAH J. HUNTER and DAVID N. YOUTZ,** *on behalf of themselves and all others similarly situated,* | : : : | |
| | : | **Case No. 2:19-cv-00411** |
| **Plaintiffs,** | : | |
| | : | **Chief Judge Algenon L. Marbley** |
| **v.** | : | |
| | : | **Magistrate Judge Chelsey M. Vascura** |
| **BOOZ ALLEN HAMILTON INC.,** *et al.,* | : : | |
| **Defendants.** | : | |

<u>**OPINION & ORDER**</u>

## I.      INTRODUCTION

Plaintiffs Sarah J. Hunter and David N. Youtz, on behalf of themselves and all others similarly situated, allege that Defendants Booz Allen Hamilton, Inc. ("Booz Allen"), Mission Essential Personnel, LLC ("ME"), CACI International, Inc., and CACI Technologies LLC ("CACI"), unlawfully entered into agreements not to hire, recruit, or solicit one another's employees at Joint Intelligence Operations Center Europe ("JIOCEUR") Analytic Center ("JAC") in Molesworth, England, in violation of the Sherman Antitrust Act of 1890, 15 U.S.C. §§ 1–7. After three years of litigation, Plaintiffs reached Settlement Agreements with Defendants; in December 2022, this Court preliminarily certified the Settlement Class pursuant to Rule 23 and approved the Settlement Agreements. (*See* Op. & Order, ECF No. 257). The Settlement Agreements provide a total of $5,275,000, including $1,325,000 for the Settlement Class and $3,950,000 in attorneys' fees and costs.

Now before the Court are Plaintiffs' Amended Motion for an Award of Attorneys' Fees and Costs (ECF No. 273) and Amended Motion for Final Approval of Class Action Settlement

(ECF No. 274). Both motions are unopposed by Defendants, and no class member has objected. This Court held a Fairness Hearing on April 12, 2023, at 9:30 a.m. Pursuant to Fed. R. Civ. P. 23(e), and for the reasons set forth more fully below, the Court finds that settlement of this action, as embodied in the terms of the Settlement Agreements between the parties, is fair, reasonable, and adequate in light of the factual, legal, practical and procedural considerations raised by this suit. The Court hereby **GRANTS** Plaintiffs' request for final approval of the Settlement Agreements and certifies the Settlement Class for settlement purposes. The Court further **GRANTS** Plaintiffs' request for attorneys' fees and costs.

## II.     BACKGROUND

### A.     Factual Background

Defendants are defense contractors, who provide intelligence services to the United States government pursuant to contracts with the U.S. Defense Intelligence Agency ("DIA"). Some of that work takes place at JAC: a former Royal Air Force base in Molesworth, United Kingdom, that now serves as the military intelligence analysis center for the U.S. European Command. Plaintiffs, who were employed by Defendants at JAC, allege that Defendants entered into agreements not to hire one another's employees (also referred to as "no-poach agreements"), which served to eliminate competition and depress compensation. Defendants, on the other hand, suggest that their hiring activities were justified as part of a lawful team-building approach; Defendants continue to deny all allegations of wrongdoing.

### B.     Litigation History

Plaintiff Sarah Hunter initiated this action on February 7, 2019. (*See* Compl., ECF No. 1). Plaintiff David Youtz was added on May 3, 2019. (*See* First Am. Compl., ECF No. 28). Over the next three years, the parties litigated this action vigorously. Defendants filed a motion

to dismiss in May 2019, arguing that Plaintiffs' allegations are barred under the Foreign Trade Antitrust Improvements Act of 1982, Pub. L. No. 97-290, 96 Stat. 1246 (codified at 15 U.S.C. § 6a), and otherwise fail to state a claim, which the Court denied. (Op. & Order, ECF No. 49; *see* Mot. to Dismiss, ECF No. 30). The parties also fully briefed motions on class certification, summary judgment, and evidentiary issues. (*See generally* ECF, No. 2:19-cv-00411). The parties further participated in a hearing on class certification before this Court, including arguments from counsel and testimony and examination of expert witnesses. (*See generally* Tr. Class Certification Hr'g, ECF No. 187). The parties engaged in extensive fact and expert discovery, including the review of more than one million pages of documents produced by Defendants, three dozen depositions, and an evidentiary hearing before this Court. (*See* Declaration of Joseph R. Saveri ("Saveri Decl.") ¶ 11, ECF No. 274-1). Each side retained expert witnesses, Dr. Phillip Johnson and Mr. Ted Tatos for Plaintiffs and Mr. Justin McCrary for Defendants. (*See id.* ¶¶ 44–46). Finally, between April 29, 2021, and April 20, 2022, the parties participated in three mediation sessions, first between Plaintiffs and CACI and two further sessions between Plaintiffs and Booz Allen and ME, through which the parties reached settlement agreements. (*See id.* ¶¶ 12–13, 19, 49).

### C.    Settlement Agreements

Plaintiffs executed a settlement agreement with CACI on June 8, 2021 ("the CACI Settlement"), and a separate agreement with Booz Allen and ME on September 2, 2022 ("the Booz Allen/ME Settlement") (collectively, "the Settlement Agreements" or "the Settlement"). (*Id.* ¶¶ 12–15; *see* CACI Settlement Agreement, ECF No. 170-2; Booz Allen/ME Settlement Agreement, ECF No. 253-2). The Settlement Agreements resolve all claims by Plaintiffs and the Settlement Class against Defendants, with the Settlement Class defined as:

> All natural persons employed by Defendants at JAC Molesworth during the Class Period from January 1, 2015 through June 30, 2022.
>
> Excluded from the Class are: corporate officers, members of the boards of directors, and senior leaders of Defendants; employees of the United States government employed at JAC Molesworth during the Class Period; and any and all judges and justices, and chambers' staff, assigned to hear or adjudicate any aspect of this litigation.

(*See* Booz Allen/ME Settlement Agreement at 7, ECF No. 253-2). The total value of the Settlement Agreements stands at $5,275,000, with $1,325,000 allocated for the Settlement Class and $3,950,000 in fees and costs for Class Counsel.

The Booz Allen/ME Settlement Agreement creates an all-cash Settlement Fund of $1,325,000 (plus interest, if any), to be distributed to the Settlement Class. The funds will be paid into an escrow account at Citibank, N.A., within 30 business days of the agreement becoming effective. (*See* Saveri Decl. ¶ 15, ECF No. 274-1). The amount each class member will receive from the fund will be calculated by dividing her estimated total salary during the Class Period by the combined estimated total salaries paid to all Class Members during the Class Period, and multiplying that fraction by the total fund amount. (*See* Am. Mot. for Final Approval at 9 n.4, ECF No. 274). Any remaining funds will be given to the Settlement Class or distributed *cy pres*. (*Id.*).

The Settlement Agreements also contemplate compensation for Plaintiffs' attorneys' fees and costs and incentive awards for the class representatives, Hunter and Youtz, in addition to the Settlement Fund. In total, Plaintiffs seek $3,950,000 ($3,750,000 from Booz Allen and ME and $200,000 from CACI[1]) in fees and costs. (Saveri Decl. ¶ 15, ECF No. 274-1; *see also* Am. Mot. for Award of Att'ys' Fees, ECF No. 273). Plaintiffs explain that Class Counsel have incurred approximately $2,129,065 in litigation expenses, plus $82,500 for settlement administration;

---

[1] The CACI Settlement consists of $200,000 for Class Counsel's litigation expenses, with the Settlement Fund for the Class paid entirely by Booz Allen Hamilton and ME.

Class Counsel also seek $20,000 for incentive awards and $1,718,435 in attorneys' fees. (*See id.* ¶¶ 38, 41).

### D. Notice Process

On December 19, 2022, this Court granted in part and denied in part Plaintiffs' Motions for Preliminary Approval of Class Settlement (ECF Nos. 170, 253). (*See generally* Op. & Order, ECF No. 257). The Court preliminarily certified the Settlement Class for settlement purposes only, preliminarily approved the Settlement Agreements, and appointed Plaintiffs' counsel Joseph Saveri Law Firm ("JSLF") and Gibbs Law Group LLP ("GLG") as Class Counsel and Rust Consulting, Inc., as Settlement Administrator, but required Plaintiffs amend the class notices to provide further specificity regarding the plan of distribution and the opt-out/objection deadline. (*See id.* ¶ 9). Plaintiffs provided amended notices within 14 days thereafter, which the Court approved on January 9, 2023, thus commencing the notice period. (*See* Order, ECF No. 261).

On February 6, 2023, the Settlement Administrator mailed class notices to 609 members of the Settlement Class for whom Defendants had provided mailing addresses over the preceding months. (Saveri Decl. ¶¶ 29–30, ECF No. 274-1; *see also* ECF No. 259 (amended class notices)). The Settlement Administrators also emailed class notices to 568 members of the Settlement Class for whom Defendants had provided email addresses. (Saveri Decl. ¶ 30, ECF No. 274-1). The parties realized later that month, however, that there were 38 additional current or former ME employees who were part of the Settlement Class but had not been identified by ME, and thus had not been sent class notices; with permission from the Court, the Settlement Administrator mailed class notices to these additional class members on February 24, 2023, but inadvertently did not send the email notices until March 7, 2023. (*See id.* ¶¶ 31–35). The

additional class members have now all received notice by at least one method of delivery. In addition, all class members, including the late-identified current or former ME employees, were given 28 days to object or opt-out. (*See id.* ¶¶ 34–36). The cover letters for the mailed notices listed each Class Members' total base salary during the Class Period (which forms the basis of each individual's proposed *pro rata* distribution), to ensure that members had full transparency about the settlement distribution ahead of the Fairness Hearing. (*See* Declaration of Kevin Rayhill ("Rayhill Decl.") ¶ 6, ECF No. 276-1).

In total, the Settlement Class consists of 647 employees who were employees of Defendants at JAC Molesworth from January 1, 2015, to June 30, 2022. The Settlement Administrator has been unable to effect service on six class members. (Supplemental Declaration of the Settlement Administrator ("Supp. Admin. Decl.") ¶ 19, ECF No. 276-3). Six class members have opted-out of the Booz Allen-ME Settlement Agreement (one untimely), three of whom also opted-out of the CACI Settlement. (Rayhill Decl. ¶ 7, ECF No. 276-1). Class Counsel has responded to inquiries from thirty-three members of the Class. (*Id.* ¶ 12).

### III.   STANDARD OF REVIEW

Judicial review of a class action settlement investigates whether the proposed settlement agreement is "fair, reasonable, and adequate." *Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (quoting Fed. R. Civ. P. 23(e)(2)). When determining whether a class action settlement is fair, reasonable, and adequate, courts consider: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Id.* (internal citations

omitted); *see, e.g.*, *Borders v. Alternate Sol. Health Network, LLC*, No. 2:20-cv-01273, 2021 WL 4868512, at *2 (S.D. Ohio May 17, 2021). The Court has "'wide discretion in assessing the weight and applicability' of the relevant factors," *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1305–06 (6th Cir. 1992)), but the inquiry does not extend to the merits or factual underpinnings of the case. *See Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983) (internal citations omitted).

## IV. APPROVAL OF THE CLASS SETTLEMENT

### A. Class Certification for the Purposes of Settlement

As an initial matter, the requirements of Rule 23 must be satisfied in order to grant final approval of a settlement class. The Court has already preliminarily approved the Proposed Class for settlement purposes. (*See* Op. & Order, ECF No. 257). Nothing has changed since then, and the Court now finds that the Proposed Class satisfies Rule 23(a)'s requirements of commonality, numerosity, typicality, and adequacy of representation, as well as the requirements of predominance and superiority under Rule 23(b)(3). *See* Fed. R. Civ. P. 23.

#### 1. Numerosity, Commonality, Typicality, and Adequacy

First, "[w]hile no strict numerical test exists to define numerosity under Rule 23(a)(1), 'substantial' numbers . . . are sufficient to satisfy this requirement." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013) (quoting *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006)); *see also* Fed. R. Civ. P. 23(a)(1) (requiring only that the class be "so numerous" as to make joinder "impracticable"). This Court has previously noted that "[c]ourts routinely hold that a class of 40 or more members is sufficient to meet the numerosity requirement." *Raymond v. Avectus Healthcare Sols., LLC*, No. 1:15-cv-00559, 2020 WL 3470461, at *4 (S.D. Ohio Mar. 27, 2020) (internal quotation marks and

citation omitted). As the class here consists of 647 members, the Court concludes that the numerosity requirement is satisfied.

Second, Fed. R. Civ. P. 23(a)(2) requires that "there are questions of law or fact common to the class." This requires Plaintiffs to show that "the class members 'have suffered the same injury,'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quoting *Gen. Telephone Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1980)), and that that injury "depend[s] upon a common contention" and is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* The central question at issue in this case (*i.e.*, whether Defendants conspired to implement no-poach agreements to restrain competition and suppress employee mobility at JAC Molesworth, in violation of federal antitrust laws) presents a common question among all members of the class. Class members have suffered the same alleged injury, turning on the same factual and legal questions. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 593 (N.D. Cal. 2010) ("[C]ourts have consistently held that the very nature of a conspiracy antitrust actions compels a finding that common questions of law and fact exist." (internal quotation marks and citation omitted)).

Third, the requirement of "typicality" in Rule 23(a)(3) "is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *In re Whirlpool Corp.*, 722 F.3d at 852 (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (en banc)); *see also Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542–43 (6th Cir. 2012) (noting that the questions of typicality and commonality "tend to merge"). Specifically, within "the antitrust context, typicality is established when the named plaintiffs and all class members

8

alleged the same antitrust violations by defendants," *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 405 (S.D. Ohio 2007), as is the case here.

Fourth, the final element of Rule 23(a) requires that the named plaintiffs "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Within the Sixth Circuit, this is evaluated according to two criteria: "1) [t]he the representative must have common interests with unnamed members of the class, and 2) it must appear the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Foundry Resins*, 242 F.R.D. at 405 (alteration in original) (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976), *cert denied*, 429 U.S. 870 (1976)); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (noting that the "adequacy" inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent"). Here, the named plaintiffs, Hunter and Youtz, share a common injury with members of the Settlement Class and a shared interest in demonstrating that injury, there are no conflicts between the named plaintiffs and the Settlement Class, and Class Counsel have vigorously prosecuted this litigation. (*See generally* ECF, No. 2:19-cv-00411). They are, in short, adequate guardians of the interests of the Class.

### 2. *Predominance and Superiority*

Having established that the Proposed Class meets the prerequisites for class certification set forth in Rule 23(a), the Court now turns to Rule 23(b). *See Rosario v. Livaditis*, 963 F.2d 1013, 1017 (6th Cir. 1992) ("Once these four prerequisites [of Rule 23(a)] are satisfied, the potential class must also satisfy at least one provision of Rule 23(b)."). The Court concludes that the Settlement Class has met the requirements of Rule 23(b)(3): predominance and superiority.

The predominance requirement asks whether "there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the

9

need to examine each class member's individualized position." *In re Foundry Resins*, 242 F.R.D. at 408 (quoting *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001)).   Allegations of antitrust violations will often predominate over individual questions; because "the allegations . . . relate to the *defendants' conduct*, therefore proof will not vary among the class members." *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 264 (D.D.C. 2002) (emphasis in original); *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008).   That logic applies here, where the proposed class shares a common theory of liability and impact that predominates over any individual questions of damages.   The common theory of liability also compels the conclusion that a class action is the superior method of resolving the claims at issue; the class mechanism provides a more efficient and expedient vehicle for resolution than individually litigating the same issues of antitrust conspiracy and liability involving Defendants' conduct for each member of the class (each of whom suffered comparatively small damages). *See In re Foundry Resins*, 242 F.R.D. at 411–12.

Accordingly, the Court concludes that the Settlement Class meets the prerequisites of Rule 23(a) and the requirements of Rule 23(b)(3), and therefore certifies the Settlement Class for purposes of settlement.

## B.      Sufficiency of Notice

Class action settlements pursuant to Rule 23 must meet the notice requirements set forth in Fed. R. Civ. P. 23(c)(2)(B) and 23(e).   Thus, class action settlement must be preceded by notice to class members, Fed. R. Civ. P. 23(e), and that notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be reasonably identified through reasonable effort."   Fed. R. Civ. P. 23(c)(2)(B).   In other words, the notice must be "reasonably calculated, under all the circumstances, to apprise interested

10

parties of the pendency of the action and afford them an opportunity to present their objections." *Int'l Union*, 497 F.3d at 629–30 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

      The notices distributed by Class Counsel in this case satisfied these requirements. The final notices were amended according to this Court's December 19, 2022, Opinion and Order and were preliminarily approved by the Court before being sent. (*See* Order, ECF No. 261). Both the long-form notice, which was sent to class members by first class mail, and the short-form notice, which was emailed, "explained [their] purpose, discussed the nature of the pending suit and accurately summarized the . . . settlement agreement[s]." *Int'l Union*, 497 F.3d at 630. In short, they "fairly apprise[d] the prospective members of the class of the terms of the proposed settlement," *id.* (quoting *Grunin v. Int'l House of Pancakse*, 513 F.2d 114, 122 (8th Cir. 1975)), as well as how and when to object or opt-out. It is true that Class Counsel and the Settlement Administrator have encountered some difficulties reaching all class members with the notices. (*See generally* Supp. Admin. Decl. ¶¶ 10–19, ECF No. 276-3). These difficulties include the 38 class members discovered by Defendants after the start of the notice period. But, despite these difficulties, all but six (6) members of the Class have received at least some form of notice; all notices, including the notices sent late, allowed for 28 days to opt-out or object. (*See id.* ¶ 6; *see also id.* ¶ ¶¶ 11–16 (describing efforts to update addresses, ensure the long-form notices reached class members with new addresses, and reach class members undeliverable by mail)). Moreover, the parties have promptly kept the Court abreast of all complications that have arisen during the Notice Period, provided effective solutions, and garnered Court approval before implementing the proposed solutions.

Accordingly, given that 641 of 647 Class Members received notice, *see Hainey v. Parrott*, 617 F. Supp. 2d 668, 675 (S.D. Ohio 2007); *Lewis v. Huntington Nat'l Bank*, No. 2:11-cv-00058, 2013 WL 12231327, at *3 (S.D. Ohio May 30, 203), and the notice adequately explained this action and the proposed settlement, the Court concludes that members of the class were given the "best notice that is practicable" in compliance with the requirements of Rule 23.

## C. Fairness, Reasonableness, and Adequacy

The Court must determine if a proposed settlement is "fair, reasonable, and adequate" before giving it a stamp of approval. Fed. R. Civ. P. 23(e)(1)(C); *see Int'l Union*, 497 F.3d at 631. The Court considers several factors when making this determination: "(1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Int'l Union*, 497 F.3d at 631. The Court's inquiry is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Clark Equip. Co. v. Int'l Union, Allied Indus. Workers of Am.*, 803 F.2d 878 (6th Cir. 1986).

Upon careful consideration, the Court finds that all seven factors militate in favor of approval of the Settlement Agreements.

### 1. Fraud or Collusion

First, there is no suggestion that the Settlement Agreements are the product of fraud or collusion. The Court begins from a presumption that there was no fraud or collusion, absent evidence to the contrary. *See Bartell v. LTF Club Operations Co., Inc.*, No. 2:14-cv-00401, 2020

12

WL 7062834, at *3 (S.D. Ohio Aug. 7, 2020). There is no such evidence here. The case was litigated vigorously by all parties, with dozens of depositions, extensive motions practice, and plenty of spilt ink. (*See generally* ECF, No. 2:19-cv-00411). Moreover, the Settlement Agreements resulted from intensive arm's length negotiations facilitated by court-approved mediators. *See In re Flint Water Cases*, 571 F. Supp. 3d 746, 780 (E.D. Mich. 2021). As the settlements are the result of arm's length, well-researched, and protracted negotiations after years of litigation, this factor favors approval of the Settlement Agreements.

2.     *Complexity, Expense, and Likely Duration of the Litigation*

There is little question that continued litigation in this case would be tremendously complex, expensive, and lengthy. *See In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." (internal citation omitted)). In fact, this case, as evidenced by the docket, has already been rather complex and expensive, involving an extensive discovery record and vigorous briefing. The case has been pending for four years, with a potential trial and appeals in addition to the outstanding motions on summary judgment and class certification; in short, significant issues remain. Settlement, on the other hand, reduces risks, conserves judicial resources, and eliminates the significant other costs associated with continued litigation. *See id.*

3.     *Amount of Discovery*

As noted above, this case has already involved extensive discovery, in the form of over one million pages of documents, dozens of depositions (including depositions of witnesses in the United Kingdom), and expert reports. (Saveri Decl. ¶ 9, ECF 273-1). In other words, "both sides have collected ample evidence to calculate the strengths and weaknesses of their positions

and determined that the settlement is fair and reasonable under the circumstances." *Bartell*, 2020 WL 7062834, at *4; *see also In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006).  This factor favors approval.

### 4. *Likelihood of Success on the Merits*

The fourth factor, likelihood of success on the merits, also weighs in favor of approving the Settlement Agreements.  *See Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 245 (6th Cir. 2011) ("The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits.  The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." (quoting *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)).  The parties disagree about the merits of Plaintiffs' claims and are represented by highly skilled and experienced litigators on all sides.  There are many issues still outstanding, including the threshold matter of class certification, various evidentiary disputes, summary judgment, and the amount of damages (if any) caused by Defendants' actions.  (*See generally* ECF, No. 2:19-cv-00411).  Each of these issues is highly contentious, provides substantial grounds for disagreement, and creates substantial risk for each party; approving the motion for class certification, for example, would heighten the potential liability of Defendants whereas denial would severely damage the Class. The uncertainty of continued litigation in the face of strong opposition provides further indication of the benefits of settlement.  *Cf. In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995) ("A very large bird in hand in this litigation is surely worth more than whatever birds are lurking in the bushes.").

14

### 5. *The Opinions of Class Counsel and Class Representatives*

In deciding whether to approve a settlement agreement, the Court typically "defer[s] to the judgment of experienced counsel who has competently evaluated the strength of his proofs," taking into account "the amount of discovery completed and the character of the evidence uncovered." *Vukovich*, 720 F.2d at 922–23 (internal citations omitted).  In this case, Class Counsel, who have extensive experience in class action litigation, have concluded that the Settlement Agreements are fair and in the best interests of the Settlement Class, based on extensive discovery and negotiations. (*See* Saveri Decl. ¶ 21, ECF No. 274-1).   Class Representatives, too, agree that the settlement is not only fair and reasonable, but also confers substantial benefits (in the form of, on average, $2,000 for each class member) to the Class.  The Court therefore finds that this factor favors approval of the proposed settlement.

### 6. *The Reactions of Absent Class Members*

The Court must consider not only the perspectives of the Class Representatives, but also the opinions of the absent class members.  *See Poplar Creek Dev. Co.*, 636 F.3d at 244.  Of the 647 class members, all but six (6) received notice by either e-mail or first-class mail (or both, in most cases).  Six (6) members opted-out, though one did so after the opt-out deadline had passed. (Rayhill Decl. ¶ 7, ECF No. 276-1).  None filed objections.  (*Id.*).  Some have already submitted W-9 tax forms to the Settlement Administrator, in anticipation of receiving payment.  (*See* Pls.' Reply in Support at 4, ECF No. 276).  The lack of objections and the generally positive support for the Settlement weighs in favor of approving the proposed Settlement.  *See In re Broadwing*, 252 F.R.D. at 376; *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 141 (W.D. Ky. 1992).

### 7.    The Public Interest

Public interest generally favors settlement of class action lawsuits, *see Hainey*, 617 F. Supp. 2d at 679 (citations omitted), given the substantial federal judicial resources required to supervise and resolve a potentially long and protracted litigation. *In re Broadwing*, 252 F.R.D. at 376. Here, the Settlement Agreements confer immediate benefits for the Class Members, without the risk and expense of further litigation and conserves judicial resources. The Court thus concludes that the public interest favors approval of the Settlement.

In sum, upon careful consideration, the Court concludes that all seven *Int'l Union* factors favor finding that the Settlement provides a substantial benefit to the parties and is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2).

## V.    ATTORNEYS' FEES AND COSTS

In addition to the Settlement Fund amount of $1,325,000, Plaintiffs seek a total of $3,950,000 ($200,000 from CACI and $3,750,000 from Booz Allen and ME) in attorneys' fees, costs, and incentive awards. *See* 15 U.S.C. § 15 (authorizing the recovery of attorneys' fees in antitrust actions by private persons). This total consists of: $20,000 in incentive awards, split evenly between the Class Representatives; $2,129,065 in litigation costs; $82,500 in settlement administration costs; and $1,718,435 in attorneys' fees. (*See* Am. Mot. for Att'ys' Fees at 8–10, ECF No. 273). No Class Member has objected, and Defendants do not oppose this request.

### A.    Attorneys' Fees

An award of attorneys' fees must be reasonable, *i.e.*, it must be "one that is 'adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (quoting *Blum v. Stenson*, 465 U.S. 886, 893 (1984)). Courts typically use one of two methods to determine whether proposed attorneys' fees are appropriate:

16

the lodestar method or the percentage-of-the-fund method. *See Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011). A district court has the discretion to rely on either method, based on its determination of which is "the more appropriate method . . . in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them," *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993), and will often use one method as a cross-check against the other. *See, e.g.*, *Bowling v. Pfizer*, 102 F.3d 777, 780 (6th Cir. 1996).

When using the percentage-of-the-fund method, courts in the Sixth Circuit generally approve of awards that are one-third (1/3) of the total settlement. *See, e.g.*, *Rotuna v. W. Customer Mgmt. Grp., LLC*, 4:09-cv-01608, 2010 WL 2490989, at *8 (N.D. Ohio June 15, 2020). The proposed attorneys' fee award here represents 32.58%, or just under one-third, of the total settlement amount. The lodestar figure is the number of hours spent by counsel multiplied by reasonable rates. *Reed*, 179 F.3d at 471. Courts have typically considered a fee award that is less than the lodestar to be reasonable. *See, e.g.*, *Sprague v. Universal Transp. Sys.*, No. 1:18-cv-00165, 2022 WL 3444981, at *1 (S.D. Ohio June 22, 2022). Plaintiffs represent that their lodestar in this case is approximately $6,366,276, based on over 11,000 hours of work. (Rayhill Decl. ¶ 14, ECF No. 275-1). This includes work by two partners at JLSF, each with an hourly rate of $875, six associates at JSLF with hourly rates between $375 and $700, and paralegals, economists, and law clerks; it also includes work by partners, counsel, and paralegals at GLG with hourly rates between $220 and $875. (*See* ECF Nos. 263-1, -3). The requested fee represents only 26.88% of the lodestar—a strong indication of the reasonableness of the fee award.

In addition to the lodestar and percentage-of-the-fund calculations, courts also often consider the so-called *Ramey* factors in determining if attorneys' fees are reasonable:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009); *see also Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974), *cert denied*, 422 U.S. 1048 (1975). The court discusses each of these factors in turn.

First, the Settlement provides for individual distributions to each class member of approximately $2,000, on average, which represents the pro rata share of the Settlement Fund based on each member's total estimated salary as a percentage of the total salaries paid to all Class Members during the Class Period. (Am. Mot. for Att'ys' Fees at 3, 9 n.4, ECF No. 273). These payments represent meaningful benefits to Class Members,[2] and are the product of extensive efforts by Class Counsel—engaging, as mentioned, in extensive fact discovery, motions practice, and collaboration with specialist experts. (*See id.* at 14). Additionally, Class Members were given an opportunity to challenge the Settlement in general or their specific base salary estimate. (*See* Rayhill Decl. ¶ 6, ECF No. 276-3). Four individuals have challenged the latter. One individual was able to provide documentation showing that the base salary was listed incorrectly, which was then updated; the other three challenged their total base salary numbers based on income rather than salary, and were therefore denied. (*Id.*). No Class Member has objected to the Settlement Fund or its distribution scheme.

---

[2] Plaintiffs' expert, Dr. Phillip Johnson estimated damages for the Settlement Class to be $4,219,994, whereas Defendants' expert, Justin McCrary testified that the Settlement Class suffered no damages. Thus, the Settlement Fund is substantially smaller than the damages estimate provided by Plaintiffs' expert (though the total value of the Settlement Agreements is greater).

Second, as to the value of the services rendered on an hourly basis, this factor also weighs in favor of the proposed fee award. As discussed above, the proposed fee award represents approximately 27% of the lodestar figure; given the number of hours worked, the fee award corresponds to an approximate hourly rate of $156, a significant discount given Class Counsel's skill and experience. (*See* Am. Mot. for Attys' Fees at 17 n.11, ECF No. 273). This is well-within customary amounts under similar circumstances. *See, e.g.*, *Bartell*, 2020 WL 7062834, at *6; *In re High-Tech Emp. Antitrust Litig.*, No. 11-cv-02509, 2015 WL 5158730, at *8.

Third, Class Counsel undertook this case on a wholly contingent fee basis, incurring a substantial amount of billable hours (approximately 11,000) and costs and expenses (approximately $2,129,065) without compensation. (Am. Mot. for Atty's' Fees at 17–18, ECF No. 273). Such an arrangement assumes real risks for Class Counsel, *see In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, 1043 (S.D. Ohio 2001), especially where even they acknowledge that Plaintiffs' claims face serious, though not necessarily insurmountable, legal obstacles, as evidenced by recent federal court decisions favoring defendants in civil no-poach suits. (*See* Am. Mot. for Att'ys' Fees at 15 n.9, ECF No. 273) (collecting cases).

Fourth, "[s]ociety has stake in rewarding attorneys who achieve a result that the individual class members could not obtain on their own." *Kritzer v. Safelite Sols., LLC*, No. 2:10-cv-00729, 2012 WL 1945144, at *9 (S.D. Ohio May 30, 2012) (internal citation omitted). This is warranted where "the individual injuries may be too small to justify the time and expense of litigation," *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 287 (6th Cir. 2016), especially as the benefits of any monetary award would likely have been outweighed by the costs of litigating against sophisticated corporations, like Defendants in this case. Society has a further

stake in incentivizing private efforts to augment federal enforcement of antitrust laws. (*See* Am. Mot. for Att'ys' Fees at 18, ECF No. 273).

Fifth, the complexity of the issues also militates in favor of granting the requested award. *See supra* Part IV.C.2. Plaintiffs allege that Defendants conspired to enter into agreements among one another not to poach employees, thus restricting the mobility of Plaintiffs and suppressing compensation—a complicated antitrust claim that prompted vigorous defense and protracted litigation. The Court has already noted the thoroughness of Plaintiffs in prosecuting this case and the number of outstanding issues that remain hotly contested.

Finally, the sixth factor, the professional skill and standing of the attorneys involved, also weighs in favor of the proposed fee award. The law firms involved on both sides are highly skilled and experienced in complex litigation. Class Counsel, for example, has extensive experience in class actions, including in antitrust class actions. (*See* Am. Mot. for Atty's' Fees at 30, ECF No. 273).

Accordingly, based on a careful consideration of the *Ramey* factors, the Court concludes that the proposed attorneys' fee award is reasonable.

## B. Costs

Class Counsel also seeks a total of $2,211,565 in unreimbursed expenses and costs associated with this litigation and settlement administration costs and taxes. (*Id.* at 22). This includes, specifically, nearly $400,000 in online research, over $100,000 in deposition transcriptions, and $1.56 million in "other professionals," which this Court understands as referring to expert witnesses. (*See* ECF No. 273-3). Pursuant to the common fund doctrine, "class counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs in the prosecution of claims, and in obtaining settlement, including but not limited to expenses

20

incurred in connection with document productions, consulting with deposing experts, travel and other litigation-related expenses." *Bartell*, 2020 WL 7062834, at *7 (quoting *In re Cardizem*, 218 F.R.D. at 532). The Court finds that the costs are reasonable and necessary to litigate and settle this case, and therefore approves the request of $2,129,065 for unreimbursed costs and expenses and $82,500 in settlement administration costs.

### C.  Incentive Awards

An additional incentive award for the named plaintiffs is considered an "efficacious way[] of encouraging members of a class to become class representatives and rewarding individual efforts on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). Thus, courts often approve of incentive awards, in acknowledgment of the "financial or reputational risk undertaken" by the class representatives, in bringing suit and of the services they provided in doing so. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). And here, Plaintiffs represent that the Class Representatives took significant personal and professional risks in serving as the named plaintiffs in a suit against three of the major employers in their profession, were subjected to intense questioning during their depositions, and provided significant help and feedback during the litigation process. (Am. Mot. for Att'ys' Fees at 22, 23, ECF No. 273). For that effort, Plaintiffs request an award of $10,000 each for named plaintiffs Hunter and Youtz. In light of their service and the substantial monetary benefit that their service has garnered, the Court approves a service award of $10,000 each.

### VI.  CONCLUSION

For the reasons set forth above, Plaintiffs' Motions (ECF Nos. 273, 274) are **GRANTED** and the Court hereby **ORDERS** as follows:

1.  **Incorporation of Settlement Agreements.** This Final Order incorporates fully and completely the Settlement Agreements as if fully re-written here. Unless

otherwise provided herein, all defined terms from the Settlement Agreements shall have the same meaning in this Final Approval Order.

2. **Final Certification of the Rule 23 Class.** The Court finds that the proposed Rule 23 Class, as defined in the Agreement, meets the requirements of Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure. Accordingly, the Court certifies the Rule 23 Class for settlement purposes, consisting of the following:

> All natural persons employed by Defendants at JAC Molesworth during the Class Period from January 1, 2015, through June 30, 2022.

> Excluded from the Class are: corporate officers, members of the boards of directors, and senior leaders of Defendants; employees of the United States government employed at JAC Molesworth during the Class Period; and any and all judges and justices, and chambers' staff, assigned to hear or adjudicate any aspect of this litigation.

Also excluded from the Class are those individuals who have validly requested exclusion from the Settlement Class (the "Opt-Outs"): Jennifer L. Teachey and Amy L. Wales-Durrans from both Settlement Agreement; and Hillary L. Koma, Mariel Verdi, and Rebecca Wills from only the Booz Allen-ME Settlement Agreement.

3. **Class Representatives.** For purposes of settlement, the Court approves the Named Plaintiffs, Sarah J. Hunter and David N. Youtz, as the Class Representatives.

4. **Class Counsel.** For purposes of settlement, the Court appoints as Class Counsel the Joseph Saveri Law Firm LLP and Gibbs Law Group LLP, pursuant to Rule 23(g).

5. **Adequacy of Notice.** The Court finds that all notice requirements, and follow-up procedures, have been implemented pursuant to the Settlement Agreements, this Court's Preliminary Approval Order, and this Court's supplemental January 9, 2023, Order, and that they constituted the best practicable notice to Class Members under the circumstances and were reasonably calculated to apprise Class Members of this action, the Settlement Agreements, their rights to opt-out or object, and their right to appear at the Final Approval Hearing, in compliance with Rule 23(c)(2) and 23(e), the requirements of due process, and any other

applicable law.   Additionally, Defendants have complied with the reporting obligations as set forth by the Class Action Fairness Act, 28 U.S.C. § 1715.

6.     **Approval of the Agreement.** The Court approves the Settlement Agreements as fair, just, reasonable and adequate to, and in the best interest of each of the Parties and Settlement Class Members. This Order constitutes final approval of the Agreements.  The Agreements are binding on the parties to it and on all members of the Class excepting the Opt-Outs.

7.     **Release of Claims.**  As of the date this judgment becomes final (meaning that the time for appeal has expired with no appeal taken, all appeals are resolved and none are left pending, or this judgment is affirmed in all material respects after completion of the appellate process), the Class Representatives and the Class, excepting Opt-Outs, are forever barred from bringing or presenting any action or proceeding against any Released Party that involves or asserts any of the Released Claims (as those terms are defined in the Agreements).   The Class Representatives and the Class, excepting Opt-Outs, are deemed to have released and forever discharged the Released Parties from all Released Claims.

8.     **Dispute Resolution.** Without affecting the finality of this judgment, the Court reserves jurisdiction over the implementation, administration, and enforcement of this judgment and the Agreements and all matters ancillary to the same.

9.     **Non-Admission.** This Order and the Agreements are not evidence of, or an admission or concession on the part of, the Released Parties with respect to any claim of any fault, liability, wrongdoing, or damages whatsoever.

10.    **Order for Settlement Purposes.**  The findings and rulings in this Order are made for the purposes of settlement only and may not be cited or otherwise used to support the certification of any contested class or subclass in any other action.

11.    **Use of Agreement and Ancillary Terms.** Neither the Agreements nor any ancillary documents, actions, statements, or filings in furtherance of settlement (including matters associated with the mediation) will be admissible or offered into evidence in any action related or similar to this one for the purposes of establishing or supporting any claims that were raised or could have been raised in this action or are similar to such claims.

12.    **Attorneys' Fees and Expenses.**  Class counsel are hereby awarded attorneys' fees and reimbursements of their costs and expenses in the total amount of $3,925,000 ($1,718,435 in fees and $2,211,565 in litigation and settlement

administration costs) to be paid pursuant to the terms of the Settlement Agreements.

13. **Incentive Awards.**  The Court hereby awards to Class Representatives Sarah J. Hunter and David N. Youtz $10,000 each for service and assistance to the Class.

14. **Distribution of the Settlement Fund.**  The Settlement Fund shall consist of $1,325,000 from Booz Allen Hamilton and Mission Essential Personnel, to be distributed by the Claims Administrator in accordance with the terms of the Settlement Agreements and this Final Order.

15. **Dismissal of Action.**  This action, including all individual and class claims against Defendants Booz Allen Hamilton, Inc., Mission Essential Personnel, LLC, CACI International, Inc., and CACI Technologies LLC, resolved herein, is dismissed on the merits and with prejudice against the Class Representative and all other Settlement Class Members, except any Opt-Outs, without fees or costs to any party or non-party except as otherwise provided in this Final Approval Order.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATE:  May 2, 2023**